# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| IN RE: )<br>)<br>CORPORATION OF SOUTHERN )<br>VERMONT COLLEGE, INC. )<br>)<br>Debtor. ) | Case No. 20-10268-cab<br>Chapter 7 |

**TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KEEN SUMMIT CAPITAL PARTNERS LLC AND TPW REAL ESTATE LLC AS REAL ESTATE ADVISOR AND REAL ESTATE BROKER TO THE ESTATE AND FOR ASSUMPTION OF PRE-PETITION RETENTION AGREEMENT WITH TURNOVER OF DEPOSIT TO TRUSTEE AND REQUEST FOR HEARING ON SHORTENED NOTICE AND FOR ALTERNATIVE LOCATION OF HEARING**

**TO:    HONORABLE COLLEEN A. BROWN**, U.S. Bankruptcy Judge:

The Application of Raymond J. Obuchowski, Esq. respectfully represents:

**1.**    Applicant is the duly appointed and acting Trustee of the above-named Debtor's estate.

**2.**    Applicant respectfully requests entry of an order, substantially in the form attached hereto as Exhibit 1 (the "Proposed Order"), (a) authorizing the employment and retention of Keen-Summit Capital Partners LLC ("Keen") and TPW Real Estate LLC ("TPW") to serve as the Trustee's real estate advisors and broker in connection with this chapter 7 case, effective to the date of the filing of this Application, and effectively for the assumption of the pre-petition executory contract being the Retention Agreement, dated April 10, 2019, on the terms and conditions set forth in the retention agreement between the Southern Vermont College, Chapter 7

Debtor, and Keen & TPW, executed as of April 17 & 18, 2019 (the "Retention Agreement")[1], and as extended on January 23, 2020, copies of which are attached hereto as Exhibit 2 and Exhibit 2-a; (b) approving the terms of Keen and TPW's employment and retention, including the proposed Transaction Fees (as defined below), and waiver of certain information requirements; and (c) granting related relief, as more fully described below. In support of this Application, the Debtor submits the declaration of Matthew Bordwin (the "Bordwin Declaration"), and Paul Carraccio (the "Carraccio Declaration") attached hereto as Exhibit 3-1 & Exhibit 3-2. In further support of the Application, the Debtor respectfully states as follows:

## BACKGROUND

3.  The Debtor, Corporation of Southern Vermont College, Inc., ("SVC") is the entity which operated Southern Vermont College, as located in Bennington, Vermont until the cessation of operations as a college in mid-2019. There are three parcels of property which are generally the Main Campus located at 982 Mansion Drive, Bennington, Vermont ("Campus"); the Wagner or Gate House, located at 897 Monument Drive, Bennington, Vermont ("Gate House"); and the Art Center, located at 44 Gypsy Lane, Bennington, Vermont ("Art Center") which are owned by the Debtor. A further description of the properties is set forth in the Marketing Brochure prepared by Keen/TPW attached hereto as Exhibit 4. With the anticipated closure, the College engaged the services of Keen/TPW to assist in the marketing and sale of the Debtor's properties per the Retention Agreement of April 2019, and as extended in January 2020 through December 31, 2020, the extension is attached hereto as Exhibit – 2-a. From date to date after April 2019 through the date of the filing of this case on August 24, 2020, Keen/TPW provided the marketing and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Retention Agreement.

brokerage services under the Retention Agreement. As a result of those efforts, Keen/TPW assisted in bringing a potential Purchaser for the Campus property which a Purchase and Sale Agreement / Occupany Agreement ("Perlstein Contract") were entered on June 22, 2020 with Moshe Perlstein of Zichron Chaim of Livingston Manor, New York. The Debtor initially filed its Chapter 7 voluntary petition (Case No. 20-10212) on June 28, 2020, which case was dismissed without prejudice, and was subsequently re-filed on August 24, 2020 (the "Petition Date").

4. The Trustee/Applicant believes that until a sale is approved of the Perlstein contract, or to another higher and better offer under the procedures for sale of the property as required under 11 U.S.C. Section 363, the continued services of Keen/TPW are necessary and beneficial to the Estate. Keen/TPW has performed and continues to perform under the Retention Agreement, and upon closing will have earned the Compensation due under the Retention Agreement.

