# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CORPORATION OF SOUTHERN | ) | Case No. 20-10268-cab |
| VERMONT COLLEGE, INC. | ) | *Chapter 7 case* |
| Debtor. | ) | |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROPOSED SALE OF CERTAIN REAL ESTATE, FURNITURE, FURNISHINGS, FIXTURES AND EQUIPMENT, ALL OF WHICH ARE LOCATED IN BENNINGTON, VERMONT, AND INFRASTRUCTURE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTIONS 363(b) & (f) WITH LIENS TO ATTACH TO PROCEEDS; (II) APPROVING THE TERMS AND CONDITIONS OF THE PROPOSED SALE**

*(Southern Vermont College Campus Real Estate and Certain Personal Property Located at 982 Mansion Drive, Bennington, Vermont)*

Raymond J. Obuchowski, the chapter 7 trustee for this estate (the "Trustee"), requests the entry of an Order: (i) authorizing and approving a sale of certain real estate, furniture, furnishings, fixtures and  equipment, all of which is located at 982 Mansion Drive, Bennington, Vermont, together with certain infrastructure (the "Campus Sale Property") free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. Sections 363(b) & (f) with liens to attach to the proceeds; (ii) approving the terms and conditions of the proposed sale to Southwestern Vermont Health Care Corporation ("SVHCC" or "Buyer");

This Motion is made in accordance with 11 U.S.C. § 363(b) & (f), Fed.R.Bankr.P. 6004(c), Vt. LBR 6004-1, and Vt. LBR 6005-1.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this

proceeding is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On August 24, 2020, (the "Petition Date"), a voluntary petition for relief under

Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. ("Bankruptcy Code") was

filed in the United States Bankruptcy Court for the District of Vermont ("Court") by The

Corporation of Southern Vermont College, Inc. , Case No. 20-10268[1].

3.      On the same day, the Trustee was appointed, thereafter duly qualified, and continues

to serve in that capacity.

4.      The Debtor, Corporation of Southern Vermont College, Inc., ("SVC") is the entity

which operated Southern Vermont College, as located in Bennington, Vermont until the cessation

of operations as a college in mid-2019. On the Petition Date, SVC owned certain real estate being

three (3) parcels of property which are generally the Main Campus located at 982 Mansion Drive,

Bennington, Vermont ("Campus"); the Wagner or Gate House, located at 897 Monument Drive,

---

[1] The Debtor previously filed for relief on June 28, 2020, which case was subsequently dismissed on July 4, 2020, Case No. 20-10212.

Bennington, Vermont ("Gate House"); and the Art Center, located at 44 Gypsy Lane, Bennington,

Vermont ("Art Center"). This Motion to Sell relates only to the real property located at 982 Manson

Drive along with furniture, furnishings, fixtures, equipment, and intangible property at that location

in Bennington, Vermont, together with certain water rights and infrastructure, but excluding

vehicles and their accessions, being the Campus Sale Property.

5.       As of the Petition Date, the Debtor had scheduled the value of the Campus as

$5,750.000.00, and other machinery and equipment at $75,102.79.

6.       Prior to the commencement of the case, the SVC engaged the services of Keen/TPW

to assist in the marketing and sale of the Debtor's properties per the Retention Agreement of April

2019, and as extended in January 2020 through December 31, 2020.  From date to date after April

2019 through the date of the filing of this case on August 24, 2020, Keen/TPW provided the

marketing and brokerage services under the Retention Agreement. On October 28, 2020, the Court

entered an Order upon the Trustee's Application authorizing the Trustee to Employ Keen

Summit/TPW pursuant to 11 U.S.C. §327 [ECF# 32] to assist him in the sale of the Campus Sale

Property.

7.       As a result of the pre-petition efforts, Keen/TPW assisted in bringing an initial

potential purchaser for the Campus property with a Purchase and Sale Agreement / Occupancy

Agreement ("Perlstein Agreement") entered on June 22, 2020 with Moshe Perlstein of Zichron

Chaim of Livingston Manor, New York for a negotiated sale price of $3,000,000.00[2].

8.      The Trustee did not assume the Perlstein Agreement within 60 days of the filing

pursuant to 11 U.S.C. Section 365 due to existing defaults by the purchaser, and therefore the

Perlstein Agreement was deemed rejected as a matter of law. The Trustee believes that as of the

date of the filing, multiple defaults existed under the terms of the Perlstein Agreement. Trustee has

commenced an adversary proceeding regarding such defaults and for recovery of damages and

indemnification.[3]

9.      Subsequent to the Petition Date, with the assistance of Keen Summit/TPW, the

Trustee entered negotiations with SVHCC as a potential purchaser of the Campus Sale Property.

SVHCC has no affiliation with the Trustee or the Debtor, and to the best of the Trustee's

knowledge, is a good faith purchaser. Any officer or director of SVHCC that has any connection

with the Debtor has recused themselves from SVHCC's negotiations during this process.

10.     The Trustee's proposal for selling the Campus Sale Property is by private sale to

SVCHH under a Purchase and Sale agreement, ("PSA"), a copy of which is attached hereto as

**Exhibit 1**, with notice of the proposed sale to be given to the case creditors; parties in interest; all

---

[2] The contract included an additional $150,000 representing commissions due to Buyer's broker.

[3] *Raymond Obuchowski, Trustee v. Moshe Perlstein,* Adversary Proceeding 20-01010, Complaint filed October 26, 2020.

parties that have expressed interest in the Campus Sale Property or the Estate.  The sale will also be noticed through the Trustee's internet sale facilities.

## OTHER PARTIES ASSERTING LIENS AND ENCUMBRANCES AGAINST THE CAMPUS SALE PROPERTY

11.      On the Petition Date, the Campus Sale Property was subject to the following liens or encumbrances of record (collectively, the "Encumbrances"):

a.       Current and delinquent water and sewer charges (the "Water and Sewer Charges") as assessed to the Campus Sale Property by the Town of Bennington, in the amount of $12,510.33.  (These amounts were obtained from the Treasurer for the Town of Bennington, Vermont, and were accurate as of October 26, 2020.)   The Town of Bennington also has a claim arising pursuant to the Water Bond, which will be assumed by the Buyer, see (h) below.

b.       Mortgage and Security Agreement to Community Bank, f.k.a. the Merchants Bank (the "Community Mortgage") in the original principal amount of $8,500,000.00, dated April 1, 2011, and recorded in Book  478, Page 26 of the Town of Bennington Land Records, and Assignment of Rents dated April 4, 2011, and recorded in Book 478, Page 28  of the Town of Bennington Land Records, and Security Agreement on all inventory, equipment, accounts, deposit accounts, general intangibles, dated April 4, 2011, as perfected by UCC Financing Statement filed on April 5, 2011 with the Vermont Secretary of State File No. 11-240917, and Continuation Statement filed March 18, 2016.

There is currently due principal in the amount of $3,918.757.85, interest of $ 400,425.84, late charges of $9,907.56 and other costs of $852,737.02, through the petition date for a total liquidated claim as of the Petition date of $5,181,838.27, without regard to unliquidated claims as detailed in Community Bank's proof of claim[4].

     c.    Mortgage and Security Agreement to Frederic Poses ("Poses") in an amount of $2,250,000.00 as scheduled by the Debtor through the Petition Date, dated April 4, 2011, and recorded in Book 478, page 29 of the Town of Bennington Land Records, and Security Agreement on all inventory, equipment, accounts, deposit accounts, general intangibles, dated April 4, 2011[5] as perfected by UCC Financing Statement filed on March 22, 2019 with the Vermont Secretary of State File No. 19-347167. An additional lien interest upon all personal property and artwork owned by SVC is noted in an Interim Stipulation and Order[6], filed June 30, 2019, for the amount of $2,250,000.00, and by subsequent Writ of Attachment dated August 19, 2019. There is currently due principal in the amount of $2,000,000.00, interest of $194,943.00 and legal fees and other costs of $116,154.44, through October 31, 2020, without regard to additional funds[7] advanced between Fall 2019 and Winter 2020 under a Settlement Agreement as SVC anticipated the prior anticipated sale of the campus to Oliverian.

---

[4] Claim #2, filed September 22, 2020.

[5] Upon information provided by Poses's Counsel, the April 2011 security interest was perfected, but subsequently LAPSED for failure to file a Continuation Statement. The Trustee was unable to locate filing information with the Vermont Secretary of State as to the April 2011 filing.

[6] *Fredric Poses v. The Corporation of Southern Vermont College, Inc.*, Docket No. 118-5-19 Bncv, Vermont Superior Court, Civil Division, Bennington Unit.

[7] An additional $50,000, upon information provided by Poses's Counsel.

d.      Mortgage to SVC Funding, LLC ("SVC Funding") in the original principal
amount of $1,010,000.00, dated April 29, 2019, and recorded in Book 535, Page 20 of the
Town of Bennington Land Records. The Debtor's petition reflects an amount of
$1,250,000.00 as scheduled by the Debtor through the petition date. As of the date of this
Motion, the creditor has not filed a Proof of Claim for a more accurate amount due.

e.      Notice of Claim in favor of Frederic Poses in the amount of $2,000,000.00,
dated May 1, 2019, filed for record May 2, 2019, and recorded in Book 535, Page 18 of the
Town of Bennington Land Records, and Writ of Attachment in favor of Frederic Poses in
the amount of $2,250,000.00, dated August 15, 2019, filed for record August 20, 2019, and
recorded in Book 537, Page 110 of the Town of Bennington Land Records. (See also
paragraph c. above)

f.       Notice of Claim in favor of Vermont Mill Properties ("Vermont Mill") in
the amount of $207,347.33, dated October 24, 2019, filed for record October 24, 2019, and
recorded in Book 538, Page 206 of the Town of Bennington Land Records. Upon
information and belief, Vermont Mill does not deem such notice as an encumbrance and
consents to the proposed sale.

g.      Option to Purchase in favor of the Vermont Land Trust, Inc. ("Vermont
Land Trust") dated May 11, 2005, filed for record May 23, 2005, in Book 420, Page 150,
as relating to a portion of the Campus Sale Property.

h.       Inter-Local Agreement by and between the Town of Bennington and the
SVC, dated October 28, 2013, as amended by First Amended and Restated Inter-Local

Agreement between the Town of Bennington and SVC, dated April 22, 2015. ("Water Bond").

      i.      The Permitted Exceptions as set forth on Exhibit C to the PSA.

12.     The Trustee believes that he will be able to obtain consent of each of the holders of liens or encumbrances set forth in sub-paragraphs (a) to (h) above. Based upon the proposed sale price, and the amount of the Town of Bennington and Community Bank claims, no junior lien or interest will participate or would receive any distribution, and upon information and belief, it has been asserted that the subordinate mortgage of SVC Funding is in bona fide dispute.

