# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CORPORATION OF SOUTHERN ) | Case No. 20-10268-cab |
| VERMONT COLLEGE, INC. ) | *Chapter 7 case* |
| Debtor. ) | |

### DECLARATION OF RAYMOND J. OBUCHOWSKI, CHAPTER 7 TRUSTEE, IN SUPPORT OF MOTION TO SELL CAMPUS SALE PROPERTY [ECF#41]; GATEHOUSE SALE PROPERTY [ECF#44] AND SVC MOTOR VEHICLES [ECF#45] AND REQUESTED SALE PROCEDURES AND FOR OTHER RELIEF

The undersigned does hereby make oath and say as follows:

1. My name is Raymond J. Obuchowski, and I am the Trustee appointed in the Chapter 7 bankruptcy case of the Corporation of Southern Vermont College, Inc. ("SVC"), Case No. 20-10268, as filed on August 24, 2020, and I was previously the Chapter 7 Case Trustee in the initial filing on June 30, 2020, Case No. 20-10219.

2. As the Chapter 7 Trustee, I am statutorily charged with the duty to liquidate the property the bankruptcy estate.

3. As the Chapter 7 Trustee, I have proceeded with my administration of the bankruptcy case, and as part of that process have sought to liquidate the property of the bankruptcy estate including the SVC Campus, the SVC Gatehouse and the SVC motor vehicles. In that process I have used my "business judgment" as it relates to the proposed sale of assets relating to the administration of the Estate, including the handling of pre-petition contracts, executory contracts, and the assumption or rejection if applicable.

4.  I have been a member of the Vermont panel of Chapter 7 Trustees since 1987, having served as Trustee in well more than 10,000 Chapter 7 consumer and business cases over the past 33 years, in addition to having been and active attorney practicing both consumer and business bankruptcy law. I have been Board Certified by the American Board of Certification in both business and consumer bankruptcy law since 1992, and a fellow in the American College of Bankruptcy since 2005.

5.  As the Chapter 7 Trustee in this case, and the initial filing, I was aware of the Purchase and Sale Agreement and Occupancy Agreement ("Agreement") entered between the SVC and Moshe Perlstein ("Perlstein") on June 22, 2020 for the SVC Campus. This Agreement had been reached after extensive efforts were made by SVC, through its real estate advisor and broker, Keen Summit and TPW Realty to market the properties from March 2019, and a proposed sale by SVC to Oliverian School in early 2020, failed. In my review of the Occupancy Agreement with the initial case filing, I became aware of an anticipated summer camp to be conducted on the SVC Campus property under the Agreement with Perlstein, and based upon my business judgment and experience as a Chapter 7 Trustee, I sought dismissal of the initial case filing, which was granted, as more fully detailed in my Declaration in Support of Response to Moshe Perlstein's Objection to Proposed Sale [ECF#83-1]. The Agreement with Perlstein was for an effective sale price of Three Million ($3,000,000) Dollars and included a "break up" fee and expenses of $85,000 in the event that Perlstein wasn't the ultimate buyer.

6.  On August 24, 2020, ("SVC II - Petition Date"), I was again appointed and resumed my duties as Trustee, and commenced a further review of the June 22, 2020 Agreement. I sought and obtained Counsel (both transactional and litigation) to assist me as it related to both the

Agreement, and the newly scheduled damage and insurance claims against Moshe Perlstein resulting from the occupancy during the summer camp.

7. Subsequent to the SVC II Petition Date, in considering the Agreement and whether to proceed with that proposed sale, both I and my Attorney, Elizabeth Glynn during the month of September 2020 advised Perlstein's attorney, Carl Lisman that we perceived too many issues and problems with the June 22, 2020 Agreement and that if Perlstein wished to be the "stalking horse bidder" a new contract would have to be entered.

8. Efforts were made throughout September and the initial weeks of October to finalize a new contract, including the verification of tax consequences depending upon the nature of the buyer, of whether a "for profit" or "non-profit entity" would create any adverse tax consequences to the Estate, which upon verification with the Estate's Accountant, that occurred after the October 15 extended tax filing date when the Estate's Accountant could focus on the analysis, the nature of the buyer was realistically not an issue.