5. The Trustee has conferred and reached agreement with the first mortgage holder, Community Bank, as to the employment of Keen/TPW. Community Bank consents to both the employment by the Trustee, and the assumption of the pre-petition Retention Agreement, and also agrees that the compensation/commission due at closing will be paid through the first proceeds of sale, and not by any funds paid to the Estate under any "Carve Out" agreement. Keen/TPW has agreed to contribute $25,000 of the compensation/commission as to be paid under the Retention Agreement toward the Carve Out paid to the Estate separate and apart from any agreement between the Estate and Community Bank. Keen/TPW is presently in possession and holding a deposit of

$300,000 as part of the Perlstein contract, which upon approval of the employment and assumption of the Retention Agreement shall be turned over and delivered to the Trustee.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

7. By this Application, the Trustee seeks entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, "), (a) authorizing the employment and retention of Keen-Summit Capital Partners LLC ("Keen") and TPW Real Estate LLC ("TPW") to serve as the Trustee's real estate advisors and broker in connection with this chapter 7 case, effective to the date of the filing of this Application, and effectively for the assumption of the pre-petition executory contract being the Retention Agreement, dated April 10, 2019, on the terms and conditions set forth in the retention agreement between SVC, Chapter 7 Debtor, and Keen & TPW, executed as of April 17 & 18, 2019 (the "Retention Agreement")[2], a copy of which is attached hereto as Exhibit 2 and Exhibit 2-a; (b) approving the terms of Keen and TPW's employment and

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Retention Agreement.

retention, including the proposed Transaction Fees (as defined below), indemnification provisions, and waiver of certain information requirements; and (c) granting related relief, as more fully described below.

## KEEN'S SELECTION AND QUALIFICATIONS

8. Following arms' length discussions, SVC selected Keen/TPW as their real estate advisor because of, among other reasons, Keen's experience and knowledge in complex distressed real estate transactions. Keen has an excellent reputation for its market knowledge, use of successful lease restructuring strategies, and is well-suited to represent SVC in connection with marketing and sale of SVC's assets. In connection with these discussions, the SVC and Keen/TPW negotiated the April 2019 Retention Agreement as extended, which remains executory and subject to the Court's approval.

9. Keen is well-qualified to provide real estate consulting services to the Debtors. Keen has considerable experience providing real estate advisory services to businesses in bankruptcy cases, and has been employed in numerous cases under the Bankruptcy Code, including, among many others, the recent chapter 11 cases of: *In re Payless Holdings LLC*, Case No. 17-42267 (KAS) (Bankr. E.D. Mo. June 1, 2017); *In re Maxus Energy Corp.*, Case No. 16-11501 (CSS) (Bankr. D. Del. Dec. 15, 2016); *In re Wayzata-Rochester 16 Hospitality Associates, LLC,* Case No. 16-32038 (Bankr. D. Minn. Sept. 12, 2016); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. July 20, 2016); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (KG) (Bankr. S.D.N.Y. Nov. 1, 2011); and In re Collins & Aikman Corp., Case No. 05-55927 (SWR) (Bankr. E.D. Mich. Nov. 22, 2005). In addition, Keen/TPW was recently engaged

by Berkshire Bank to assist in the marketing the Hermitage Inn Real Estate Holding Company, Inc., Case No. 19-10214, pending before this Court. Keen's professionals have thoroughly reviewed SVC's assets and the SVC's goals and objectives prior to the filing, and understand the Trustee and Estate's need to proceed with liquidation and sale of the assets in the administration of the Estate. Accordingly, the Trustee believes that Keen is both well-qualified and uniquely able to provide the services for which it is being retained in this chapter 7 case in an efficient and timely manner.

**SCOPE OF SERVICES**

10. Specifically, the Trustee request the employment and retention of Keen/TPW to assist in the marketing and sale of the Estate's properties (the "Services") under the terms of the Retention Agreement.[3] The Trustee retains complete discretion to accept or reject any transaction arising from or related to the Services.