## TERMS OF SALE

13.     On November 12, 2020, the Trustee (defined in the Agreement as "Seller") and Buyer entered into the Agreement.  The terms of the Agreement are summarized below and are set forth in more detail in the Agreement.  The description of the Agreement set forth herein is qualified in its entirety by the Agreement, which should be consulted for a full recitation of its terms and conditions.   To the extent that there are any inconsistencies between this Motion and the Agreement, the Agreement shall control.  *See* **Exhibit 1**.

14.     The total purchase price to be paid by Buyer for Seller's right, title, and interest in the Campus Sale Property is $3,200,000.00 (the "Purchase Price").  The Buyer is to pay a deposit in the amount of $320,000.00, to be returned to the Buyer only if (A) the Seller fails to deliver the title or perform as required by this Agreement, (B) the Court approves the sale of the Campus Sale Property to a person other than Buyer pursuant to a higher and better offer, (C) failure of the Court

to approve the sale of the Campus Sale Property to the Buyer due to no fault of the Buyer, or (D) a material breach of this Agreement by Seller.

15.     The Agreement is not subject to a financing contingency, inspection contingency or permitting contingency.

16.     The closing date under the Agreement is to occur within 30 days of any Court Order approving this sale.

17.     Under the Agreement, if the Seller is unable to convey marketable title free and clear of such encumbrances or defects, the Buyer may terminate the Agreement and is entitled to receive all Contract Deposits as Buyer's sole remedy.

18.     Under the Agreement, the Trustee will convey the Campus Sale Property to the Buyer by Trustee's Deed, conveying by quit claim only and for any personal property within the property, by Trustee's Bill of Sale, by quitclaim only.

19.     All claims, including those made by local government, the State of Vermont or the United States of America for taxes, penalties, interest or other judgment or mechanic's lien shall be satisfied at closing from funds allocated solely from the Purchase Price for these purposes.  The Trustee is not aware of any unpaid taxes or any other encumbrances on the Campus Sale Property, other than those expressly set forth herein.

20.     The terms of the Agreement are subject to approval by the United States Bankruptcy Court of the District of Vermont under 11 U.S.C. § 363 through the entry of an order in form satisfactory to the Trustee and SVHCC.

## PROCEEDS FROM SALE

21.     The Trustee reasonably believes that the Purchase Price for the Campus Sale Property is less than the value of all the claims secured by the property, held by the Community Bank, Fredric Poses and SVC Funding as set forth in Paragraphs 11(b)-(e) above.

22.     Community Bank consents to the relief requested herein related to the sale of the Campus Sale Property under 11 U.S.C. § 363(f) and further consents to the Court approving the distribution of the sale proceeds from the Purchase Price for the Campus Sale Property as set forth below.

23.     First, payment in full of all outstanding municipal charges in the approximate amount of $12,510.33, with accruing interest.

24.     Second, payment to the Estate of the "Carve Out" as agreed by Community Bank from its proceeds  in the amount of $150,000.00[8] plus 5% of any amount exceeding the Purchase Price resulting through this sale process.

---

[8] Community Bank has agreed to fund a "Carve out" of which Community Bank shall contribute $125,000 and Keen/TPW has agreed to contribute $25,000 from its commissions as allowed through the Sale, in addition to the 5% for any overbid from the SVCHH offer.

25.    Third, payment of Keen/TPW commissions of 5.5% of the gross sale price, with an offset of the initial $75,000 retainer against the commissions allowed.

26.    The remaining proceeds from the Purchase Price for the Campus Sale Property after payment of the amounts set forth above, less a credit to the Buyer for one half of the payment due March 1, 2021 on the Water Bond, (1/2 = approximately $21,406) shall be paid to Community Bank in partial satisfaction of its secured claim.

**RELIEF REQUESTED**

27.    By this Motion, the Trustee seeks authority to sell the Campus Sale Property free and clear of all liens, claims, and other interests, including the Encumbrances (b-f), but not (a), (g) (h) or (i), with the liens of the Town of Bennington and Community Bank, which is owed more than the amount of the sale proceeds, to attach to the proceeds.

28.    Section 363(f) of the Bankruptcy Code provides as follows:

(f)    The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if

(1)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

29.    Community Bank and the Trustee have agreed that in order to sell the Campus Sale Property, the delinquent and pro-rata share of current municipal assessments ( the Water and Sewer Charges (not the Water Bond as the Water Bond is reported as current by the Town of Bennington, with the next payment due in March 2021, which payment is to be paid by SVHCC per **Exhibit 1** subject to a $21,406 closing adjustment in its favor[9] ) will be the first expense paid from the Gross Proceeds. The reasonable costs of sale, including the "Carve Out", the commission to Keen/TPW will be the next expenses paid from the Gross Proceeds.

30.    The Gross Proceeds will not be sufficient to pay the Community Mortgage in full. Therefore, in order ensure there will be sufficient funds to pay the Water and Sewer Charges, the real estate commission, and to provide a fund from which the Trustee can pay administrative costs and a dividend to unsecured creditors, Community Bank has agreed with the Trustee for a carve-out (the "Carve-Out") from the Gross Proceeds to which the Community Mortgage would attach. The Trustee does not contest to the validity or enforceability of the Community Mortgage. Subject to the following provisions for the Carve-Out and payment of the Community Mortgage, Community Bank consents to the sale of the Campus Sale Property, free and clear of the Community Mortgage. The Carve-Out will consist of the following, which will be deducted from the Gross Proceeds which would otherwise be payable to satisfy the Community Mortgage. In

---

[9] The Seller's portion of approximately $21,000 is to be paid through Community Bank's proceeds and not from the "Carve Out."

other words, the total amount due to satisfy the Community Mortgage will be reduced by the following amounts:

i.      Delinquent municipal assessments, the Water and Sewer Charges, prorated to the date of closing, with a final meter reading for the closing;

ii.      The commission to Keen/TPW, which is entitled to a commission in the amount of 5.5% of the Gross Proceeds, which will be apportioned 66.6% to Keen, and 33.3% to TPW, from which $25,000 will be contributed by Keen/TPW to the Estate's carve-out, and the $75,000 Engagement fee shall be applied against the Transaction fee per the April 10, 2019 Retention Agreement;

iii.      Payment to the Estate of $150,000 (which is inclusive of the $25,000 to be contributed by Keen/TPW) plus 5.5% of any amount of the Purchase Price exceeding $3,200,000; and

iv.      After payment of the Carve-Out, and deduction for one half of the annual Water Bond payment due as of March 1, 2021, the remaining proceeds from the sale of the Campus Sale Property will be used to partially satisfy the Community Bank secured claim.

## GROUNDS FOR RELIEF

31.    Section 105(a) of the Bankruptcy Code grants the Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." "It is well established that the bankruptcy court enjoys broad equitable power

under section 105." *In re Rubenstein*, 2010 WL 3765952, at \*7 (Bankr. D. Conn. Sept. 20, 2010)(citing *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990)).

32.     Rule 6004(c) of the Bankruptcy Rules provides that a "motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold."  Local Rule 6004-1 also provides that a "party seeking to sell property free and clear of liens under § 363(f) of the Code must file a motion and obtain a Court order approving the sale" and identifies certain information that must be included in the motion, which information is set forth above and in the paragraphs below.

33.     In accordance with Local Rule 6004-1(a)(1)(I), the Trustee has identified and provided notice to all parties with an interest in the property being sold by providing notice to any party that submitted a secured claim in the Debtor's Bankruptcy Case that is secured by the Campus Sale Property.

34.     In accordance with Local Rule 6004-1(a)(1)(J), the Trustee affirms that the proposed sale complies with 11 U.S.C. § 363(f), as explained below.

35.     Section 363(b) of the Bankruptcy Code provides that the trustee, may sell property of the estate "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Section 363(f) provides that the "trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate" if at

least one of several conditions enumerated in § 363(f) is satisfied.  In this case, the applicable

conditions permitting a free and clear sale include: the sale is being made with consent of all interest

holders, and the interest holders "could be compelled, in a legal or equitable proceeding, to accept

a money satisfaction of such interest."  11 U.S.C. § 363(f)(2) and (5).

36.    The Trustee seeks to pursue a sale of the Campus Sale Property to the third-party

Buyer since the Buyer will receive clean title to the Property because any interests against the

Property attach to the proceeds and the Buyer will not inherit the estate's debts, which resulted in

a higher sale price, maximizing the value of the Bankruptcy Estate.  *See In re Old Carco LLC*, 538

B.R. 674, 682 n. 6 (S.D.N.Y. 2015)(explaining that the purpose of the Bankruptcy Code is to

maximize the value of the bankruptcy estate and Section 363(f) promotes that policy by maximizing

the value of assets that are sold).

37.    Under 11 U.S.C. § 363(f)(2), property sold pursuant to §363(b) may be sold "free

and clear of any interest" when the "entity holding the interest consents to the sale."  *See In re

Chrysler LLC*, 576 F.3d 108, 119 (2d Cir. 2009)(vacated on other grounds).

38.    Here, under 11 U.S.C. § 363(f)(2), the entities holding the interest in the Campus

Sale Property are the Town of Bennington, Community Bank, Fredric Poses, SVC Funding, LLC,

the Vermont Land Trust. The Trustee expects and each of these parties will expressly consent to

the sale of the Campus Sale Property and the distribution of the proceeds from the sale in the

manner set forth herein.  The Trustee has received or anticipates receiving written confirmation

from each that they consented to the sale of the Campus Sale Property under the terms set forth

herein.  *See In re Arch Hospitality, Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y 2015)(explaining that silence does not constitute consent to a sale free and clear because consent under 11 U.S.C. § 363(f)(2) requires consent that is expressed and not merely implied).

39.     In the alternative, under 11 U.S.C. 363(f)(5), property sold pursuant to §363(b) may be sold free and clear of any interest in such property of an entity when "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Courts in the Second Circuit have held that "the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5)."  *In re Boston Generating, LLC*, 440 B.R. 302, 333 (S.D.N.Y. 2010)(citing *In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009)).

40.     Here, each of the entities with an interest in the Campus Sale Property could be compelled to accept a money satisfaction of their interest in a judicial or nonjudicial foreclosure proceeding.  Accordingly, the Court should grant the relief requested herein pursuant to 11 U.S.C. § 363(f)(2) and (5).

41.     Due to the accruing municipal assessments, and cost of insurance that would reduce the Estate's recovery, time is of the essence in consummating the Sale, it is essential that the Closing thereunder occur as soon as possible. Accordingly, there is cause to lift the fourteen (14) day stay imposed by Bankruptcy Rules 6004 and 6006.

## THE PROPOSED SALE AND PURCHASE IS IN GOOD FAITH
## UNDER SECTION 363(M)

42.     Section 363(m) of the Bankruptcy Code provides certain protections to a Buyer,

stating that:

> The reversal or modification on appeal of an authorization under [Section
> 363(b) or (c)] of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased
> such property in good faith, whether or not such entity knew of the pendency
> of the appeal, unless such authorization and such sale or lease were stayed
> pending appeal.