9. After efforts during the first weeks of October to finalize a new contract and resolve issues as to defaults under the Agreement with Perlstein were unsuccessful, I conferred with the Real Estate Brokers of TPW/Keen as they continued their marketing efforts, and became aware of additional parties, since the Petition Date, interested in potentially making offers to purchase the SVC Campus or SVC Gatehouse, in addition to direct inquiries which I had received.

10. With the inability reach consensus on a new Purchase and Sale Agreement with Perlstein and with recognition of the delay and extensive amount of damages from the summer camp occupancy that came to be known, I proceeded to issue a Default Notice to Moshe Perlstein and sought to seek a contract with alternative buyers. My concerns as to any further delay related to the inherent additional costs of maintaining a properties during the winter, as well as, the

expiration of the insurance coverage as of December 31, 2020. In my inquiries for continuing insurance coverage, as the current insurer advised they would not renew after the summer camp damages, is approximately $14,400 per month for short term coverage through a possible closing in January, 2021.

11. On November 12, 2020, I proceeded to enter a Purchase and Sale Agreement ("Campus PSA") with Southwestern Vermont Heath Care Corporation ("SVHCC") which Motion was filed for the sale of the SVC Campus thereafter, and I noticed all parties[1] of the procedures to make an "apple to apple" bid under the same terms and conditions as the SVHCC Campus PSA. The proposed purchase price under the Campus PSA is $3,200,000 and without any "break up" fees or expenses.

12. On November 18, 2020, I proceeded to enter a Purchase and Sale Agreement ("Gatehouse PSA") with Southwestern Vermont Heath Care Corporation ("SVHCC") which Motion was filed for the sale of the SVC Gatehouse thereafter, and I noticed all parties of the procedures to make an "apple to apple" bid under the same terms and conditions as the SVHCC Gatehouse PSA. The proposed purchase price under the Gatehouse PSA is $300,000 and without any "break up" fees or expenses.

13. The negotiations as to the contracts with SVHCC were arms-length and through our respective attorneys. Although there have been other parties that exhibited interest in the properties, no other party other than the bidders presently before the Court negotiated or provided to the Trustee a letter of intent or offer to purchase.

---

[1] As Trustee I noticed all required parties including lienholders, holders of interests, and others as required by the Bankruptcy Code and Rules, but I also send notice to any party that contacted me regarding any possible interest in purchasing the properties.

14. My efforts in the sale of the properties included posting the proposed sale through the National Association of Bankruptcy Trustee's website Market Assets for Sale (www.marketassetsforsale.com) and through confirmation of such Sale and Sale Notice being posted through www.Inforuptcy.com, both sites which seek to market to professional investors like private equity or hedge fund firms seeking to purchase distressed assets, businesses looking for strategic acquisitions, or individuals looking for financial or real estate opportunities.

15. Since my initial appointment as Trustee on June 30, 2020, I have maintained a list of parties which have contacted me to inquire about or indicated any interest in purchasing or acquiring any of the assets of the Debtor, and have served them by electronic email copies of the Sale Notices regarding the properties. Service of the Sale Notice, and Bid Procedures upon such parties is filed at **ECF#41, 44, & 45.**

16. There is nothing that I am aware of that would suggest or indicate that the proposed Buyer, SVHCC, is anything other than a good faith purchaser for the purposes of Section 363(m).

17. There is a reasonable basis and cause to waive the stay and requirements of Bankruptcy Rule 6004 and 6006, as the ongoing expenses in maintaining the properties are extensive during the winter season, and occupancy sooner by a potential buyer will reduce concerns of freezing; also, the current insurance expires on December 31, 2020, and the costs or even potential availability for replacement insurance are expensive and transfer of the properties reduces the Estate's potential liability.

18. The proposed sale of the motor vehicles is sought for sale by public auction to be conducted by a web-based online service (Proxibid) as administered and conducted through Hirchak Brothers aka Thomas Hirchak Company. Sale and removal of the vehicles by December 29th from the SVC Campus as proposed, assists the Estate in possible damage during the winter

through necessary plowing in the event of snow, and prompt sale and removal are consistent with a prompt closing on the real estate.

    I declare under the pains and penalties of perjury of the United States of America that the foregoing is true and correct.

Dated: Friday, December 11, 2020

_____
Raymond J. Obuchowski, Esq.
Chapter 7 Trustee