**NO DUPLICATION OF SERVICES**

11. The Trustee intends that the services of Keen/TPW will complement, and not duplicate, the services being rendered by other professionals retained in this chapter 7 case. Keen/TPW understands that the Trustee has retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Estate.

---

[3] To the extent that there are any discrepancies between the summary provided herein and the Retention Agreement, the terms and conditions of the Retention Agreement shall govern in all respects.

## **PROFESSIONAL COMPENSATION**

**12.** Keen's decision to advise and assist the SVC, pre-petition and the Trustee, post-petition in connection with this chapter 7 case is conditioned upon its ability to be retained consistent with Keen's customary terms and conditions of engagement, including the compensation arrangement negotiated in good faith between Keen and the Debtor as set forth in the Retention Agreement (the "Fee Structure").[4] The principal terms of the Fee Structure is as follows:

(i) "Engagement Fee": $75,000 (which the Debtor paid pre-petition). On the Effective Date, SVC[5] paid Keen/TPW a nonrefundable advisory and consulting fee of seventy-five thousand dollars ($75,000), which fee shall be subject to set-off in full against Transaction Fees.

(ii) "Transaction Fee":

   a) As and when Company closes a Transaction, whether such Transaction is completed individually or as part of a package, then Consultant shall have earned compensation per Transaction equal to five and one-half percent (5.5%) of "Gross Proceeds" (as defined below) plus expenses incurred by Consultant in accordance with paragraphs III(A)(2) and IV herein.

   b) In the event that a buyer is properly represented by a broker, then, in that event, Company shall pay an additional one percent ( 1 %) of "Gross Proceeds".

   c) All transaction fees shall be paid, in full, off the top, from the proceeds of sale or otherwise, simultaneously with the closing or other consummation of each Transaction.

   d) "Gross Proceeds" means the sum of the total consideration transferred to, or for the benefit of, the Company. The computation of Gross Proceeds

---

[4] The following summary of the Fee Structure is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between the summary provided herein and the Retention Agreement, the terms and conditions of the Retention Agreement shall govern in all respects. In addition, capitalized terms used to describe Keen's compensation but otherwise not defined herein shall have the meanings ascribed to them in the Retention Agreement.

[5] Community Bank NA provided SVC the funds for the payment of the Engagement Fee.

        as well as the computation of Consultant's fee shall not be affected by the costs of marketing, Company's legal fees, break-up fees, Consultant's expenses nor any closing costs and/or adjustments, including but not limited to adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.

    e) Company hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay Consultant its fees earned in strict compliance with the provisions of this Agreement, time being of the essence, directly from the proceeds of the Transaction, in full, simultaneously with the closing or other consummation of the Transaction. The rights provided by this paragraph shall be deemed to supplement and not supersede other rights provided to Consultant.

(iii)   "<u>Expenses</u>":

    A.   All reasonable out of pocket costs and expenses incurred by Consultant in connection with performing the services required by this Agreement, including but not limited to travel, lodging, FedEx, postage, telephone charges, photocopying charges, and the fees and reasonable expenses of counsel, etc., shall be borne by Company and payable at the closing of a Transaction.

    B.   With regards to the marketing of the Property, Consultant shall prepare a marketing plan and budget, which marketing plan and budget shall be subject to approval of the Company, which approval shall not be unreasonably withheld. All costs and expenses incurred by Consultant and that are consistent with the budget shall be payable to the Consultant at the closing of a Transaction.

    C.   Consultant shall not be responsible for any out-of-pocket due diligence costs and expenses, if any, including but not limited to updating appraisals, title reports, surveys, environmental reports, property condition assessments, etc..

**13.**     The Fee Structure is consistent with Keen/TPW's normal and customary billing practices for comparably sized cases involving the services to be provided in this case. The Trustee believes that the compensation arrangement described above is fair and reasonable. Keen/TPW, Community Bank and the Trustee believe that the foregoing compensation arrangement is both reasonable and market-tested.