11 U.S.C. § 363(m).

43.     Determination of "in good faith" is based upon traditional equitable principles,

including whether there has been full disclosure to the bankruptcy court. *Kabro Assocs. Of W. Islip,*

*LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997). The

Trustee has fully disclosed and requested the Court's approval of all of the terms and conditions of

the PSA and intends to provide notice of the Proposed Sale as described herein.

44.     Typically, a buyer is found to be without good faith when "a judicial sale involves

fraud, collusion between the buyer and other bidders or the trustee, or an attempt to take grossly

unfair advantage of other bidders."  *In re Abbotts Diaries*, 788 F.2d 143, 147 (3d Cir. 1986).  There

is no evidence of actions here that could be characterized as falling within that category of conduct.

Buyer is not an equity holder of Debtor. One member of Buyer's Board of Directors was on the

Board of Directors of the Debtor when that Board was disbanded, but that Director was recused

from any deliberations or decisions of the SVHCC Board regarding this transaction.  A second

Director of SVHCC recused himself from any participation in this matter because of a conflict of interest other than service on the SVC board. The Buyer has no relation with the Trustee.  The PSA was negotiated at arms' length by parties represented by separate experienced professionals.  Thus, Buyer should therefore be deemed a good faith buyer under Section 363(m).

## TRUSTEE'S PROPOSED SALE PROCEDURE

45.     Trustee proposes, and by this Motion, seeks authority, to sell the Campus Sale Property in accordance with the following procedures:

(i)     The sale is to be a private sale, to be noticed in accordance with the requirements of 11 U.S.C. §363 and Bankruptcy Rules.

(ii)     Higher or better offers, if any, must be (i) in the minimum amount of $3,250,000, and (ii) made without any contingencies whatsoever, other than the Trustee's ability to deliver marketable title to the Campus Sale Property, and submitted to the Trustee in writing no later than December 7, 2021. In the event of an auction, subsequent bidding increments will be in the minimum amount of $50,000.00 each.

(iii)    Trustee will serve a copy of this Motion and Notice of Hearing on the following parties, or in lieu thereof, to their counsel by US mail, first class delivery or alternatively by electronic mail, (if available), to the extent not already served through the Court's ECF:  (i) the Office of the United States

Trustee for the District of Vermont, (ii) Community Bank, Debtor's secured lender, together with the Vermont Economic Development Authority who was the issuer of the bonds purchased by Merchants Bank and secured by the Community Bank Mortgage, (iii)  SVHCC, the Buyer, (iv) Fredrick Poses, and SVC Funding, and Vermont Mill, junior lien creditors, (v) Vermont Land Trust, (vi) the Town of Bennington, (vii) all parties who have (or are identified on public record as claiming to have) a lien, claim, interest or encumbrance in the Campus Sale Property (as defined in the Motion), (viii) all parties that the Trustee, through due diligence, determine to be potential bidders, (ix)  all parties in interest that have entered notice of appearance in the case, and  (x) all parties that have requested notice pursuant to Bankruptcy Rule 2002.   The Trustee will also publish information regarding the Campus Sale Property and notice of the proposed sale at the National Association of Bankruptcy Trustees ("NABT") website "MarketAssetsforSale.com" and with www.inforuptcy.com, both of which are internet sites for the sale of bankruptcy estate and other insolvency assets, in addition to such Notice of the sale, as the Trustee's real estate advisors and broker provide through their respective websites and marketing services.

## MISCELLANEOUS

46.     The Campus Sale Property will be sold "as is-where is" with no warranties or representations of any kind whatsoever, whether expressed, implied or imposed by law. Furthermore, there will be no warranties relating to title, possession or quiet enjoyment.

47.     The real estate constituting the Campus Sale Property will be conveyed by a Trustee's Deed, by quitclaim only, and personal property by quit claim Bill of Sale.

## NOTICE

48.     Trustee will serve a copy of this Motion and Notice of Hearing on the following parties, or in lieu thereof, to their counsel by US mail, first class delivery or alternatively by electronic mail, (if available), to the extent not already served through the Court's ECF:  (i) the Office of the United States Trustee for the District of Vermont, (ii) Community Bank, Debtor's secured lender, together with Vermont Economic Development Authority, (iii)  SVHCC, the Buyer (iv) Fredrick Poses, and SVC Funding, and Vermont Mill, junior lien creditors, (v) Vermont Land Trust, (vi) the Town of Bennington, (vii) all parties who have (or are identified on public record as claiming to have) a lien, claim, interest or encumbrance in the Campus Sale Property (as defined in the Motion), (viii) all parties that the Trustee, through due diligence, determine to be potential bidders, (ix)  all parties in interest that have entered notice of appearance in the case, and  (x) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

## OBJECTIONS

49.     Persons objecting to the sale of the Campus Sale Property as set forth herein, free and clear of all interests, liens and encumbrances, including persons desiring to submit higher and better bids, must file a written objection with the Clerk of the Court, 11 Elmwood Avenue, Burlington, Vermont 05401, and effectuate service of a copy thereof on Raymond J. Obuchowski at P.O. Box 60, Burlington, Vermont 05032, both on or before 4:00 p.m. (Eastern) on December 7, 2020. ANY HIGHER OR BETTER COUNTER OFFER SHALL BE AT $3,250,000 WITH ALL FOLLOWING OFFERS BY INCREMENTS OF NOT LESS THAN $50,000.00. Higher and better offers must include satisfactory evidence to the Trustee of financial capability to pay at least a 10% deposit immediately and close within 30 days of entry of an order by the Court  approving the sale. In the event the Trustee receives by this date and time any higher and better offer he deems in his discretion to be made by a qualified bidder, he shall promptly notify SVHCC of such bid(s) by providing it with a copy of same, and an auction will take place at the Bankruptcy Court immediately prior to the hearing on approval of the sale.


50.     A ZOOM hearing will be held on **December 11, 2020, at 11:00 a.m.**, before the U.S.  Bankruptcy Court at the Court's "audio-video / zoom location; and the Courtroom Deputy shall provide the Zoom information to all key parties (as identified by the Trustee). Anyone else who wishes to participate in this hearing may contact the Courtroom Deputy (jody_kennedy@vtb.uscourts.gov) to get the necessary Zoom access information.   The AUDIO/ZOOM instructions will be included in the Notice of Hearing under Conventional Procedure.

**WHEREFORE**, the Trustee requests the entry of an Order (i) authorizing him to sell the Sale Property, free and clear of any interest in the Campus Sale Property of any entity other than the Estate, with the liens to attach to the proceeds; and (ii) approving the terms and conditions of the disposition of Campus Sale Property as outlined above, and such other and further relief as the Court deems just and proper.

DATED at Royalton, Vermont: Monday, November 16, 2020.

**BANKRUPTCY ESTATE OF
CORPORATION OF SOUTHERN
VERMONT COLLEGE, INC.**

By:      /s/ Raymond J. Obuchowski
Raymond J. Obuchowski, Esq.
Attorney to Chapter 7 Trustee
Obuchowski Law Office
PO Box 60; 1542 VT Route 107
Bethel, Vermont   05031
(802) 234-6244 (802)
234-6245 *telefax*
ray@oeblaw.com

**PURCHASE AND SALE AGREEMENT**

**by and between**

**RAYMOND J. OBUCHOWSKI, CHAPTER 7 TRUSTEE**
**FOR**
**THE CORPORATION OF SOUTHERN VERMONT COLLEGE, INC.**
**as Seller,**

**and**

**SOUTHWESTERN VERMONT HEALTH CARE CORPORATION,**

**as Purchaser**

**Dated: NOVEMBER 12, 2020**

EXHIBIT "1"

## PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "Agreement" and/or this "Contract"), dated as of November 12, 2020 (the "Execution Date"), is by and between **Raymond J. Obuchowski, Chapter 7 Trustee for The Corporation of Southern Vermont College, Inc.** (d/b/a Southern Vermont College) a Vermont nonprofit corporation  (the "Seller"), and **Southwestern Vermont Health Care Corporation**, a Vermont non-profit corporation (the "Purchaser"; together with Seller, individually as a "Party," and, collectively as the "Parties")

### *Recitals*

A.      On August 24, 2020, The Corporation of Southern Vermont College, Inc. (the "College") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 20-10268 (the "Bankruptcy Proceeding") in the United States Bankruptcy Court for the District of Vermont ("Court").

B.      On August 24, 2020, Raymond J. Obuchowski was appointed Chapter 7 trustee of the College's estate ("Trustee").

C.      The College owns and operated the Campus Property which consist of the former Southern Vermont College Campus more particularly described on **Exhibit A**.

D.      Seller wishes to sell and Purchaser wishes to purchase the Campus Property subject to the terms and conditions set forth herein.

E.      Community Bank, N.A. ("Community Bank") holds a valid, perfected and enforceable mortgage on the Campus Property and security interest in personal property of the College.  Community Bank has consented to the sale of the Campus Property pursuant to a Stipulated Consent Order between Community Bank and the Trustee to be filed with the Court.

F.      There are other subordinate lienholders with interests in the Property.

G.      The Parties intend for the Seller to sell, transfer, convey, assign and deliver to Purchaser the Property in accordance with Sections 363(b) and (f) and the other applicable provisions of the Bankruptcy Code.

H.      This Agreement and the Seller's right to convey the Property to the Purchaser is subject to approval of the Bankruptcy Court in the Bankruptcy Proceeding.

### *Terms and Provisions*

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereto agree as follows:

**Section 1.      Sale and Purchase**.  Subject to the terms and conditions set forth herein, on the Closing Date, Seller shall sell and convey to Purchaser, and Purchaser shall purchase from Seller all of the following:

(a)      the Campus Property at 983 Mansion Drive described on **Exhibit A**, including all improvements, structures, buildings, fixtures, heating, plumbing, air-conditioning, ventilation, sprinkler, alarm, security and electrical equipment and all ducts, pipes, cables and wires appurtenant thereto together with all appurtenant rights and easements thereto (the "Campus Property" or the "Real Property").

(b)      All fixtures, furniture, furnishings, equipment, kitchen equipment, dishes and cutlery, appliances, tractors, ground maintenance equipment, machinery, tools, implements, telephone and communications equipment, safety equipment, and keys, lock combinations and codes located on or at the Campus Property ( the "Tangible Personal Property"). The Tangible Personal Property   is listed on **Exhibit B**.

(c)      To the extent legally assignable to Purchaser, all intangible property now or on the Closing Date owned by the College or the Seller and used in connection with the operation of the Campus Property, including (i) all rights under guaranties or warranties relating to the Campus Property or the Tangible Personal Property (including those relating to construction or fabrication), (ii) government permits for the Campus Property, if any as assignable, and (iii) all site plans, surveys, plans and specifications, construction bids and floor plans in the possession of the Seller and which relate to the Campus Property (collectively, the "Intangible Personal Property" and, together with the Tangible Personal Property, the "Personal Property").