14. The Debtor, under the pre-petition Retention Agreement would owe Keen/TPW for fees for services performed or expenses incurred under the Retention Agreement prior to the Petition Date should the Perlstein contract close. It is in that setting that the Trustee has treated the Retention Agreement as an executory contract as to be assumed. Keen/TPW has not received compensation for professional services performed or expenses incurred under the Retention Agreement to date other than the above-referenced Engagement Fee. Keen/TPW has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with this chapter 7 case, other than members and consultants of Keen/TPW.

### KEEN'S DISINTERESTEDNESS

15. To the best of the Debtors' knowledge and except as disclosed herein and in the Bordwin Declaration, Keen has not represented, and does not have any connection with, the Debtor, its creditors, its insiders, its affiliates, and its respective attorneys or accountants, or any other parties in interest in connection with the Services performed or to be performed.

16. As disclosed in the Bordwin Declaration, Keen/TPW was engaged pre-petition by SVC. Keen/TPW has informed the Trustee of these transactions, and the Trustee does not believe that the pre-petition transaction will not in any way adversely affect Keen/TPW's provision of services to the Estate.

17. As set forth in the Bordwin Declaration, to the best of the declarant's knowledge:

    (a) Keen/TPW does not hold or represent an interest adverse to the Debtors' estates except as previously stated by the pre-petition Retention Agreement.

  (b) Keen/TPW is not and has not been a creditor, an equity security holder or an insider of the Debtor, except as to it

  (c) Keen/TPW is not and has not been, within two years before the Petition Date, a director, officer, or employee of the Debtor.

  (d) None of Keen's employees, officers, or directors is related to the Hon. Colleen A. Brown or has a connection to the Office of the United States Trustee (the "U.S. Trustee") or to any known employee in the office thereof.

**18.** To the best of the Trustee's knowledge and as disclosed in the Bordwin Declaration, Keen/TPW is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code, and Keen's employment and retention by the Trustee is necessary and in the best interests of the Estate.

**19.** Keen/TPW has informed the Trustee that it will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Keen/TPW has informed the Trustee that it will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF

**20.** Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**21.** Under sections 327 and 328 of the Bankruptcy Code, a Trustee may employ one or more professionals, which do not hold or represent an interest adverse to its estate and that are

disinterested persons, to assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327. Specifically, section 328(a) of the Bankruptcy Code provides that

> The [trustee], . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a). The Trustee is specifically seeking the entry of an Order approving Keen/TPW's retention pursuant to Section 328(a) on a "fixed …" basis and on a "contingent fee basis". As such, the appropriate standard for review of its final fee application shall be the standard set forth in Section 328(a) and not Section 330.

23. Under sections 365 of the Bankruptcy Code, a Trustee may assume or reject any executory contract. Further, to the extent that the pre-petition Retention Agreement is and remains executory that such contract be assumed and that the deposit under the Perlstein contract held by Keen/TPW be delivered and turned over to the Trustee.

24. Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee .

25. In addition, Bankruptcy Rule 2016(a) provides, in part, that:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed

> statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

26. By this Application, the Trustee requests that the Court approve the employment and retention of Keen/TPW and the compensation arrangement described in the Retention Agreement and summarized in this Application. The proposed retention of Keen/TPW is beneficial to the Estate and the professional compensation arrangements provide certainty and proper inducement for Keen/TPW to act expeditiously and prudently with respect to the matters for which it will be employed.

27. The Trustee also requests approval of the employment of Keen/TPW effective as of the date of the filing of this Application, and with the assumption of the pre-petition agreement effective to the dates of the agreement.

28. The Trustee further request a waiver of the requirements of Bankruptcy Rule 2016. As set forth above and in the Retention Agreement, Keen/TPW has been engaged to provide services on a fixed and contingent basis. In exchange for its services, Keen will receive the compensation set forth in the Retention Agreement. The detailed filing requirements of Bankruptcy Rule 2016 would provide little benefit to the Debtors' estates, would be contrary to practices and procedures approved by bankruptcy courts for Keen/TPW, and would require the expenditure of unnecessary time and fees in compiling time records (which Keen does not keep) and preparing fee applications. Section 105(a) of the Bankruptcy Code allows this Court to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See*