(d)      Purchaser shall assume all of the obligations of the College pursuant to the Inter-Local Agreement by and between the Town of Bennington ("Town") and the College, dated October 28, 2013, as amended by First Amended and Restated Inter-Local Agreement dated April 22, 2015 ("Assigned Contract" and also referred to as the "Water Bond"), subject to Section 3(b) of this Agreement.

The Campus Property and the Personal Property collectively referred to herein as the "Property".

(e)      **Excluded Assets.** The Parties agree that the following are expressly excluded from this purchase and sale and are not included in the Property (the "Excluded Assets"):

(i)      Seller's rights under or pursuant to this Agreement;
(ii)     The motor vehicles;
(iii)    all works of art, fine art or like property;
(iv)     any personal property not located on the Campus Property;
(v)      any lease or contract not assumed and assigned to the Purchaser;
(vi)     cash consideration;
(vii)    all accounts receivable due to the College and the proceeds therefrom;
(viii)   all cash and cash equivalents, bank accounts and securities of Seller;
(ix)     all claims and actions of the Seller arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code against the Seller's current or former directors, officers, insiders or affiliates as such terms are defined in the Bankruptcy Code;

(x)     any of the following books and records: corporate seals, organizational documents, minute books, stock books, tax returns, books of account or other records having to do with the corporate organization of the College, all employee-related or employee benefit-related files or records, and any other books and records which Seller is prohibited from disclosing or transferring to Purchaser under applicable law and is required by applicable law to retain;

(xi)     all insurance policies of Seller and all rights to applicable claims and proceeds thereunder, except to the extent provided in Section 12(a) of this Agreement;

(xii)     all of Seller's Tax refunds, rebates, credits, Tax assets and similar items relating to any period, or any portion of any period;

(xiii)     income Tax Returns of the College and Seller and related materials;

(xiv)     equity securities or other ownership interest of Seller;

(xv)     prepayments and deposits and all claims, indemnities, warranties, guarantees, refunds, causes of action, rights of recovery, rights of set-off and rights of recoupment.;

(xvi)     any adequate assurance deposit under Section 366 of the Bankruptcy Code unless paid by the Purchaser;

(xvii)     all claims, indemnities, causes of action, rights of recovery, rights of set-off and rights of recoupment of every kind and nature (whether or not known or unknown or contingent or non-contingent) against the Seller's current or former directors, officers, insiders, or affiliates as such terms are defined under the Bankruptcy Code; and

(xviii) All personal property of Tenant that is located on the Campus Property, provided that the Seller shall be solely responsible to remove said property from the Campus Property by the date of Closing in the event the Tenant has not reclaimed and removed its property from the premises.

**Section 2.**     <u>**Terms and Conditions.**</u>

(a)     This Agreement is <u>not</u> subject to the Purchaser being approved for financing of the Purchase Price by the Closing Date.

(b)     The Purchaser accepts the Property in its current state and condition without any further work, repairs, treatments or improvements. Therefore, this Agreement is not subject to a property inspection of any kind.

(c)     At the Closing, **Purchaser must be a not for profit entity**.

(d)     The Purchaser will maintain and preserve the benefactor's names on the various buildings on the Property, i.e. the "Hunter Building."

(e)       Purchaser's obligation to close, and Seller's obligation to close is subject to higher and better offers from qualified bidders and Bankruptcy Court approval.

**Section 3.       Purchase Price; Apportionments**.

(a)       The total purchase price (the "<u>Purchase Price</u>") for the Property shall be Three Million Dollars $3,200,000.00 (the "<u>Cash Purchase Price</u>") and assumption of the obligation to make all remaining payments on the Water Bond, commencing with the payment due March 1, 2021.  The Cash Purchase Price shall be paid as follows:

(i)       *Deposit*.  The Seller acknowledges that the Purchaser has deposited the sum of Three Hundred Twenty Thousand Dollars ($320,000) (the "<u>Deposit</u>") with the Trustee.  Upon consummation of this transaction, the  Deposit shall be credited against the Purchase Price.

The Deposit paid by Purchaser and interest accrued thereon, if any, shall be refundable only if (A) the Seller fails to deliver the title or perform as required by this Agreement, (B) the Court approves the sale of the Property to a person other than Purchaser pursuant to a higher and better offer,  (C) failure of the Court to approve the sale of the Property to the Purchaser due to no fault of the Purchaser, or (D) a material breach of this Agreement by Seller.

(ii)       *Balance.*  The balance of the Purchase Price, excluding the Deposit, shall be paid by the Purchaser by wired funds to be delivered on the Closing Date to an account designated by the Seller.

The Purchaser's obligation with respect to the Water Bond for the payment due on March 1, 2021 and going forward shall survive the Closing.

(b)       The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:  Real estate taxes, on the basis of the fiscal period for which assessed; water, sewer and electric, based on reading of the appropriate meter immediately prior to the Closing but, if there is no meter, based on local custom. As a Closing adjustment, Seller will pay one half of the amount due on the Water Bond for the March 1, 2021 payment  of $42,812.09.

(c)       Fuel oil and propane shall be apportioned at the Closing based on the commercial rate in effect in Bennington, VT on the day prior to the Closing Date.

(d)       Vermont Land Trust, Inc. holds an Option to Purchase with The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont College) dated May 11, 2005 and recorded in Volume 420 at Page 150 of the Town of Bennington Land Records that affects a portion of the Campus Property. If the Vermont Land Trust exercises that option to purchase, **prior to Closing**, the Cash Purchase Price will be reduced by the amount the Seller receives from the Vermont Land Trust from the exercise of their option to purchase.

**Section 4.    Due Diligence**.

(a)    The Seller shall make available to the Purchaser for examination and copying information in its possession with respect to the Property, including, copies of all plans, maps, surveys, descriptions, permits, certifications, licenses, approvals, environmental audits, existing title information, and all other diligence materials reasonably requested by the Purchaser and in the possession of the Seller. Certain information has been (and may be) disseminated by Keen-Summit Capital Partners LLC and TPW Real Estate LLC in their efforts to market and sell the Property for the College and the Seller (collectively, the "Property Information"). The Seller has not verified any of the Property Information.  Seller makes no express or implied representation or warranty of any kind with respect to the accuracy, completeness, suitability or applicability of any of the Property Information.

(b)    Nothing in this Section shall be interpreted as a contingency to the Purchaser's obligations to close under this Agreement or be deemed to permit the Purchaser to terminate this Agreement if the Purchaser finds any of the diligence materials unsatisfactory.

**Section 5.    Seller's Covenants and Representations.**

(a)    As a material inducement to the Purchaser to enter into this Agreement and to buy the Property as set forth herein:

(i)    Seller represents to Purchaser that, subject to the prior approval of the bankruptcy court, Seller has the full power and authority to enter into this Agreement and to complete the transactions contemplated herein and to execute the Deed, Bill of Sale, assignments and any other instruments or documents reasonably necessary to effectuate the transactions contemplated by this Agreement.

(ii)    Seller represents to Purchaser that it is not a "foreign person" as defined in the Internal Revenue Code, Section 1445 and, at the time of delivery of the Deed, will provide Purchaser with an affidavit to that effect.

(iii)    Seller represents to Purchaser that, to the best of Seller's knowledge, since the appointment of the Trustee, the Seller has not received notice of any pending or threatened proceeding for a taking or condemnation of the Real Property.

(iv)    To the best of Seller's knowledge, since the appointment of the Trustee the Seller has received no notice from any governmental or quasi-governmental authority having jurisdiction over the Property or operation thereof asserting that the Property or operation thereof is in violation of any applicable legal requirements.

(v)    Seller represents to Purchaser that it has not entered into any other agreements to sell the Property to any other party, and that any agreements to sell the Property entered into by the College prior to the commencement of the Bankruptcy Proceeding have been terminated or rejected prior to the date of this Agreement.

The representations of Seller set forth above are made as of the date hereof, shall be true on the Closing Date, and shall survive the Closing.

(b)      From the date hereof and until the earlier termination of this Agreement or the Closing, the Seller shall (except as otherwise consented to or approved by Purchaser in writing):

(i)      Not create or permit to become effective any new lien, encumbrance or charge of any kind on the Property, other than municipal charges and assessments;

(ii)      Not enter into an agreement for the performance of capital expenditures at or for the Property (or any portion thereof) which will not be paid for by the Seller or from available insurance proceeds, prior to the Closing, or enter into a capital or equipment lease for the Property (or any portion thereof), without the Purchaser's prior written consent.

(c)  **Condition of Property.**   Seller specifically disclaims any warranty or representation concerning the condition of any of the Property.  The sale of the Property as provided for herein is made, on an "AS IS, WHERE IS AND WITH ALL FAULTS" basis. Purchaser warrants and acknowledges that Purchaser is purchasing the Property in an "AS IS, WHERE IS AND WITH ALL FAULTS" condition. Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including income to be derived or expenses to be incurred in connection with the Property), the physical condition of any personal property comprising a part of the Property, the environmental condition or other matter relating to the physical condition of any Real Property or improvements, the zoning of any such Real Property or improvements, the value of the Property (or any portion thereof), the transferability of the Property, the merchantability or fitness of the personal property comprising a portion of the Property or any other portion of the Property for any particular purpose, or any other matter or thing relating to the Property (or any portion thereof). Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Property.

**Section 6.      Purchaser's Covenants, Representations and Warranties**.

(a)      As a material inducement to the Seller to enter into this Agreement and to sell the Property to the Purchaser as set forth herein, the Purchaser hereby covenants, warrants and represents to the Seller as follows:

i.      The Purchaser is duly organized, validly existing and in good standing as nonprofit corporation under the laws of the State of Vermont, its domestic jurisdiction, and is authorized to do business in each other jurisdiction where its operations require it to be so authorized.

ii.      The Purchaser has the full power and authority to make, execute, deliver and perform this Agreement including the instruments and documents to be executed and delivered by it pursuant hereto (the "Purchaser's Transaction Documents," collectively with the Seller's Transaction Documents, the "Transaction Documents").  Such execution, delivery, performance and consummation have been duly authorized by all

necessary action, company or otherwise, on the part of Purchaser, its members and managers.

iii.      Purchaser's Transaction Documents, when executed by Purchaser, will constitute the valid and binding obligations of Purchaser or its assignee, enforceable against Purchaser or its assignee in accordance with their respective terms, except as limited by bankruptcy, insolvency, reorganization and other laws now or hereafter in effect affecting creditors' rights and remedies or by equitable principles.

iv.      Purchaser has, and at Closing will have, cash or suitable means to enable it to consummate the transactions contemplated by this Agreement.

v.      Purchaser acknowledges that, except as expressly set forth herein and the Seller's Transaction Documents, neither Seller, nor any officer, director, employee, member, partner, agent or representative thereof nor any other party acting for or on its or their behalf, has made or is making or shall make any representation or warranty or any kind or nature, whether direct or implied, with respect to the Property, and Purchaser is purchasing the Property AS IS, WHERE IS AND WITH ALL FAULTS. Purchaser represents and acknowledges that except for the representations and warranties set forth in this Agreement and the Seller's Transaction Documents, it has not relied on any representation or warranty provided by Seller with respect to the Property.