11 U.S.C. § 105(a). In addition, section 328(a) of the Bankruptcy Code allows this Court to approve the employment of professionals retained pursuant to section 327 of the Bankruptcy Code on any reasonable terms and conditions, and specifically provides for such retention on a "fixed or percentage fee basis, or on a contingent fee basis." *See* 11 U.S.C. § 328(a). Given the limited scope of Keen's employment, the Debtors believe that a waiver of the detailed filing requirements of Bankruptcy Rule 2016 is warranted and appropriate. Further, in that the payment of the compensation will be from Community Bank's proceeds on sale as to the Campus property, such payment will not impact the Estate.

**29.** Finally, the Debtors request that Keen be excused from complying with approving a waiver of compliance with the information requirements relating to compensation requests as set forth in the *United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "Fee Guidelines"). Specifically, the Trustee requests that (a) Keen not be subject to any time record requirements, and (b) Trustee, at closing be permitted to reimburse Keen in the ordinary course of business pursuant to the terms of Retention Agreement, with such payment being subject to the Court's approval of a final fee application. If the Trustee and Keen are required to fully comply with the Fee Guidelines, then substantial administrative costs and professional time may be incurred without any benefit provided to the estate. Therefore, the Trustee requests that Keen be relieved of the requirement to fully comply with the Fee Guidelines, and, instead, be compensated as set forth above.

### REQUEST FOR HEARING ON SHORTENED NOTICE, NOTICE AND LOCATION OF HEARING

**30.** The Trustee requests a hearing upon the Motion to Assume the Pre-Petition Retention Agreement and Turnover of Deposit on shorten notice to the October 23, 2020 (Rutland) date, or with the alternative location date of October 27, 2020 (Burlington) due to the need for the immediate and continued services as to the marketing and brokerage of the property; the need for approval of the agreement for contribution by Keen/TPW to the Estate's "carve out"; and for prompt turnover and preservation by the Trustee of the Perlstein deposit of $300,000 presently held by TPW. The Trustee will provide notice of this Application and Motion to Assume and for Turnover to: (i) the Office of the United States Trustee, (ii) the parties provided on the Court's Notice of Electronic Filing; (iii) Moshe Perlstein and his Counsel; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; (v) Keen and TPW, and, (vi) the mailing matrix as generated by the Clerk of the Court. In light of the nature of the relief requested, the Trustee would submit that no other or further notice need be provided.

### NO PRIOR REQUEST

**31.** No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully request that the Court grant the relief requested herein, including the request for hearing on shortened notice; and for entry of an Order, substantially in the form of <u>Exhibit 1</u>, for the employment of Keen/TPW, assumption of the pre-petition Retention Agreement and for delivery and turn over the the Perlstein deposit and such other and further relief as is just and appropriate.

DATED at Royalton, Vermont: Wednesday, October 14, 2020.

By:    */s/ Raymond J. Obuchowski*
      Raymond J. Obuchowski, Esq.
      Obuchowski Law Office
      PO Box 60, Route 107
      Bethel, VT 05032
      (802) 234-6244
      (802) 234-6245 *telefax*
      ray@oeblaw.com

      Chapter 7 Trustee

# SCHEDULE OF EXHIBITS

| | |
|---|---|
| EXHIBIT 1 - | Proposed Order for Employment with attached Exhibit "I" the April 18, 2019 Retention Agreement and Exhibit "II" the January 23, 2020 extension. |
| EXHIBIT 2 - | April 18, 2019 Retention Agreement. |
| EXHIBIT 2a - | January 23, 2020 extension of Retention Agreement. |
| EXHIBIT 3-1 - | Matthew Bordwin Declaration with attached Exhibit "A" the April 18, 2019 Retention Agreement and Exhibit "A-1" the January 23, 2020 extension. |
| EXHIBIT 3-2 - | Paul W. Carraccio Declaration with attached Exhibit "A" the April 18, 2019 Retention Agreement and Exhibit "A-1" the January 23, 2020 extension. |
| EXHIBIT 4 - | Keen/TPW Sales Brochure of Southern Vermont College |