(b)      Each of the foregoing representations and warranties shall be true, correct and complete in all material respects, both as of the date hereof and as of the Closing Date, and Purchaser shall certify in writing at Closing that each and all of said representations and warranties are true, correct and complete as of and with respect to that date as herein provided..

(c)      To the extent an agent, broker, investment banker, person or firm has acted on behalf of  the Purchaser or under the authority of the Purchaser, the Purchaser shall be responsible for the finder's fee, commission or other similar fee payable directly or indirectly to the agent, broker, investment banker, person or firm in connection with the transactions contemplated herein.   The Purchaser shall indemnify and hold the Seller harmless from a claim arising from any other alleged Purchaser Broker.  This provision shall survive the Closing and/or termination of this Agreement.

**Section 7**.      **Condition of Title**.   At the Closing, the Seller shall deliver a good and sufficient Trustee Deed, furnished and paid for by the Seller, conveying marketable and insurable title, as defined by Vermont law and by this Agreement.  Title to the Real Property shall be considered good and clear record and marketable if Purchaser can obtain a title insurance commitment covering the Real Property from a title insurance company doing business in the State of Vermont, subject only to (i) the standard exclusions and exceptions, excluding mechanics liens (as to which Seller shall deliver a standard affidavit to the title insurance company sufficient to enable the title insurance company to delete from Purchaser's title insurance policy any exception for mechanics liens arising through Seller) and persons in possession, excluding the survey exception (only if  Purchaser has obtained an ALTA Survey acceptable to the Title Company for the survey exception to be deleted), (ii) the Permitted Exceptions listed on **Exhibit C**; (iii) the Water Bond payments coming due commencing with

the  March 1, 2021 payment and later and (iv) real estate taxes, and other municipal assessments, which shall be adjusted as provided in Section 3(b).

Purchaser shall be solely responsible for obtaining the title policy and for paying any and all premiums that may be due thereunder, and Seller agrees to assist and cooperate with Purchaser in this regard, at no expense to Seller.

Section 8.      **Closing Costs**.

(a)      The Purchaser shall pay the fees of the lawyers representing the Purchaser in connection with this transaction.  The Purchaser shall also pay the following costs and expenses: (i) property transfer tax; (ii) the fee for the examination of title and the premium for an owner's title insurance policy to be issued to Purchaser (and its lender) by the title insurance company at Closing, and all endorsements thereto; (iii) the fees for recording the Trustee's Deed; (iv) all of its due diligence and investigation costs (including architects, engineers and other professionals and consultants);  (v) any other cost and expenses expressly provided in this Agreement to be paid by the Purchaser; and (vi) any other closing costs customarily paid by purchasers in real estate transactions in Bennington County unless stated otherwise herein.

(b)      The Seller shall pay the fees of the lawyers representing Seller in connection with this transaction.  The Seller shall also pay the following costs and expenses: (i) any non-resident withholding real estate tax and land gains tax, if applicable; (ii) any other cost and expenses expressly provided in this Agreement to be paid by the Seller; and (iv) any other closing costs customarily paid by sellers in real estate transactions in Bennington County, unless stated otherwise herein.

(c)      All other closing costs of whatever kind or nature shall be allocated in accordance with a closing statement setting forth all adjustments to the Purchase Price (the "Closing Statement").  The Seller shall prepare the Closing Statement, subject to approval by the Purchaser, which approval shall not be unreasonably withheld, delayed or conditioned.

Section 9.      **Deliveries at or before Closing**.

(a)      At Closing, the Seller shall deliver to the Purchaser an original counterpart of the following:

(i)      A Trustee Deed to the Campus Property, and the accompanying Vermont property transfer tax return;

(ii)      A Bill of Sale substantially in the form and substance of **Exhibit D**;

(iii)      unless insurance proceeds have been paid over to Purchaser prior to Closing or at Closing, an Assignment of the Seller's Rights to insurance coverage or insurance proceeds as provided in Section 12(a) of this Agreement;

       (iv)      keys and lock combinations and codes to the extent Seller has them;

       (v)      The Closing Statement; and

       (vi)      Such title affidavits, transfer tax forms and other documents as are customarily provided by sellers of commercial property in Bennington County and such further documents, instruments and agreements as are contemplated herein.

       (b)      At Closing, the Purchaser shall deliver to the Seller in accordance with the provisions set forth herein, together with an original counterpart of the following:

       (i)      the Purchase Price;

       (ii)      An original counterpart of the Closing Statement; and

       (iii)      Such affidavits, transfer tax forms and other documents as are customarily provided by purchasers of commercial property comparable to the Property and such further documents, instruments and agreements as are contemplated herein.

**Section 10.**   **Closing**.  The transaction contemplated by this Agreement shall close (the "Closing") within 30 days of the issuance of the Approval Order by the Court at the offices of Seller  (the "Closing Date") or at such other time or location or at such earlier date as the parties shall agree.  The 30-day time period shall begin to run the day after the issuance by the Court of the Approval Order.

**Section 11.**   **Possession**. Full possession of the Campus Property free of all tenants and occupants shall be delivered to Purchaser at the time of delivery of the Deed, the Campus Property to be then in the same material condition in which it is as of the Execution Date, normal wear and tear and damage by fire or other hazard or casualty excepted, but subject to the damage incurred at the Property during  summer 2020 while the Property was under the possession of the Tenant.

**Section 12.**   **Casualty and Condemnation**.

       (a)    **Casualty.** The risk of loss in the event of casualty after the Execution Date shall rest exclusively with the Seller until the Closing has occurred. Thereafter, Purchaser will assume the full risk of loss. In the event prior to Closing, and after the Execution Date, a portion of the Campus Property is damaged or destroyed beyond the current condition as of the Execution Date, Seller shall forthwith give written notice to the Purchaser and the Purchaser may, within fifteen (15) days after receipt of the written notice, elect to: (i) close the transaction without any reduction in the Purchase Price except for the amount of the casualty insurance deductible (if any), in which event Seller shall assign to Purchaser the insurance proceeds; or (ii) terminate the Agreement, in which event Purchaser shall be entitled to return of the Deposit. As to the damage caused this past summer while the Tenant was in possession of the Property pursuant to an Occupancy Agreement (the "Occupancy Agreement") between the College and the tenant (the "Tenant"), which includes in part, insured damage and uninsured damage, at Closing, Seller shall pay over to Purchaser any insurance proceeds received on claims made

for such insured damage, or assign such rights to payment for the insured damage to Purchaser, if such payment has not been made to Seller prior to the Closing. As to the uninsured damage at Closing, Seller shall pay over to Purchaser proceeds received on the claim for such uninsured damages, or, at the option of Purchaser to be exercised at Closing or waived, assign the right to payment for the uninsured damage to Purchaser, if such payment has not been made to Seller prior to the Closing. If assignment of the claim is made by Seller at the option of Purchaser, Purchaser agrees that from any recovery, the first proceeds will go to the Seller to pay for the administrative expenses and attorney's fees incurred by Seller in pursuing the claim and all costs of litigation, then to Seller for the amount due for the occupancy expenses that the Tenant was supposed to pay Seller pursuant to the Occupancy Agreement, then to Purchaser for the cost for the damages not yet recovered for, then to costs of Purchaser in litigating the claim, including reasonable attorney's fees, and if any remainder, then to the Seller.  .

(b)    **Condemnation**.  If at any time prior to the Closing, any material portion of the Campus Property is threatened with condemnation or legal proceedings commenced under the power of eminent domain, Seller shall promptly give Purchaser written notice of such fact, and shall furnish to Purchaser copies of all notices received by Seller pertaining thereto. Purchaser shall have the right, within ten (10) business days after the receipt of such notice, to terminate this Agreement by written notice to Seller, in which event Purchaser shall be entitled to the return of the Adjusted Deposit and neither Seller nor Purchaser shall have any further obligations hereunder (except obligations which are expressly stated to survive termination of this Agreement). If this Agreement is not so terminated, Purchaser shall be obligated (subject to satisfaction of all other Closing conditions) to proceed with the Closing hereunder and the damages attributable to the Property shall belong to the Purchaser. The Purchase Price will not be abated or reduced on account of any condemnation proceedings.

## Section 13.    Termination/Effect of Termination.

(a) This Agreement and the transactions contemplated herein may be terminated at any time prior to the Closing:

(i)      By mutual written agreement of Purchaser and Seller;

(ii)     By either Purchaser or Seller (provided that the terminating party is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach or misrepresentation of any of the representations or warranties or a material breach of any of the covenants set forth in this Agreement on the part of the other party, which breach is not cured within 10 days following written notice to the party committing such breach;

(iii)    Without action by the Purchaser or the Seller if the Bankruptcy Court enters the Approval Order approving the sale of the Property to a person other than Purchaser.

(b)    **Effect of Termination or Breach.** If this Agreement is terminated prior to the Closing, the termination shall not relieve any party hereto from any liability which at the time of

termination had already accrued to any other party hereto or which thereafter may accrue in respect of any act or omission of such party prior to such termination.

If this Agreement is terminated prior to the Closing as a result of a breach of the provisions of this Agreement by Seller, the Deposit shall be returned to Purchaser in full, as the Purchaser's sole remedy, and the Purchaser shall not have (and does hereby waive) any claim for incidental or consequential damages, specific performance or any other injunctive or equitable relief.

In the event the Closing is not consummated as a result of a material breach of the provisions of this Agreement by Purchaser resulting in the termination of this Agreement by Seller, Seller's sole remedy shall be retention of the full amount of the Deposit.

**Section 14.**   **Incorporation.**  The Recitals and each Exhibit and Schedule hereto are incorporated herein by reference as if set forth in full herein.

**Section 15.**   **Drafting**.  The Parties hereto have carefully reviewed and negotiated the terms of this Agreement and the Transaction Documents, and each hereby acknowledges that it has had a full and fair opportunity to review and negotiate the Agreement and the Transaction Documents with the advice of its lawyers.  Therefore, there shall be no presumption in favor of the non-drafting party.

**Section 16.**   **Costs and Expenses**.  Except as expressly otherwise provided in this Agreement, each Party shall bear its own costs and expenses in connection with this Agreement and the transactions contemplated hereby.

**Section 17.**   **Benefit and Assignment**.  This Agreement binds and inures to the benefit of each Party and its respective successors and proper assigns.  Neither Party shall be permitted to assign its rights or obligations under this Agreement without the prior consent of the other Party, provided that Purchaser shall be able to assign this Agreement to a non-profit entity under its control in its sole discretion.

**Section 18.**   **Effect and Construction of this Agreement**.  The captions used herein are for convenience only and shall not control or affect the meaning or construction of the provisions of this Agreement.  This Agreement may be executed in one or more counterparts, and all such counterparts shall constitute one and the same instrument.  Copies of original signatures sent by electronic transmission shall be deemed to be originals for all purposes of this Agreement.  All gender employed in this Agreement shall include all genders, and the singular shall include the plural and the plural shall include the singular whenever and as often as may be appropriate.  When used in this Agreement, the term "including" shall mean "including but not limited to."

**Section 19.**   **Waiver, Discharge, etc**.  This Agreement shall not be released, discharged, abandoned, changed or modified in any manner, except by an instrument in writing executed by or on behalf of each of the Parties hereto by their duly authorized officer or representative.  The delay or failure of a Party to enforce at any time a provision of this Agreement shall in no way be construed to be a waiver of nor impair the provision, nor in any way to affect the validity of this Agreement or a part hereof or the right of a Party thereafter to

enforce each and every provision.  No waiver of a breach of this Agreement shall be held to be a waiver of another or subsequent breach.

        **Section 20.**    **Governing Law; Disputes**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Vermont, without regard any contrary rules relating to the choice or conflict of laws.   THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, DISTRICT OF VERMONT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

        **Section 21.**    **Waiver of Jury Trial.**  EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT, INCLUDING TO ENFORCE OR DEFEND ANY RIGHTS HEREUNDER, AND AGREES THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

        **Section 22.**    **Severability**.  A provision or distinguishable portion of a provision, of the Agreement which is determined in a judicial proceeding to be prohibited or unenforceable shall be ineffective to the extent of the prohibition or unenforceability without invalidating the remaining provisions hereof.  To the extent permitted by applicable law, the Parties waive any provision of law which renders a provision hereof prohibited or unenforceable in any respect.

        **Section 23.**    **Entire Agreement**.  This Agreement including the schedules, exhibits and the other Transaction Documents, constitute the entire agreement between the Parties hereto with respect to the subject matter hereof and thereof, and there are no agreements, understandings, restrictions, warranties, or representations between the Parties with respect to the subject matter hereof other than as set forth herein or therein.

        **Section 24.**    **Further Assurances**.  In addition to the acts and deeds recited herein and contemplated to be performed, executed and/or delivered by Seller to Purchaser at Closing, Seller and Purchaser each agree to perform, execute and deliver, but without any obligation to incur any additional liability or expense, on or after the Closing any further deliveries and assurances as may be reasonably necessary to consummate the transactions contemplated hereby or to further perfect the conveyance, transfer and assignment of the Property to Purchaser.

        **Section 25.**    **Notices**.  A notice provided for herein shall be made either by hand delivery, by certified or registered mail and deposited in the U.S. Mail, postage prepaid, or by reputable overnight delivery service making delivery against a signed receipt, to the following addresses:

      To Seller:            Raymond J. Obuchowski
                         Chapter 7 Trustee
                         The Corporation of Southern Vermont College Inc.
                         PO Box 60
                         Bethel, VT  05032-0060

with a copy to:

Elizabeth A. Glynn, Esq.
Ryan Smith & Carbine Ltd.
98 Merchants Row
PO Box 310
Rutland, VT  05702-0310

To Purchaser:                Southwestern Vermont Health Care Corporation
Attention:  Kevin P. Dailey, VP of Administration/CHRO
100 Hospital Drive
Bennington, VT 05201
Telephone:  (802) 447-5521
Email:  kevin.dailey@svhealthcare.org

with a copy to:

R. Prescott Jaunich, Esq.
Andre D. Bouffard, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT  05402-0190
Telephone: (802) 863-2375
Email: sjaunich@drm.com and abouffard@drm.com

A Party may on notice to the other Party change its address for the receipt of notices.  A notice sent as provided herein shall be deemed delivered when actually received, when delivery is refused by the intended recipient, or when delivery is first attempted but cannot be completed due to the intended recipient's failure to provide notice of a change in address.

   **Section 26.**    **Time of the Essence; Time Periods**.  **Time is of the essence of this Agreement**.  A reference in this Agreement to the time for the performance of obligations or elapsed time shall mean consecutive calendar days, months, or years, as applicable.

   **Section 27.**    **Bankruptcy**.

   (a)    All of the agreements and obligations by and between the parties under this Agreement are subject to and contingent upon approval of the Court in the Bankruptcy Proceeding as and when set forth herein and are further subject to higher and better offers. The transaction contemplated herein is subject to the entry of an order Approval Order as defined below in Section (b) by the Court authorizing the sale of the Property to Purchaser free and clear of all liens, claims and encumbrances pursuant to the terms of this Agreement and Section 363(b) and (f) of the Bankruptcy Code after notice to Debtor's creditors and parties in interest pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, and the assignment and assumption of the Assigned Contract(s).

13        1084882

(b)    As soon as practicable, the Seller shall file a Motion with the Court (the "Sale Motion") requesting the entry of an Order approving the sale of the Property to the Purchaser and the assumption of the contracts under this Agreement (the "Approval Order").  The Approval Order shall be reasonably acceptable to the Purchaser in form and substance and shall  include, *inter alia*,  (i) approval of the sale of the Property to Purchaser on the terms and conditions set forth in this Agreement and authorization for Seller to proceed with this transaction, (ii) a specific finding that Purchaser is a good faith purchaser of the Property, (iii) approval of the sale of the Property to Purchaser shall be free and clear of all liens, claims, interest, and encumbrances known and unknown, except as set forth in this Agreement, and that neither Purchaser nor any entity, as that term is defined in Section 101(15) of the Bankruptcy Code, that purchases or leases any or all of the Property from Seller, shall have any liability whatsoever, as successor or otherwise (excluding, however, any environmental liability that Purchaser shall have as the owner of the Property from and after the Closing and as set forth in this Agreement), to any entity, as that term is defined in Section 101(15) of the Bankruptcy Code that holds or may hold one or more claims, as that term is defined in Section 101(5) of the Bankruptcy Code, against Seller, the College, the College's estate, and /or the Property, (iv) states that the sale of the Property other than free and clear of liens and claims would be of substantially less benefit to the estate of College, (v) approves the Seller's assumption and assignment of the contracts, rights and permits to Purchaser pursuant to Section 365 of the Bankruptcy Code, (vi) approves the Seller's notice to parties with an interest in the Property of the proposed sale to Purchaser and an opportunity to object to same or to submit higher and better offers for the Property, (vii) provides for retention of jurisdiction of the Court to hear and decide any and all disputes between or among Seller, Purchaser and any entity, as that term is defined in Section 101(15) of the Bankruptcy Code, that arises out of or relates to this Agreement, the Property and/or any claimed liability of Purchaser to any creditor of the College, the College's estate, and/or the Property; and further to hear and decide any and all disputes between Seller and/or Purchaser, as the case may be, and any non-seller parties to the contracts, rights and permits. Both Seller's and Purchaser's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Court's entry of the Approval Order.

The Approval Order shall state that notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062, or any applicable provisions of the Local Rules, the Approval Order shall not be stayed after entry thereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the sale transaction with Purchaser, and Seller and Purchaser intend to close the sale transaction within 30 days of the issuance of the Approval Order by the U.S. Bankruptcy Court, even if the Approval Order is appealed.

(c)    Seller shall provide draft versions of the Sale Motion and the Approval Order to Purchaser for its review prior to filing with the Court.

**Section 28.    Brokers**.  To the extent an agent, broker, investment banker, person or firm has acted on behalf of the Seller or under the authority of the Seller, the Seller shall be responsible for the finder's fee, commission or similar fee payable directly or indirectly to the agent, broker, investment banker, person or firm in connection with the transactions contemplated herein.  Seller represents and warrants that Keen-Summit Capital Partners LLC

and TPW Real Estate LLC are the Seller's brokers and the Seller shall pay them under separate agreement.  Purchaser hereby agrees to defend, indemnify and hold harmless Seller from and against any claims by any real estate broker whom Purchaser engaged regarding this transaction, for brokerage commissions, finders' or other fees relative to this Agreement or the sale of the Property and any court costs, attorneys' fees or other costs or expenses arising therefrom and alleged to be due by authorization of Purchaser. This provision shall survive the Closing and/or termination of this Agreement.  See Section 6(c) with respect to the Purchaser's responsibility for its broker.

**Section 29.** **Survival.** All of the terms, conditions, warranties, covenants, indemnity provisions and representations of this Agreement shall survive the Closing and execution of the deed, and shall be in full effect and enforceable after the Closing in accordance with the terms of this Agreement.

**Section 30.** **No Reliance.** The Purchaser acknowledges that the Purchaser has not been influenced by Seller or any affiliates of Seller to enter into this transaction and the Purchaser has not relied upon any warranties or representations not set forth in this Agreement. Further, the Purchaser acknowledges and agrees that any and all reports, information or materials delivered by Seller to Purchaser or obtained by Purchaser from Seller or Seller's representatives were provided for informational purposes only, without any representation or warranty whatsoever as to the accuracy or completeness thereof, and have not been relied upon by Purchaser.  Without limiting the generality of the foregoing, Purchaser acknowledges that Seller has no responsibility to Purchaser in any manner whatsoever, for Hazardous Waste on, under or emitting from the Real Property. The provisions of this Section shall survive the delivery of the Deed hereunder.

**Section 31.** **Indemnification.** Purchaser shall assume all of Seller's obligations and liabilities relating to the Property on the date of delivery of the Deed, Bill of Sale and assignments, for the period from and after the Closing Date including, without limitation, real estate and other property taxes, assessments and the like, including, without limitation the Water Bond, and shall indemnify, defend and hold the Seller harmless from and against any and all claims, demands, liabilities, damages, causes of action, expenses, costs, reasonable attorneys' fees and expenses arising from, or relating to, such assumed obligations and liabilities.  The provisions of this Section shall survive the delivery of the Deed hereunder.

**Section 32.** **No Merger.** The provisions of this Agreement containing agreements between the parties relating to actions occurring after Closing shall not be merged into the instruments of Closing but shall expressly survive and be enforceable according to their terms.

**Section 33.** **Definitions.** The following terms shall have the following meaning for purposes of this Agreement:

"Deposit" as defined in Section 3(a)(i).

"Agreement" as defined in the Introductory paragraph, page 1.

"Approval Order" as defined in Section 27(b).

"Assigned Contract" as defined in Section 1(d).

"Bankruptcy Proceeding" as defined Recitals A.

"Campus Property" as defined in Section 1(a).

"Cash Purchase Price" as defined in Section 3(a).

"Closing" as defined in Section 10.

"Closing Date" as defined in Section 10.

"Closing Statement" as defined in Section 8(c).

"College" as defined in Recital A.

"Community Bank" as defined in Recital E.

"Contract" as defined in the Introductory paragraph, page 1.

"Court" as defined in Recitals A.

"Deposit" as defined in Section 3(a)(i).

"Excluded Assets" as defined in Section 1(e).

"Execution Date" as defined in the Introductory paragraph, page 1.

"Intangible Personal Property" as defined in Section 1(c).

"Occupancy Agreement" as defined in Section 12(a).

"Parties" as defined in the Introductory paragraph, page 1.

"Party" as defined in the Introductory paragraph, page 1.

"Personal Property" as defined in Section 1(c).

"Property" as defined in Section 1.

"Property Information" as defined in Section 4.

"Purchase Price" as defined in Section 3(a).

"Purchaser" as defined in the Introductory paragraph, page 1(d).

"Purchaser's Transaction Documents" as defined in Section 6(a)(ii).

"Real Property" as defined in Section 1(a).

"Sale Motion" as defined in Section 27(b).

"Seller" as defined in the Introductory paragraph, page 1.

"Tangible Personal Property" as defined in Section 1(b).

"Tenant" as defined in Section 12(a).

"Town" as defined in Section 1(d).

"Transaction Documents" as defined in Section 6(a)(ii).

"Trustee" as defined in Recitals B.

"Water Bond" as defined in Section 1(d).

**[Signatures on Next Page]**

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the
Execution Date.

**SELLER:**

Raymond J. Obuchowski
Chapter 7 Trustee
The Corporation of Southern Vermont College Inc.

By: _____
       Raymond J. Obuchowski

**PURCHASER:**

Southwestern Vermont Health Care Corporation

By: _____
       Thomas A. Dee, President and CEO
       Authorized Signer

**EXHIBITS**

Exhibit A      Property Description:  Campus Property
Exhibit B      Tangible Personal Property Description
Exhibit C      Permitted Encumbrances
Exhibit D      Form of Bill of Sale

**EXHIBIT A-1**

**Campus Property Legal Description**

Parcel 1

Being all and the same lands and premises conveyed to The Corporation of Southern Vermont College, Inc., by Warranty Deed from Everett Estate Associates Limited Partnership, dated December 22, 1986, and recorded at Volume O-262, Page 157 of the Land Records, and more particularly described therein as follows:

"Being the same lands and premises conveyed to this Grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983, recorded on August 2, 1983 in Book O-243 at Page 51 of the Bennington, Vermont, Land Records and described therein as follows:

Beginning at a point in the west line of Monument Avenue, so called, in the Town of Bennington, Vermont, said point being the northeast corner of the lands of George Van Santvoord and the southeast corner of the herein described property;  thence along the line of lands of the said Van Santvoord the following courses and distances:  S 56°30' W 300.29 feet, N 74°48'08" W 1395.24 feet, S 16° 37' 51" 1100.70 feet, S 16°47'04" W 109.73 feet, N 73°43'33" W 1544.06 feet and S 16°00'13" W 976.45 feet; thence along the line of lands of Fillmore Farms, Inc the following courses and distances: N 73°11' W 2305.8 feet, N 15°10' E 1748.6 feet, S 76°00' E 559.2 feet, N 18°06'35" E 2535.97 feet and S 74°16'33" E 2672.29 feet; thence through lands of this grantor, Grace Burnap Everett, the following courses and distances:  S 74°16'33" E 250.57 feet, N 22°57'E 417.98 feet, N 23°30' E 139.69 feet, N 29°07' E 85.41 feet and N 34°58' E 137.42 feet; thence along the south line of lands of R.W. Buzzell S 81°47' E 75.53 feet; thence along the line of lands of John Alonzo S 37°37' W 165.37 feet and S 28°29' W 83.44 feet; thence along the line of lands of Edward H. Everett Company the following courses and distances:  S 22°37' W 126.41 feet, S 17°31'W 424.5 feet, S 22°18' W 167.28 feet; thence through lands of Edward H. Everett Company S 74°16'33" E 727.96 feet to the west line of said Monument Avenue; thence along the west line of said Monument Avenue the following courses and distances: S 10°41' E 378.55 feet, S 12°16' E 847.28 feet, S 23°08' E 698.68 feet and S 9°41' E 267.2 feet to the place of beginning.  Containing 371 acres of land be the same more or less.

Excepting however, from said 371 acres of land, more or less, 6.2 acres of land, more or less, conveyed by the Grantor herein to The Corporation of Southern Vermont College, Inc. by Warranty Deed dated June 24, 1985 and recorded on August 1, 1985, in Book O-252 at Page 221 of the Land Records of the Town of Bennington, Vermont.

Together with all rights, rights of way and easements applicable and appurtenant to the granted premises as set forth in deed of Grace Burnap Everett to The Foundation of Our

Lady of Holy Cross, Incorporated, dated July 1, 1952, recorded in the Town Clerk's Office at Bennington in Book 0-126, page 85 of Land Records .... "

Parcel 2

Being all and the same lands and premises being conveyed to Corporation of Southern Vermont College by Warranty Deed from The Everett Estate Associates, a Vermont Limited Partnership, dated June 24, 1985, and recorded at Volume O-252, Page 221 of the Bennington Land Records, and therein described, in part, as follows:

"Being a portion of the lands conveyed to this grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983 and recorded August 2, 1983 in Book O-243, Page 51 of the Town of Bennington Land Records; these lands are described as follows:

Beginning at an iron rod set in the easterly side of a private road through lands of this grantor, and marking the southwest corner of the described lands; thence North 5°32'51" East along said roadway a distance of 180.87 feet to a point; thence continuing on an arc a distance of 290.69 feet to an iron rod set in the east side of said roadway and marking the northwest corner of the conveyed lands; thence North 88°41'41" East a distance of 430.00 feet to an iron rod; thence South 51°13'49" East a distance 208.09 feet to an iron rod; thence South 13°38'15" West a distance of 95.80- feet to an iron rod; thence South 18°39'27" West a distance of 250.66 feet to an iron rod which marks the southeast corner of the conveyed lands; thence South 88°41'41" West a distance of 568.85 feet to the point and place of beginning.

Meaning and intending hereby to describe and convey a parcel of land containing 6.20 acres.

This description is taken from a survey entitled, "Dormitory Site, Southern Vermont College Property, Foothills Road, Bennington, Vermont" prepared by Morris Winn, Surveyor, Bennington, Vermont, April, 1984 [revised May 25, 1987, and recorded on November 24, 1987 in Volume O-269, Page 141 of the Land Records]."

**EXHIBIT B**

All furniture, furnishings, fixtures, machinery and equipment owned by the Debtor and located on the Campus Property as of the date of this Agreement, excluding the  the vehicles and accessions (i.e. plow and sander/spreader/sander).

.

**Exhibit C**

**Permitted Exceptions**

**A:  With respect to the Campus Property:**

1. Matters as may be shown on the following plans:

    a. Survey entitles "Plan of Land in Bennington, Vermont Belonging to Reginald W. and Josephine S. Buzzell," prepared by Burton L. Winslow, dated July 22, 1957, and recorded as Map No. 3 in the "cellar vault" of the Land Records.

    b. Plan entitled, "Dormitory Site, Southern Vermont College," prepared by Maurice Winn, dated April 1984, revised May 25, 1987, and recorded on November 24, 1987 in Volume O-269, Page 141 of the Town of Bennington Land Records.

2. Pole Easement from Southern Vermont College, Inc. to VTEL Wireless, Inc., dated May 20, 2014 and Recorded in Volume 507 at Page 92 of the Town of Bennington Land Records.

3. Easement Deed of Dedication and Acceptance by and between Southern Vermont College and the Town of Bennington dated June 8, 2010 and recorded in Volume 472 at Page 10 of the Town of Bennington Land Records, as amended by Amended and Restated Easement Deed of Dedication and Acceptance dated April 22, 2015 and recorded in Volume 506 at Page 144 of the Town of Bennington Land Records.

4. Grant of Development Rights, Conservation Restrictions and Public Access Easement by and between The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont College) and the Vermont Land Trust, Inc., dated May 11, 2005 and recorded in Volume 420 at Page 149 of the Town of Bennington Land Records; Including matters shown on or referenced in an unrecorded conservation plan entitled: "Vermont Land Trust, Southern Vermont College Property, Town of Bennington, Bennington Co., VT."

5. Grant of Historic Preservation Easement from The Corporation of Southern Vermont College, Inc. to Preservation Trust of Vermont, Inc., (the Preservation Trust") dated May 11, 2005 and recorded in Volume 420 at Page 151 of the Town of Bennington Land Records.

6. Perpetual and Exclusive Right of Easement by and between Southern Vermont College Corporation and Better TV Inc. of Bennington dated March 31, 1997 and recorded in Volume O-334 at Page 61 of the Town of Bennington Land Records.

7. Easement for utility lines from The Corporation of St. Joseph College to Central Vermont Public Service Corporation and New England Telephone and Telegraph Company dated December 9, 1974 and recorded in Volume O-209 at Page 2 of the Town of Bennington Land Records.

8.  Easement from The Foundation of Our Lady of Holy Cross Incorporated to Central Vermont
    Public Service and New England Telephone and Telegraph dated December 2, 1970 and
    recorded in Volume O-191 at Page 238 of the Town of Bennington Land Records.

9.  Permit for Guy Locations on Private Property from St. Joseph College to Central Vermont
    Public Service Corporation and New England Telephone and Telegraph dated March 10,
    1970 and recorded in Volume O-189 at Page 58 of the Town of Bennington Land Records.

10. Easement for access as described in the following deeds:

    (i)   Warranty Deed from Grace Burnap Everett to Reginald W. Buzzell and Josephine
          S. Buzzell dated August 3, 1951 and recorded in Volume O-122 at Page 49 of the
          Town of Bennington Land Records.

    (ii)  Warranty Deed of Grace B. Everett to William H. Timbee and Florence H.
          Timbee dated September 11, 1951 and recorded in Volume O-122 at Page 127 of
          the Town of Bennington Land Records.

11. Water and sewer rights as set forth in the following deeds:

    (i)   Warranty Deed from Grace Burnap Everett to Reginald W. Buzzell and Josephine
          S. Buzzell dated August 3, 1951 and recorded in Volume O-122 at Page 49 of the
          Town of Bennington Land Records.

    (ii)  Warranty Deed of Grace B. Everett to William H. Timbee and Florence H.
          Timbee dated September 11, 1951 and recorded in Volume O-122 at Page 127 of
          the Town of Bennington Land Records.

    (iii) Warranty Deed from Grace Burnap Everett to Warren H. Moore and Nellie Moor
          dated November 7, 1951 and recorded in Volume O-123 at Page 115 of the Town
          of Bennington Land Records.

    (iv)  Warranty Deed from Grace Burnap Everett to The Foundation of Our Lady of
          Holy Cross, Inc., dated July 1, 1952 and recorded in Volume O-126 at Page 85 of
          the Town of Bennington Land Records.

12. Easement to Central Vermont Public Service Corporation dated September 5, 1950 and
    recorded in Volume O-118 at Page 119 of the Town of Bennington Land Records.

13. Easement for utility lines from Edward H. Everett Co., to Twin State Gas & Electric Co.
    dated September 2, 1932 and recorded in Volume O-50 at Page 80 of the Town of
    Bennington Land Records.

14. Water right agreement by and between Edward H. Everett and John Webber dated October 14, 1914 and recorded in Volume 70 at Page 568 of the Town of Bennington Land Records.

15. Annual sewerage rental fees as set forth in an Agreement between Edward H. Everett and the Village of Old Bennington dated October 27, 1911 and recorded in Volume 70 at Page 380 of the Town of Bennington Land Records.

16. Water rights as reserved in the Warranty Deed from Holden Realty to Edward H. Everett dated November 30, 1910 and recorded in Volume 70 at Page 243 of the Town of Bennington Land Records.

17. Interest in a spring or reservoir lot said to contain three acres, more or less as described in the deed from Sarah Griswold Tenney et al to John S. Holden, and recorded in Volume 66 at Page 385 of the Town of Bennington Land Records (the "Spring Lot"); and as referenced in the Warranty Deed from Holden Realty Co., Inc. to Edward H. Everett dated November 30, 1910 and recorded in Volume 70 at Page 243 of the Town of Bennington Land Records.

18. Rights of parties in possession of the Property under written or unwritten leases or occupancy agreements.

19. Rights of the public and others legally entitled to any portion of the Property lying within the boundaries of a stream, watercourse or protected wetland.

20. Rights of the public and others legally entitled thereto in any portion of the Property lying within the boundaries of a public road, way, street or alley.

21. Terms and conditions of all land use permits, findings, and approvals issued with respect to the Land, by the Town of Bennington or the agencies, departments, commissions and boards of the State of Vermont, including but not limited to the following:

   a.   Town of Bennington Development Review Board approval for a new dormitory building and new salt shed, the related plat was filed with the Planning Office on January 21, 2003.

   b.   Town of Bennington Development Review Board approval for a new dormitory issued on January 8, 2008, the related plat was filed with the Development Review Board on January 9, 2008.

   c.   Town of Bennington Development Review Board approval for a new dormitory issued on August 7, 2012, the related plat was filed with the Development Review Board on August 7, 2012.

d.      Town of Bennington Development Review Board approval for administrative
        offices issued on May 20, 2012, and the related plat was filed with the
        Development Review Board on May 20, 2012.

e.      Zoning Permit No. 75-26 issued on March 10, 1975.

f.      Zoning Permit No. 85-119 issued on May 17, 1985.

g.      Zoning Permit No. 87-70 issued on April 15, 1987.

h.      Zoning Permit No. 89-252 issued on July 24, 1989.

i.      Zoning Permit No. 91-175 issued on June 27, 1991.

j.      Zoning Permit No. 91-326 issued on December 2, 1991.

k.      Zoning Permit No. 92-160 issued on June 30, 1992.

l.      Zoning Permit No. 95-146 issued on June 14, 1995.

m.      Zoning Permit No. 00-150 issued on June 19, 2000.

n.      Zoning Permit No. 00-218 issued on August 21, 2000.

o.      Zoning Permit No. 01-179 issued on August 14, 2001.

p.      Zoning Permit No. 02-330 issued on December 16, 2002.

q.      Zoning Permit No. 04-090 issued on April 27, 2004.

r.      Zoning Permit No. 06-326 issued on November 14, 2006.

s.      Zoning Permit No. 07-064 issued on April 25, 2007.

t.      Zoning Permit No. 07-087 issued on May 8, 2007.

u.      Zoning Permit No. 07-130 issued on May 30, 2007.

v.      Zoning Permit No. 07-233 issued on September 21, 2007.

w.      Zoning Permit No. 07-277 issued on November 6, 2007.

x.      Zoning Permit No. 08-027 issued on March 6, 2008.

y.      Zoning Permit No. 08-239 issued on May 30, 2007.

z.      Zoning Permit No. 09-060 issued on May 29, 2009.

aa.     Zoning Permit No. 09-090 issued on May 28, 2009.

bb.     Zoning Permit No. 09-229 issued on November 9, 2009.

cc.     Zoning Permit No, 10-121 issued on June 29, 2010.

dd.     Zoning Permit No. 10-131 issued on July 8, 2010.

ee.     Zoning Permit No. 11-157 issued on September 6, 2011.

ff.     Zoning Permit No. 11-157 issued on September 12, 2013, together with the
        consequences if any as a result of the failure to obtain a required certificate of
        occupancy.

gg.     Zoning Permit No. 14-005 issued on January 6, 2015.

hh.     State of Vermont Certification of Compliance No. 8B0344 issued on May 22,
        1985 recorded in Volume O-251 at Page 193 of the town of Bennington Land
        Records.

ii.     State of Vermont Certification of Compliance No. 8B0344-1 issued on July
        28, 1985.

jj.     Public Building Permit No. PB-8-0518 issued on October 29, 1987.

kk.     State of Vermont Water Supply and wastewater Disposal Permit No. WW-8-
        0066 issued on August 28, 1989.

ll.     State of Vermont Water Supply and Wastewater Disposal Permit No. WW-8-
        0066-1 issued on February 9, 1990.

mm.     State of Vermont Water Supply and Wastewater Disposal Permit No. WW-8-
        0066-2 issued on May 28, 2003.

nn.     State of Vermont Wastewater System and Potable Water Supply Permit No.
        WW-8-1125 issued on January 29, 2008 recorded in Volume 452 at Page 23
        of the Town of Bennington Land Records.

oo.     State of Vermont Wastewater System and Potable Water Supply Permit No.
        WW-8-1125-2 issued on June 29, 2016 and recorded in Volume 514 at Page
        210 of the Town of Bennington Land Records.

pp.     State of Vermont, Vermont Department of Environmental Conservation, Authorization to Discharge Under General Permit 3-9010, Permit No, 5648-9010 dated July 30, 2018 recorded in Volume 530 at Page 93 of the Town of Bennington Land Records; together with any consequence of the late filing of the 2019 annual inspection report required by such permit.

qq.     State of Vermont Land Use Permit No. 8B0344 was issued on June 7, 1985 recorded in Volume 251 at Page 193 of the Town of Bennington Land Records.  Certification of Compliance issued on May 22, 1985 recorded in Volume 251 at Page 193 of the Bennington Land Records.

rr.     State of Vermont Land Use Permit No. 8B0344-1 issued on July 8, 1985. Certification of Compliance issued on July 28, 1985.

ss.     State of Vermont Land Use Permit No. 8B0344-2 issued on December 1, 1987 recorded in Volume O-269 at Page 177 of the Town of Bennington Land Records.

tt.     State of Vermont Land Use Permit No. 8B0344-2 issued on September 7, 1989 recorded in Volume O-281 at Page 116 of the Town of Bennington Land Records.

uu.     State of Vermont Land Use Permit No. 8B0344-3 issued on July 31, 1991 and recorded in Volume O-292 at Page 41 of the Town of Bennington Land Records.

vv.     State of Vermont Land Use Permit No. 8B0344-4 issued on July 7, 2004 and recorded in Volume 410 at Page 148 of the Town of Bennington Land Records.

ww.     State of Vermont Land use Permit No. 8B0344-5 issued on February 1, 2008 and recorded in Volume 452 at Page 56 of the Town of Bennington Land Records.

xx.     State of Vermont Land Use Permit No. 8B0344-6 issued on August 26, 2010 and recorded in Volume 473 at Page 167 of the Town of Bennington Land Records.

yy.     State of Vermont Land Use Permit No. 8B0344-7 issued on May 3, 2011 and recorded in Volume 478 at Page 150 of the Town of Bennington Land Records.

zz.      State of Vermont Land Use Permit No. 8B0344-8 issued on October 4, 2012 and recorded in Volume 489 at Page 29 of the Town of Bennington Land Records.

aaa.     State of Vermont Public Water System Construction Permit, C-3097-17.0, dated November 1, 2017, Project #C-3097- 14.1, WSID # VT0005016, PIN # RU96-0131, is of record with the Vermont Department of Environmental Conservation.

bbb.     State of Vermont Conditional Use Determination, File No. 2014-332 dated March 11, 2015 and of record with the Vermont Agency of Natural Resources.

ccc.     Authorization to Discharge Under General Permit 3-9015, issued by the Vermont Department of Environmental Conservation as Permit No. 5648-9015, dated February 22, 2008, and recorded in Volume 458, Page 88 of the Town of Bennington Land Records.

ddd.     Conditional Use Determination issued by the Department of Environmental Conservation, dated July 28, 2008.

eee.     Public Water System Temporary Permit to Operate issued by the Vermont Department of Environmental Conservation, dated February 10, 2009.

22. Vermont Underground Storage Tank Form, Southern Vermont College, Facility ID#2238 and dated September 24, 1993 and recorded in Volume O-308 at Page 130 of the Town of Bennington Land Records.

23. Vermont Underground Storage Tank Form, Southern Vermont College, Facility ID#2031 (the "Site") and recorded on August 21, 2002 in Volume 385 at Page 71 of the Town of Bennington Land Records.

24. **Option**.  Option to Purchase by and between The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont College) and the Vermont Land Trust, Inc., dated May 11, 2005 and recorded in Volume 420 at Page 150 of the Town of Bennington Land Records; as affected by Subordination Agreement by and between SVC Creditor's Trust and SVC Funding, LLC dated May 22, 2019 and recorded in Volume 535 at Page 125 of the Town of Bennington Land Records.

25. Terms and conditions of an unrecorded Inter-Local Agreement by and between the Town of Bennington ("Town") and Southern Vermont College ("SVC"), dated October 28, 2013, as amended by First Amended and Restated Inter-Local Agreement dated April 22, 2015.

## EXHIBIT D

## Bill Of Sale

KNOW ALL MEN BY THESE PRESENTS THAT, Raymond J. Obuchowski, Chapter 7 Trustee for The Corporation of Southern Vermont College, Inc. (the "Seller"), for the sum of $10.00 and other good and valuable consideration to it in hand paid by Southwestern Vermont Health Care Corporation (the "Purchaser"), does by these presents, sell, assign, transfer and convey unto the Purchaser, all of Seller's right, title, and interest, if any, in and to the Personal Property (as such term is defined in that certain Purchase and Sale Agreement dated as of November ____, 2020 by and between Purchaser and Seller (the "P&S")) without warranty of any kind  AS IS WHERE IS AND WITH ALL FAULTS. Seller hereby covenants that it will, at any time and from time to time upon written request therefor, execute and deliver to Purchaser, its nominees, successors and/or assigns, any new or confirmatory instruments which Purchaser, its nominees, successors and/or assigns, may reasonably request in order to assign and transfer to Purchaser its rights, title and interest in, the Personal Property.  Notwithstanding the foregoing, the Excluded Assets (as such term is defined in the P&S) is excluded from this conveyance.

IN WITNESS WHEREOF, the undersigned, being duly authorized, has executed and delivered this instrument effective as of _____, 2020.

RAYMOND J. OBUCHOWSKI, CHAPTER 7 TRUSTEE FOR THE CORPORATION OF SOUTHERN VERMONT COLLEGE, INC.

By: _____
        Name: RAYMOND J. OBUCHOWSKI
        Title: Trustee

20306904.1