# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

IN RE:                             )

                                    )

CORPORATION OF SOUTHERN        )       Case No. 20-10268-cab

VERMONT COLLEGE, INC.              )       *Chapter 7 case*

                       Debtor.      )

---

### TRUSTEE'S EMERGENCY MOTION FOR RELIEF REGARDING REMOVAL OF PERSONAL PROPERTY OF MOSHE PERLSTEIN OR HIS ENTITIES FROM THE SOUTHERN VERMONT COLLEGE CAMPUS PROPERTY AND FOR SUCH OTHER NECESSARY RELIEF

---

        Raymond J. Obuchowski, the chapter 7 trustee for this estate (the "<u>Trustee</u>"), requests and Emergency Hearing and the entry of an Order: (i) requiring Moshe Perlstein to remove certain personal property belonging to him or his entities from the Southern Vermont College ("<u>SVC Campus</u>") campus property, such personal property including being air conditioners, bunk beds and mattresses, basketball hoops and certain benches and tables ("<u>Camp Personal Property</u>") from the SVC Campus, all of which is located at 982 Mansion Drive, Bennington, Vermont, (the "<u>Campus Sale Property</u>") by not later than December 23, 2020; and for such other necessary and other relief including the moving and storage of such Camp Personal Property at an alternative storage facility and location as to allow the Estate to proceed with the closing on the sale of the Campus Sale Property to Southwestern Vermont Health Care Corporation ("<u>SVHCC</u>" or "<u>Buyer</u>") pursuant to 11 U.S.C. Sections 363(b) & (f) as orally approved by this Court following hearing on December 11, 2020 and by Order approving the Campus Sale property as entered on December _____, 2020 [ECF#_____].

This Motion is made in accordance with 11 U.S.C. § 105 as to proceed with the relief as granted under § 363(b) & (f), Fed.R.Bankr.P. 6004(c), Vt. LBR 6004-1, and Vt. LBR 6005-1.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On August 24, 2020, (the "Petition Date"), a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. ("Bankruptcy Code") was filed in the United States Bankruptcy Court for the District of Vermont ("Court") by The Corporation of Southern Vermont College, Inc. , Case No. 20-10268[1].

3.      On the same day, the Trustee was appointed, thereafter duly qualified, and continues to serve in that capacity.

4.      The Debtor, Corporation of Southern Vermont College, Inc., ("SVC") is the entity which operated Southern Vermont College, as located in Bennington, Vermont. On June 22, 2020, prior to the Petition Date, SVC entered a Purchase and Sale Agreement and Occupancy Agreement

---

[1] The Debtor previously filed for relief on June 28, 2020, which case was subsequently dismissed on July 4, 2020, Case No. 20-10212.

("Occupancy Agreement") with Moshe Perlstein ("Perlstein").   A copy of the Occupancy Agreement is attached as **Exhibit 1**.

5.      By virtue of the Occupancy Agreement, Perlstein operated a summer camp at the SVC Campus during July and August 2020. Following the completion of the summer camps, SVC filed its petition for bankruptcy relief. As of the Petition Date, and all times subsequent, Perlstein left substantial Camp Personal Property at the SVC Campus.

6.      Under the terms of the Occupancy Agreement, it was agreed that Perlstein could occupy the property until 90 days from June 22, 2020, ("Occupancy Period"). The Occupancy Period could be extended on written notice to SVC provided fifteen (15) days prior to its end of the then current Occupancy Period and assuming that Perlstein was not in default of the Occupancy Agreement. The Occupancy Period ended September 20, 2020. Perlstein was in default of the Occupancy Agreement for multiple reasons, and didn't provide any written request to extend.

7.      One default under the Occupancy Agreement was Perlstein's failure to timely remove his Camp Personal Property. The Camp Personal Property consists of approximately 160 window air conditioner units; 6 large rooftop air conditioner units; 30 basketball stands and hoops; certain benches and tables; and metal bunk beds and corresponding mattresses.

8.      On October 15, 2020, the Trustee issued a Default Notice to Perlstein for the multiple defaults under the Occupancy Agreement including the failure to remove the Camp Personal Property. As of the date hereof, the Camp Personal Property remains at the SVC Campus. A copy of the Default Notice is attached as **Exhibit 2**.

9.      On November 12, 2020, the Trustee entered a Purchase and Sale Agreement with SVHCC, upon Motion to Sell [ECF#44] was filed, noticed and hearing conducted on December 11, 2020, in which SVHCC was the successful bidder/buyer.

10.     Under the Purchase and Sale Agreement ("PSA") with SVHCC, a condition of closing included that the Estate as Seller, shall be responsible for the removal of all personal property of Perlstein that is located at the SVC Campus in the event that Perlstein had not reclaimed and removed its property from the SVC Campus by the date of closing. (PSA – Section 1, (e)(xviii)). A copy of the PSA is attached as **Exhibit 3**.

11.     In addition to the requirements of the Occupancy Agreement, and the request for removal under the Default Notice and failure to cure, the Movant has requested removal and to set terms of removal with Perlstein. Perlstein has not responded or provided any detail of when he would retrieve and remove such Camp Personal Property.

12.     The failure to remove the Camp Personal Property jeopardizes the Estate's ability to immediately close the sale to SVHCC prior to the end of the year, which closing is necessary due to the expiration of insurance coverage on December 31, 2020; the cost associated with replacement insurance initially estimated at $14,400, but upon receipt of quote may be $20,000; and the inherent expenses and risks of maintenance of the property during the winter season.

13.     The Trustee is in the process of seeking alterative storage facilities at nearby locations in which the Campus Personal Property could be moved but there will be inherent labor expenses and rent due for the removal, transportation and storage of the Camp Personal Property.

14.     Due to the condition that Perlstein left the SVC Campus property for the end of the summer camps, and as of the end of the Occupancy Period, any removal of the Camp Personal Property will require necessary supervision as to prevent or avoid further concerns or damages.

## RELIEF REQUESTED

15.     By this Motion, the Trustee seeks emergency hearing and relief from the Court requiring Perlstein to retrieve and remove the Camp Personal Property from the SVC Campus, as to allow the Estate to proceed with the closing on the sale of the Campus Sale Property to SVHCC, as has been approved and ordered by the Court. Alternatively, to the extent that Perlstein fails to retrieve and remove the Camp Personal Property, that the Trustee is authorized to remove and re-locate such Camp Personal Property to such storage facility or facilities as necessary as to be able to proceed with closing, with the costs, expenses and rents associated with such removal, relocation and storage being assessed and collectible against Perlstein and the Perlstein deposit being held.

## GROUNDS FOR RELIEF

16.     Section 105(a) of the Bankruptcy Code grants the Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." "It is well established that the bankruptcy court enjoys broad equitable power under section 105." *In re Rubenstein*, 2010 WL 3765952, at *7 (Bankr. D. Conn. Sept. 20,

2010)(citing *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990)).

## NOTICE

17.     Trustee will serve a copy of this Motion and Notice of Emergency Hearing on the following parties, by electronic mail, (if available), to the extent not already served through the Court's ECF:  (i) the Office of the United States Trustee for the District of Vermont, (ii) Moshe Perlstein and his attorney, Carl Lisman, Esq. (iii) Community Bank, Debtor's secured lender, (iv) all parties in interest that have entered notice of appearance in the case, and  (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002.


**18.**     The Trustee would request a ZOOM hearing will be held on **December 16, 2020, at 11:00 a.m.**, before the U.S.  Bankruptcy Court at the Court's "audio-video / zoom location; and the Courtroom Deputy shall provide the Zoom information to all key parties (as identified by the Trustee). Anyone else who wishes to participate in this hearing may contact the Courtroom Deputy (jody_kennedy@vtb.uscourts.gov) to get the necessary Zoom access information.   The AUDIO/ZOOM instructions will be included in the Order Granting Emergency Hearing and Notice of Emergency Hearing.


**WHEREFORE**, the Trustee requests the entry of an Order (i) granting and setting an Emergency Hearing on the Trustee's Motion for Removal of Personal Property and other relief; and (ii) approving and ordering the removal of the Campus Personal Property by Moshe Perlstein on such terms and conditions as the Court may deem appropriate and necessary; and alternatively (iii) approving and ordering the removal, relocation and storage of the Campus Personal Property by the Trustee and the assessment of such costs and expenses upon Moshe Perlstein on such terms

and conditions as the Court may deem appropriate and necessary, including, against the Perlstein

deposit being held, and  such other and further relief as the Court deems just and proper.

DATED at Royalton, Vermont: Monday, December 14, 2020.

**BANKRUPTCY ESTATE OF
CORPORATION OF SOUTHERN
VERMONT COLLEGE, INC.**

By:    /s/ Raymond J. Obuchowski
       Raymond J. Obuchowski, Esq.
       Attorney to Chapter 7 Trustee
       Obuchowski Law Office
       PO Box 60; 1542 VT Route 107
       Bethel, Vermont   05031
       (802) 234-6244 (802)
       234-6245 *telefax*
       ray@oeblaw.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

IN RE:                                    )
                                          )
CORPORATION OF SOUTHERN                   )      Case No. 20-10268-cab
VERMONT COLLEGE, INC.                     )      *Chapter 7 case*
                        Debtor.           )

---

## LIST OF EXHIBITS

---

**EXHIBIT 1 –** Occupancy Agreement …………………………..        Page   9

**EXHIBIT 2** – Default Notice ……………………………….…..        Page   17

**EXHIBIT 3** – Purchase and Sale Agreement………………..…..        Page   44

## OCCUPANCY AGREEMENT

This **OCCUPANCY AGREEMENT** (this "Agreement"), dated as of June 22, 2020 (the "Execution Date"), is by and between The Corporation of Southern Vermont College, Inc. (d/b/a Southern Vermont College) a Vermont Not For Profit Corporation with its principal place of business in Bennington, Vermont (the "Seller"), and Moshe Perlstein, of Zicrhon Chaim, 641 Knickerbocker Road, Livingston Manor, NY 12758 (the "Purchaser"); with Seller and Purchaser referred to herein individually as a "Party" and collectively as the "Parties."

### WITNESSETH:

**WHEREAS,** Seller owns and operates that certain parcel of real property located at 982 Mansion Drive, Bennington, Vermont  05201, known as the "Campus Property" which consists of the former Southern Vermont College Campus more particularly described on the attached Exhibit A;  and

**WHEREAS,** pursuant to the terms and conditions of a Purchase and Sale Agreement of even date herewith by and between the parties (as the same may be amended from time to time, the "Purchase and Sale Agreement"), Seller has agreed to sell and Purchaser has agreed to purchase the Campus Property subject to the terms and conditions set forth therein; and

**WHEREAS,** the Purchaser has requested and the Seller has agreed to allow the Purchaser to take possession and occupancy of the Property during the "Occupancy Period" described below.

**NOW, THEREFORE,** in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Incorporation of Recitals; Defined Terms.  The foregoing recitals are incorporated

{B2197555.1 08415-0035}

herein by reference.  All defined terms used but not defined in this Agreement shall have the meanings given to such terms in the Purchase and Sale Agreement.

2.      Term; Possession; Right to Renew.  The Seller hereby agrees that the Purchaser may occupy, and the Purchaser hereby accepts such occupancy, the Property from the date the Landlord receives the Deposit under the Purchase and Sale Agreement (the "Commencement Date") until the date that is the earlier of (a) ninety days (90) from the Execution Date (the "Occupancy Period") and (b) the date upon which the Purchase and Sale Agreement is terminated.   The parties hereby acknowledge that the Seller will deliver possession of the Property on the Commencement Date to the Purchaser in "as is, where is, with all faults" condition.  This Agreement includes Purchaser's use of all personal property of the Seller located on the Property excluding the Excluded Property.  Assuming that the Purchaser has not defaulted under this Agreement during the Occupancy Period and the Purchase and Sale Agreement has not been terminated, the Purchaser shall have the right to extend the Occupancy Period at the same price upon written notice to the Seller received at least fifteen (15) days prior to the end of the then current Occupancy Perioduntil the date on which the Purchase and Sale Agreement is terminated. Purchaser shall immediately vacate the Property at the end of the Occupancy Period including removal of its personal property.

3.      Rent. The Purchaser shall pay the Seller consideration of $1 per month for occupancy during the Occupancy Period, sent to Seller at Southern Vermont College, P.O. Box 377, Bennington, Vermont 05201.  Rent shall be prepaid on a monthly basis.  The first monthly payment of rent is due on the date this Agreement is signed and on first (1st) day of each month thereafter.  Rent shall not be pro rated for any partial month.

4.      Maintenance.  The Purchaser shall maintain the Property, including the buildings, outdoor landscaping and other grounds, and shall keep the Property in substantially the same

condition as exists on the date hereof, normal wear and tear excepted.  The Purchaser shall be responsible for any major repairs necessary to keep the Property in substantially the same condition as exists on the date hereof.  The Purchaser shall either pay directly or reimburse, as appropriate under the circumstances, all the Seller's costs of maintaining, operating and repairing the Property for the Occupancy Period including without limitation Seller's casualty and liability insurance premiums, utilities (electricity, propane, water, sewer), maintenance (including the Seller's maintenance contractor's fees, janitorial, landscaping and security), water bond pro rated payments and vehicle maintenance and insurance for Seller's pick-up truck used in connection with the Property.  To the extent Purchaser wishes to terminate the current maintenance contract in place, Purchaser shall give Seller thirty (30) days' notice of such intent to terminate and shall be responsible for all costs and charges during such period.

5.      No Interference; Restoration.  The Purchaser shall (x) not interfere unreasonably with the operation of the remainder of Seller's property, and (y) restore the Property to its prior condition after the end of the Occupancy Period if the Purchase and Sale Agreement is terminated.  These obligations shall specifically survive the expiration or termination of this Agreement.

6.      Indemnity.  The Purchaser hereby agrees to indemnify, defend, and hold the Seller harmless from and against any and all liabilities, losses, claims, demands, costs, expenses, and judgments of any nature arising, or alleged to arise, from or in connection with any injury to, or the death of, any person or loss or damage to property occurring on the Property and arising from or in connection with the Purchaser's use and/or occupancy of the Property, including those arising from the Purchaser's guests, campers, clients, invitees, contracts, agents and assigns. These obligations shall specifically survive the expiration or termination of this Agreement.

{B2197555.1 08415-0035}

3

7.     Insurance.  Subject to the Purchaser's reimbursement of premium costs, the Seller shall maintain casualty insurance it currently carries and general liability insurance in reasonable amounts.  The Purchaser shall carry general liability insurance of with coverages of least $1,000,000 per occurrence/ $2,000,000 aggregate including sexual molestation coverage and additional umbrella coverage of at least $2,000,000 and workers compensation insurance in commercially reasonable amounts and shall name Seller as an additional insured on such policies.  Purchaser shall provide proof of such coverage as of the Execution Date and at anytime thereafter requested by Seller.  The Purchaser, at the Purchaser's expense, will maintain casualty insurance covering all personal property of the Purchaser located at the Property. The Purchaser retains the risk of loss to the Purchaser's personal property at the Property and waives any claim against the Seller arising out of damage to, or theft of, the Purchaser's personal property.

8.     Use.  The Purchaser shall use the Property only as a camp and rental facility for weddings/sporting use.

9.     Default.  If the Purchaser defaults under this Agreement or the Purchase and Sale Agreement, the Seller shall have the right to terminate this Agreement by providing written notice to the Purchaser (the "Default Notice") of such termination, unless the Purchaser cures such default within ten (10) days of its receipt of the Default Notice.  If either party is adjudged by a court of competent jurisdiction to be in default under the terms of this Agreement, attorneys' fees and costs shall be awarded to the prevailing party. In addition, the Seller may enter and take possession of the Property either with or without process of law and remove the Purchaser with or without having ended this Agreement and may alter locks and other security devices at the Property either at the end of this Agreement or following a default.  The Purchaser waives claims for damages by reason of the Seller's re-entry, repossession or alteration of locks or other security devices and for damages by reason of any legal process.

{B2197555.1 08415-0035}

4

10.     <u>Occupants; Third Parties</u>.  There shall be no occupants of the Property except the campers, guests, volunteers (including Board members) and employees of the Purchaser.  The Purchaser shall not sublet or assign the Purchaser's interest in this Agreement without prior written consent of the Seller, which consent may be withheld in the Seller's sole discretion.  Subject to the foregoing, this Agreement shall be binding and inure to the benefit of the parties thereto and their respective successors and assigns.

11.     <u>Completed Understanding of the Parties.</u>  This Agreement represents the entire understanding of the parties hereto as to the Purchaser's occupancy of the Property, and there are no representations or agreements between the parties that are not set forth herein.  No modification of this Agreement shall be effective unless it is in writing and signed by all parties to this Agreement.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Vermont.

12.     <u>No Residential Rental Agreement.</u>  The Seller and the Purchaser acknowledge and agree that Purchaser's occupancy of the Property pursuant to this Agreement shall not constitute a residential rental agreement within the meaning of the Vermont Residential Rental Agreement Act, Chapter 137 of Title 9, Vermont Statutes Annotated.

13.     <u>Counterparts</u>.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**SELLER:**

The Corporation of Southern Vermont College, Inc.

By: _____
      David Newell

**PURCHASER:**

By: _____
      Moshe Perlstein

**EXHIBITS**

Exhibit A – Legal Description

## EXHIBIT A

### Property Legal Description

**Campus**

Parcel 1

Being all and the same lands and premises conveyed to The Corporation of Southern Vermont College, Inc., by Warranty Deed from Everett Estate Associates Limited Partnership, dated December 22, 1986, and recorded at Volume O-262, Page 157 of the Land Records, and more particularly described therein as follows:

"Being the same lands and premises conveyed to this Grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983, recorded on August 2, 1983 in Book O-243 at Page 51 of the Bennington, Vermont, Land Records and described therein as follows:

Beginning at a point in the west line of Monument Avenue, so called, in the Town of Bennington, Vermont, said point being the northeast corner of the lands of George Van Santvoord and the southeast corner of the herein described property;  thence along the line of lands of the said Van Santvoord the following courses and distances:  S 56°30' W 300.29 feet, N 74°48'08" W 1395.24 feet, S 16° 37' 51" 1100.70 feet, S 16°47'04" W 109.73 feet, N 73°43'33" W 1544.06 feet and S 16°00'13" W 976.45 feet; thence along the line of lands of Fillmore Farms, Inc the following courses and distances: N 73°11' W 2305.8 feet, N 15°10' E 1748.6 feet, S 76°00' E 559.2 feet, N 18°06'35" E 2535.97 feet and S 74°16'33" E 2672.29 feet; thence through lands of this grantor, Grace Burnap Everett, the following courses and distances:  S 74°16'33" E 250.57 feet, N 22°57'E 417.98 feet, N 23°30' E 139.69 feet, N 29°07' E 85.41 feet and N 34°58' E 137.42 feet; thence along the south line of lands of R.W. Buzzell S 81°47' E 75.53 feet; thence along the line of lands of John Alonzo S 37°37' W 165.37 feet and S 28°29' W 83.44 feet; thence along the line of lands of Edward H. Everett Company the following courses and distances:  S 22°37' W 126.41 feet, S 17°31'W 424.5 feet, S 22°18' W 167.28 feet; thence through lands of Edward H. Everett Company S 74°16'33" E 727.96 feet to the west line of said Monument Avenue; thence along the west line of said Monument Avenue the following courses and distances: S 10°41' E 378.55 feet, S 12°16' E 847.28 feet, S 23°08' E 698.68 feet and S 9°41' E 267.2 feet to the place of beginning.  Containing 371 acres of land be the same more or less.

Excepting however, from said 371 acres of land, more or less, 6.2 acres of land, more or less, conveyed by the Grantor herein to The Corporation of Southern Vermont College, Inc. by Warranty Deed dated June 24, 1985 and recorded on August 1, 1985, in Book O-252 at Page 221 of the Land Records of the Town of Bennington, Vermont.

Together with all rights, rights of way and easements applicable and appurtenant to the granted premises as set forth in deed of Grace Burnap Everett to The Foundation of Our Lady of Holy Cross, Incorporated, dated July 1, 1952, recorded in the Town Clerk's Office at Bennington in Book 0-126, page 85 of Land Records .... "

{B2197555.1 08415-0035}

7

Parcel 2

Being all and the same lands and premises being conveyed to Corporation of Southern Vermont College by Warranty Deed from The Everett Estate Associates, a Vermont Limited Partnership, dated June 24, 1985, and recorded at Volume O-252, Page 221 of the Bennington Land Records, and therein described, in part, as follows:

"Being a portion of the lands conveyed to this grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983 and recorded August 2, 1983 in Book O-243, Page 51 of the Town of Bennington Land Records; these lands are described as follows:

Beginning at an iron rod set in the easterly side of a private road through lands of this grantor, and marking the southwest corner of the described lands; thence North 5°32'51" East along said roadway a distance of 180.87 feet to a point; thence continuing on an arc a distance of 290.69 feet to an iron rod set in the east side of said roadway and marking the northwest corner of the conveyed lands; thence North 88°41'41" East a distance of 430.00 feet to an iron rod; thence South 51°13'49" East a distance 208.09 feet to an iron rod; thence South 13°38'15" West a distance of 95.80- feet to an iron rod; thence South 18°39'27" West a distance of 250.66 feet to an iron rod which marks the southeast corner of the conveyed lands; thence South 88°41'41" West a distance of 568.85 feet to the point and place of beginning.

Meaning and intending hereby to describe and convey a parcel of land containing 6.20 acres.

This description is taken from a survey entitled, "Dormitory Site, Southern Vermont College Property, Foothills Road, Bennington, Vermont" prepared by Morris Winn, Surveyor, Bennington, Vermont, April, 1984 [revised May 25, 1987, and recorded on November 24, 1987 in Volume O-269, Page 141 of the Land Records]."



# Obuchowski
# Law Office

**ATTORNEYS AT LAW**

Mailing:  P.O. Box 60, Bethel, VT  05032
Physical: 1542 Route 107, Royalton, VT
Telephone:   (802) 234-6244
Telefax:     (802) 234-6245

Website:     www.oeblaw.com

Raymond J. Obuchowski
*ray@oeblaw.com*

October 15, 2020

VIA FEDERAL EXPRESS

Moshe Perlstein
Zichron Chaim
641 Knickerbocker Road
Livingston Manor, New York 12758

Moshe Perlstein
1305 Forest Avenue
Lakewood, NJ 08701-1771

**DEFAULT NOTICE**

Re:   Purchase and Sale Agreement and Occupancy Agreement dated June 22, 2020
        The Corporation of Southern Vermont College, Inc., as Seller
        Moshe Perlstein, as Purchaser

Dear Mr. Perlstein:

You, as Purchaser, entered into a Purchase and Sale Agreement with The Corporation of Southern Vermont College, Inc. (the "College"), as Seller dated June 22, 2020, for the purchase of the Southern Vermont College campus property with an address of 982 Mansion Drive, Bennington, Vermont and certain personal property (the "Property"), and at the same time entered into an Occupancy Agreement for the Property dated June 22, 2020, (collectively, the "Agreement").

Your occupancy period commenced on June 24, 2020, the date the $300,000 deposit was made as set forth in the Agreement and ran through September 22, 2020.

On August 24, 2020, The Corporation of Southern Vermont College, Inc. filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 20-10268 in the United States Bankruptcy Court for the District of Vermont. On August 24, 2020, Raymond J. Obuchowski was appointed Chapter 7 trustee of the College's bankruptcy estate.

This letter is intended to provide you formal notice (the "Notice") that you are in breach and default of Agreement. The defaults, include, but are not limited to:

  a.  Failure to maintain the Property and keep the Property in substantially the same condition, excepting normal wear and tear.

b. Responsibility for major repairs to keep the Property in substantially the same condition as existed on date of Agreement (i.e. structural access and doorways changed).
c. Failure to pay or reimburse the costs of maintaining, operating and repairing the Property.
d. Failure to remove all of your personal property (Air Conditioners, bunk beds)
e. Unauthorized removal from the real Property of kitchenware, and failure to reinstall removed sinks, ice maker, etc. in the dining hall.

During the occupancy, there was considerable damage done to the Property, for which you as Purchaser are responsible. An insurance claim has been made for the damage associated with the the sprinkler head that was broken, which is pending, with a large deductible due, and there was considerable other damage done to the Property, not covered by insurance.

Certain expenses were to be paid by you as Purchaser during the term of the occupancy pursuant to the Agreement, which have not been paid. A summary of the expenses known to date is attached is attached as *Attachment 1.*

You also incurred certain direct expenses at the Property. Your attorney Carl Lisman forwarded some of those invoices. (*Attachment 2*). The bankruptcy estate needs proof that all bills for expenses incurred at the Property during the occupancy period have been paid.

The Agreement also provides that the Property be restored to its prior condition after the occupancy period ends if the Purchase and Sale Agreement is terminated. The Property was delivered as winterized, and you de-winterized it for your use. The re-winterization of the Property tis underway.

A cure of the default requires a cure of all of the defaults within the 30-day period, including, without limitation, the payment of all expenses and the repair of all damage.

The damage repair must be done by Vermont licensed contractors as approved by the Trustee, to code, subject to inspection and approval by all required governmental authorities. All repair work must to be done in coordination and oversight by Hale Resources, the property manager.

**NOTICE IS HEREBY GIVEN** that in the event you do not cure the default within 30 days of your receipt of this Notice, Seller has the right to declare the Agreement terminated and retain Deposit paid as liquidated damages.

**The Corporation of Southern Vermont College, Inc.,**
Case No. 20-10268

By: _____
    Raymond J. Obuchowski, Trustee

Cc: Carl Lisman, Esq. (via email and certified mail/return receipt requested)
    Elizabeth A. Glynn, Esq.

# ATTACHMENT 1

SOUTHERN VERMONT COLLEGE - OCCUPANCY AGREEMENT

June 24, 2020 – September 22, 2020 (90 days)

| Expense | Vendor | Date | Amount |
|---|---|---|---|
| Maintenance/ Landscaping | Hale Resources | 6/24/20- 9/22/20 | **$41,055.22** |
| Electric | Green Mountain Power | | *Being calculated* |
| Reimburse Premium – Property Insurance | The Richards Group | 6/24/20-9/22/20 | **$14,173.00** |
| Reimburse Premium – General Liability Insurance | The Richards Group | 6/24/20-9/22/20 | **$791.00** |
| Reimburse Premium – Business Auto Insurance | The Richards Group | 6/24/20-9/22/20 | **$404.00** |
| Water/Sewer – 982 Mansion – Main Bldg. | Town of Bennington | June 24 - Sept 29, 2020 (97 days)<br><br>Mansion–Usage = 28,000 gallons<br>Usage FEE = $ 266.56<br>Base Fee = $ 161.34 | Usage FEE = $266.56 plus Base Fee = $149.70 (prorated based on 90 days) = **$416.26** |
| Water/Sewer – 363 Mansion Road – Gym | Town of Bennington | June 24 - Sept 29, 2020<br><br>Gym –Usage = 256,000 gallons<br>Usage FEE = $2,437.12<br>Base Fee = $ 161.34 | Usage FEE = $2,437.12 plus Base Fee = $149.70 (prorated based on 90 days) = **$2,586.82** |
| Water/Sewer – 406 Mansion – ABC | Town of Bennington | June 24 - Sept 29, 2020<br><br>ABC Dorm–Usage = 421,000 gallons<br>Usage FEE = $4,007.92<br>Base Fee = $161.34 | Usage FEE = $4,007.92 plus Base Fee = $149.70 (prorated based on 90 days) = **$4,157.62** |
| Water/Sewer – 456 Mansion – Hunter | Town of Bennington | June 24 - Sept 29, 2020<br><br>Hunter Dorm – Usage = 356,000 gallons<br>Usage FEE = $3,389.12<br>Base Fee = $161.34 | Usage FEE = $3,389.12 plus Base Fee = $149.70 (prorated based on 90 days) = **$3,538.82** |

| Water/Sewer – 436 Mansion-Dining | Town of Bennington | June 24 - Sept 29, 2020<br><br>Dining Hall – Usage = 49,000 gallons<br>Usage FEE = $466.48<br>Base Fee = $161.34 | Usage FEE = $466.48 plus Base Fee = $149.70 (prorated based on 90 days) = **$616.18** |
|---|---|---|---|
| Water/Sewer – 388 Mansion - DE Dorm | Town of Bennington | June 24 - Sept 29, 2020<br><br>DE Dorm–Usage = 114,000 gallons<br>Usage FEE = $1,085.28<br>Base Fee = $161.34 | Usage FEE = $1,085.28 plus Base Fee = $149.70 (prorated based on 90 days) = **$1,234.98** |
| Water/Sewer – 4 Mansion-Low-Lab | Town of Bennington | June 24 - Sept 29, 2020<br><br>Lower Lab–Usage = 21,000 gallons<br>Usage FEE = $ 199.92<br>Base Fee = $ 161.34 | Usage FEE = $199.92 plus Base Fee = $149.70 (prorated based on 90 days) = **$349.62** |
| Water/Sewer – Monument Ave.-Ball Field (flat rate) (*if ball field used by camp*) | Town of Bennington | Period: 7/1/20-9/30/20 – flat fee $145.95 – | **$133.26**<br><br>(84 days – 7/1/-9/22/20) |
| Water Labor – Turn On 3 buildings | Town of Bennington | 6/30/20 – service Statement date 8/28/20 | **$75.00** |
| Water Bond | Town of Bennington | $42,812.09/annual payment –<br><br>Pro-rated - $117.29 per diem x 90 days = $10,556.41 | **$10,556.41** |
| Propane – Suburban<br><br>Need to confirm Moshe Perlstein had his own account set up and that it is paid | | | |
| Need proof other expenses incurred by purchaser paid | *Known at this time:* Atlantic Fire Sprinkler, Inc.<br><br>Flynn Electric, dba | Date of invoice 7/7/20<br>Date of invoice 7/17/20<br><br>Date of invoice 7/16/20 | $2,760.00<br>$1,011.00<br><br>$14,434.00 |

2

| | Monument Electric Roy Plumbing & Heating, Inc. | Date of invoice 7/14/20 Date of invoice 6/30/30 | $4,025.00 $19,117.46 |
| | Bennington Cooling & Heating | Date of invoice 7/14/20 | $4,299.09 |

10342/1/1076908

3

# ATTACHMENT 2

# Invoice

Atlantic Fire Sprinkler Inc.

802/447-1703
PO BOX 981
Bennington, VT  05201

| Date | Invoice # |
|------|-----------|
| 7/7/2020 | 10287 |

| Bill To |
|---------|
| ZICHRON CHAIM INC<br>140 LEHIGH AVE<br>LAKEWOOD NJ  08701 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| JOHN HALE | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 2 | WET SYSTEM INSPECTION - SOUTHERN VERMONT COLLEGE | 250.00 | 500.00 |
| 1 | FIRE PUMP INSPECTION | 450.00 | 450.00 |
| 2 | INTERNAL PIPE INSPECTION | 600.00 | 1,200.00 |
| 2 | VT STATE STICKER FEE | 0.00 | 0.00 |
| 3 | SERVICE - REPLACE (3) SYSTEM GAUGES (DORM) | 95.00 | 285.00 |
|   | INSTALL (1) SYSTEM GAUGE INSTALL HEAD BOX - ADD SPARE HEADS AND WRENCH (MANSION) | | |
| 1 | MATERIAL | 325.00 | 325.00 |

| | Total | $2,760.00 |
|-|-------|-----------|

# Invoice

Atlantic Fire Sprinkler Inc.

802/447-1703
PO BOX 981
Bennington, VT  05201

| Date | Invoice # |
|------|-----------|
| 7/17/2020 | 10308 |

| Bill To |
|---------|
| ZICHRON CHAIM INC<br>140 LEHIGH AVE<br>LAKEWOOD NJ  08701 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| VERBAL | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 3 | SERVICE CALL 07/27/20 - REMOVE AND REPLACE BROKEN FIRE SPRINKLER HEAD ROOM 312 - RESET SYSTEM | 95.00 | 285.00 |
| 3 | HELPER | 52.00 | 156.00 |
| 2 | 07/29/20 - REFILLING WATER STORAGE TANK | 95.00 | 190.00 |
| 4 | 08/04/20 - REFILLING WATER STORAGE TANK - RESET LOW WATER ALARM | 95.00 | 380.00 |

| | Total | $1,011.00 |
|---|-------|-----------|



## ELECTRICAL CONTRACTORS
INDUSTRIAL - COMMERCIAL - RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS
GENERATORS

Flynn Electric, dba Monument Electric
**P.O. Box 968**
**Bennington, VT  05201**

Voice:  802-447-0784
Fax:  802-447-8634
E-mail:  office@monumentelectric.net

# Invoice
Invoice Number:
**10135**
Invoice Date:
7/16/20
Page:
1

Duplicate

Sold To:

**ZICHRON CHAIM INC**
**C/O TZVI PERLSTEIN**
**19 DOVER TERRACE**
**MONSEY , NY  10952**

Customer ID:  ZICHRON CHAIM INC

| Customer PO | Payment Terms | JOB # | Due Date |
|---|---|---|---|
|  | Net 30 Days | 1-732-523-1481 | 8/15/20 |

| Description | Amount |
|---|---|
| MISC. ELECTRICAL / FIRE ALARM WORK FOR THE SUMMER CAMP AT FORMER SOUTHERN VERMONT COLLEGE CAMPUS AS DESCRIBED BELOW: |  |
| 1. REPLACED THE FOLLOWING EQUIPMENT PER TOWN OF BENNINGTON BLDG INSPECTION REPORTS: |  |
| 116 - 120VOLT SINGLE STATION DETECTORS |  |
| 10 - EMERGENCY LIGHT BATTERIES |  |
| 15 - VARIOUS SIZE FIRE ALARM PANEL BATTERIES. |  |
| LABOR: 57.5HRS X $65/HR | 3,737.00 |
| MATERIAL: | 7,597.00 |
| . |  |
| . |  |
| 2. MISC. ELECTRICAL WORK AS INSTRUCTED BY ZICHRON CHAIM STAFF: |  |
| POWER TO TWO TEMPORARY COOLER/FREEZERS AT HUNTER HALL. |  |
| MET W/ MR. SOMERS AT GYMNASIUM TO DISCUSS HVAC NEEDS. |  |
| MET W/ STEVE TO DISCUSS LICENSE PLATE READER AND ADDITIONAL CAMERA NEEDS. |  |
| LABOR: 25HRS X $65/HR | 1,625.00 |
| MATERIAL: | 1,375.00 |
| ELECTRICAL PERMIT: | 100.00 |
| . |  |
| **THIS INVOICE IS FOR WORK PERFORMED UP TO AND INCLUDING 7/16/20. |  |

| | |
|---|---|
| Total Invoice Amount | 14,434.00 |
| Check/Credit Memo No:   Payment/Credit Applied |  |
| **TOTAL** | 14,434.00 |



## ELECTRICAL CONTRACTORS
INDUSTRIAL - COMMERCIAL - RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS
GENERATORS

Flynn Electric, dba Monument Electric
P.O. Box 968
Bennington, VT  05201

Voice:  802-447-0784
Fax:  802-447-8634
E-mail:  office@monumentelectric.net

## Invoice
**Invoice Number:**
10130
**Invoice Date:**
7/14/20
**Page:**
1

Sold To:

**ZICHRON CHAIM INC**
**C/O TZVI PERLSTEIN**
**19 DOVER TERRACE**
**MONSEY , NY 10952**

Customer ID:  ZICHRON CHAIM INC

Duplicate

| Customer PO | Payment Terms | JOB # | Due Date |
|---|---|---|---|
|  | Net 30 Days |  | 8/13/20 |

| Description | Amount |
|---|---|
| PERFORMED ANNUAL FIRE ALARM SYSTEM INSPECTIONS OF ALL FIRE ALARM SYSTEMS ON CAMPUS. PROVIDED INSPECTION STICKERS - FILED REPORTS W/ DEPT PUBLIC SAFETY. | |
| . | |
| LABOR: | 3,625.00 |
| INSPECTION STICKERS: | 400.00 |

| | |
|---|---|
| Total Invoice Amount | 4,025.00 |
| Check/Credit Memo No:          Payment/Credit Applied | |
| **TOTAL** | 4,025.00 |

TQP03B



www.vtfiresafety.org

### State of Vermont
### Department of Public Safety
### Division of Fire Safety
### TQP Inspection Report

| | |
|---|---|
| Please do not use handwriting in the fields to the right. They *should* be filled by typewriter or printer. | |

| | |
|---|---|
| VT State ID: | F#-19377 |
| TQP Certification No. | TQ-3868 |
| Employer ID* | 18559 |
| Sticker No. | 20-16519 |
| Inspection Date | 7/2/20 |

☐ Barre – 1311 US Route 302 – Berlin, Suite 500, 05641
    Phone (802) 479-4434

☒ Rutland – 56 Howe Street, Bldg. A, Suite 200, 05701
    Phone (802) 786-5867

☐ Williston -- 372 Hurricane Lane, Suite 102, 05495
    Phone (802) 879-2300

☐ Springfield -- 100 Mineral Street, Suite 307, 05156
    Phone (802) 885-8883

Name of Building:  FORMER SOUTHERN VT COLLEGE          Site #:   E&D DORM

911 Address:   MANSION DRIVE

| Town: | BENNINGTON | | Zip Code | 05201 |
|---|---|---|---|---|
| Owner: | STEVE PERLSTEIN / LEASEE | | Telephone | 1-732-503-3596 |
| Town: | 19 DOVER TERRACE  MONSEY | State   NY | Zip Code | 10952 |

Inspection type: ☒ Fire Alarm       ☐ Suppression       ☐ Sprinkler       ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):   WILLIAM KINNEY          Employer:   MONUMENT ELECTRIC

Signature of Inspector: _____          ✉ E-MAILED

Violations Noted: ☒ Yes      ☐ No   (please use additional pages as necessary)
    1. H/S ON 1ST / 2ND FLR NOT WORKING.
    2. NEW WALL CONSTRUCTED IN 1ST FLR COMMON AREA SPLITTING ROOM IN HALF.
    SYSTEM SMOKE DETECTOR COVERAGE ONLY ONE SIDE OF WALL

\* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
- A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
- This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.

TQP03B



www.vtfiresafety.org

# State of Vermont
## Department of Public Safety
## Division of Fire Safety
### TQP Inspection Report

| | |
|---|---|
| Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer. | VT State ID    F#-20484 |
| | TQP Certification No.    TQ-3868 |
| | Employer ID*    18559 |
| | Sticker No.    20-16520 |
| | Inspection Date    7/2/20 |

☐ **Barre** – 1311 US Route 302 – Berlin, Suite 500, 05641
    Phone (802) 479-4434

☒ **Rutland** – 56 Howe Street, Bldg. A, Suite 200, 05701
    Phone (802) 786-5867

☐ **Williston** -- 372 Hurricane Lane, Suite 102, 05495
    Phone (802) 879-2300

☐ **Springfield** -- 100 Mineral Street, Suite 307, 05156
    Phone (802) 885-8883

Name of Building:   FORMER SOUTHERN VT COLLEGE     Site #:   HUNTER HALL

911 Address:   MANSION DRIVE

Town:   BENNINGTON     Zip Code   05201

Owner:   STEVE PERLSTEIN / LEASEE     Telephone   1-732-503-3596

Town:   19 DOVER TERRACE  MONSEY    State   NY    Zip Code   10952

Inspection type: ☒ Fire Alarm     ☐ Suppression     ☐ Sprinkler     ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):    WILLIAM KINNEY     Employer:   MONUMENT ELECTRIC

Signature of Inspector:   *(signature)*      ☒ E-MAILED

Violations Noted:   ☒ Yes    ☐ No   (please use additional pages as necessary)
    1. NEW DOOR ADDED LOWER LEVEL NEAR ELEVATOR.. MAY NEED ADDITIONAL DEVICES FOR CODE COMPLIANCE.

\* This ID is _not_ your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
- A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
- This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.

 

TQP03B



TQP03B



www.vtfiresafety.org

# State of Vermont
# Department of Public Safety
# Division of Fire Safety
## TQP Inspection Report

Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer.

| | |
|---|---|
| VT State ID | F#-17660 |
| TQP Certification No. | TQ-3868 |
| Employer ID* | 18559 |
| Sticker No. | 20-16514 |
| Inspection Date | 7/2/20 |

☐ **Barre** – 1311 US Route 302 – Berlin, Suite 500, 05641
      Phone (802) 479-4434

☒ **Rutland** – 56 Howe Street, Bldg. A, Suite 200, 05701
      Phone (802) 786-5867

☐ **Williston** -- 372 Hurricane Lane, Suite 102, 05495
      Phone (802) 879-2300

☐ **Springfield** -- 100 Mineral Street, Suite 307, 05156
      Phone (802) 885-8883

Name of Building:  FORMER SOUTHERN VT COLLEGE          Site #:  BOWEN HALL

911 Address:  MANSION DRIVE

Town:  BENNINGTON                                        Zip Code  05201

Owner:  STEVE PERLSTEIN / LEASEE                         Telephone  1-732-503-3596

Town:  19 DOVER TERRACE  MONSEY          State  NY        Zip Code  10952

Inspection type: ☒ Fire Alarm     ☐ Suppression     ☐ Sprinkler     ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):  WILLIAM KINNEY          Employer:  MONUMENT ELECTRIC

Signature of Inspector: _William Kinney_                    E-mailed

Violations Noted:  ☒ Yes        No  (please use additional pages as necessary)
    1. OUTSIDE HOR/STROBE NOT WORKING.
    2. DISCONNECTED COMMUNICATOR TO SILENCE 'TRBL' CONDITION.

* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
   • A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
   • This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.

TQP03B



4



TQP03B

# State of Vermont
# Department of Public Safety
# Division of Fire Safety
# TQP Inspection Report

www.vtfiresafety.org

| | |
|---|---|
| VT State ID | F#-17763 |
| TQP Certification No. | TQ-3868 |
| Employer ID* | 18559 |
| Sticker No. | 20-16509 |
| Inspection Date | 7/2/20 |

Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer.

☐ **Barre** – 1311 US Route 302 – Berlin, Suite 500, 05641
Phone (802) 479-4434

☒ **Rutland** – 56 Howe Street, Bldg. A, Suite 200, 05701
Phone (802) 786-5867

☐ **Williston** -- 372 Hurricane Lane, Suite 102, 05495
Phone (802) 879-2300

☐ **Springfield** -- 100 Mineral Street, Suite 307, 05156
Phone (802) 885-8883

Name of Building: FORMER SOUTHERN VT COLLEGE       Site #: DINING HALL

911 Address: MANSION DRIVE

Town: BENNINGTON                                    Zip Code  05201

Owner: STEVE PERLSTEIN / LEASEE                     Telephone  1-732-503-3596

Town: 19 DOVER TERRACE MONSEY       State  NY       Zip Code  10952

Inspection type: ☒ Fire Alarm     ☐ Suppression     ☐ Sprinkler     ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):  WILLIAM KINNEY             Employer:  MONUMENT ELECTRIC

Signature of Inspector:  _William Kinney_                    E-MAP TO

AFFIX ID STICKER HERE FOR NEW OBJECTS

Violations Noted:  ☒ Yes     No  (please use additional pages as necessary)
1. SYSTEM MONITORED THRU "B" DORM FACP. 2. KITCHEN HOOD NEEDS TO CONTINUE TO RUN DURNING FIRE ALARM ACTIVATION. CURRENTLY SHUTS DOWN. 3. OUTSIDE HOR/STROBE NOT WORKING.

* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
- A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
- This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.




TQP03B



www.vtfiresafety.org

**State of Vermont**
**Department of Public Safety**
**Division of Fire Safety**
**TQP Inspection Report**

| | |
|---|---|
| Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer. | |

| | |
|---|---|
| **VT State ID** | F#-19376 |
| **TQP Certification No.** | TQ-3868 |
| **Employer ID*** | 18559 |
| **Sticker No.** | 20-16518 |
| **Inspection Date** | 7/2/20 |

☐ Barre – 1311 US Route 302 -- Berlin, Suite 500, 05641
    Phone (802) 479-4434

☒ Rutland – 56 Howe Street, Bldg. A, Suite 200, 05701
    Phone (802) 786-5867

☐ Williston -- 372 Hurricane Lane, Suite 102, 05495
    Phone (802) 879-2300

☐ Springfield -- 100 Mineral Street, Suite 307, 05156
    Phone (802) 885-8883

Name of Building:  FORMER SOUTHERN VT COLLEGE          Site #:  LAUNDRY/LAB BLDG

911 Address:  MANSION DRIVE

Town:  BENNINGTON                                        Zip Code  05201

Owner:  STEVE PERLSTEIN / LEASEE                        Telephone  1-732-503-3596

Town:  19 DOVER TERRACE  MONSEY          State    NY    Zip Code  10952

Inspection type: ☒ Fire Alarm    ☐ Suppression    ☐ Sprinkler    ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):  WILLIAM KINNEY          Employer:  MONUMENT ELECTRIC

Signature of Inspector:  _William Kinney_                    E-MAILED

          AFFIX ID STICKER HERE FOR NEW OBJECT

Violations Noted:  ☒ Yes        No  (please use additional pages as necessary)
    1. SYSTEM MONITORED THRU "E" DORM FACP.

* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
  • A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
  • This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.

TQP03B



### State of Vermont
### Department of Public Safety
### Division of Fire Safety
### TQP Inspection Report

www.vtfiresafety.org

| | |
|---|---|
| Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer. | |

VT State ID          F#-08617

TQP Certification No.   TQ-3868

Employer ID*        18559

Sticker No.          20-16525

Inspection Date      7/2/20

☐ Barre – 1311 US Route 302 – Berlin, Suite 500, 05641
    Phone (802) 479-4434

☒ Rutland – 56 Howe Street, Bldg. A, Suite 200, 05701
    Phone (802) 786-5867

☐ Williston -- 372 Hurricane Lane, Suite 102, 05495
    Phone (802) 879-2300

☐ Springfield -- 100 Mineral Street, Suite 307, 05156
    Phone (802) 885-8883

Name of Building:   FORMER SOUTHERN VT COLLEGE      Site #:   GYMNASIUM

911 Address:   336 MANSION DRIVE

Town:   BENNINGTON      Zip Code   05201

Owner:   STEVE PERLSTEIN / LEASEE      Telephone   1-732-503-3596

Town:   19 DOVER TERRACE  MONSEY      State   NY      Zip Code   10952

Inspection type: ☒ Fire Alarm      ☐ Suppression      ☐ Sprinkler      ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):   WILLIAM KINNEY      Employer:   MONUMENT ELECTRIC

Signature of Inspector:

APPLY ID STICKER HERE FOR NEW UNITS

Violations Noted:   ☒ Yes      ☐ No   (please use additional pages as necessary)
1. OUTSIDE HORN/STROBE NOT WORKING. 2. PULLSTATION AT SIDE ENTRANCE NOT WORKING.  3. NO SMOKE DETECOTR OVER THE FACP.

* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
- A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
- This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.



TQP03B

## State of Vermont
## Department of Public Safety
## Division of Fire Safety
## TQP Inspection Report

www.vtfiresafety.org

| | |
|---|---|
| VT State ID | F#-17376 |
| TQP Certification No. | TQ-3868 |
| Employer ID* | 18559 |
| Sticker No. | 20-16565 |
| Inspection Date | 7/2/20 |

Please do not use handwriting in the fields to the right. They should be filled by typewriter or printer.

☐ Barre – 1311 US Route 302 – Berlin, Suite 500, 05641
   Phone (802) 479-4434

☒ Rutland – 56 Howe Street, Bldg. A, Suite 200, 05701
   Phone (802) 786-5867

☐ Williston -- 372 Hurricane Lane, Suite 102, 05495
   Phone (802) 879-2300

☐ Springfield -- 100 Mineral Street, Suite 307, 05156
   Phone (802) 885-8883

Name of Building:  FORMER SOUTHERN VT COLLEGE          Site #:  MANSION

911 Address:  982 MANSION DRIVE

Town:  BENNINGTON          Zip Code  05201

Owner:  STEVE PERLSTEIN / LEASEE          Telephone  1-732-503-3596

Town:  19 DOVER TERRACE  MONSEY          State  NY          Zip Code  10952

Inspection type: ☒ Fire Alarm     ☐ Suppression     ☐ Sprinkler     ☐ Generator

If an ID sticker is being removed or replaced provide the inactive VT State ID number: _____

Inspector Name (print):  WILLIAM KINNEY          Employer:  MONUMENT ELECTRIC

Signature of Inspector:  _____

AFFIX STICKER HERE FOR NEW ORDERS

Violations Noted:  ☒ Yes     ☐ No   (please use additional pages as necessary)
HORN/STROBE IN BASEMETN NOT WORKING

* This ID is not your employer's federal tax ID, it is assigned by the Department - please contact the Department if you are unsure of what number your employer has been assigned.
  • A copy of this inspection report must be forwarded to the Regional Office within 15 working days.
  • This report does not relieve the Inspection Company of keeping and maintaining the reports required by NFPA.



**ELECTRICAL CONTRACTORS**
INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

P.O. Box 968
Bennington, VT. 05201

Flynn Electric, Inc. dba

# Monument Electric

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

---

## Fire Alarm System Inspection Report

Inspection date ___7/1/2020___   Inspection Sticker Number ___20-16519___   System ID # ___E-10200___

Business Name ___E+O Dairy SVC___   Phone # _____   Mgr. Name _____

Mailing Address _____

Physical Address _____

Technicians Comments:
1. H/S on 1st flr. not working
2. H/S on 2nd flr.
3. Wall constructed in 1st flr. Common Area - splitting room so both System (s) only on one side.

_____

_____

_____

_____

System: Passed_____   Passed with Violations __✓__   Failed_____

---

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*



**ELECTRICAL CONTRACTORS**
INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

Flynn Electric, Inc. dba

# Monument Electric

P.O. Box 968
Bennington, VT. 05201

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

## Fire Alarm System Inspection Report

Inspection date _7/2/2020_   Inspection Sticker Number _16520_   System ID # _2484_   _20487_

Business Name _Cole SVC_   Phone # _____   Mgr. Name _____

Mailing Address _____

Physical Address _Hunter Hall  SVC Properties  456 Mansion Dr_

Technicians Comments:
_1. New door added in hall off lower common area leading toward apt_
_Suites near elevator_

_____
_____
_____
_____
_____
_____

System: Passed _✓_   Passed with Violations _____   Failed _____

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known
components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not
intended to be nor should it be viewed as verifying inspected system having met all current and or applicable
codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements
for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This
test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of
receiving payment. Please contact our office with any questions.*

ELECTRICAL CONTRACTORS
INDUSTRIAL — COMMERCIAL — RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

P.O. Box 987
Bennington, VT. 05201

Flynn Electric, Inc. dba

# Monument Electric

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

---

## Fire Alarm System Inspection Report

Inspection date _6/30/2020_   Inspection Sticker Number _20-40514_   System ID # _F-17660_

Business Name _SVC_ _____   Phone # _____   Mgr. Name _____

Mailing Address _____

Physical Address _Bowen Hall_ _____

Technicians Comments:
1. _Outside HS not working_
2. _Disconnected offsite dialer to clear "trbl" condition_

_____
_____
_____
_____
_____
_____

System:  Passed_____    Passed with Violations __✓__   Failed_____

---

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*

ELECTRICAL CONTRACTORS
INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

P.O. Box 966
Bennington, VT. 05201

Flynn Electric, Inc. dba

# Monument Electric

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

## Fire Alarm System Inspection Report

Inspection date ___7/1/2020___   Inspection Sticker Number __20-16509__   System ID # __F- 17663__

Business Name __Dining Hall SVC__   Phone # _____   Mgr. Name _____

Mailing Address _____

Physical Address _____

Technicians Comments:
1. Outside H/S not working
2. Kitchen hood exhaust fan made to stay running during fire alarm activation.
   Currently shutsdown in alarm
3. Connected thru "B" doors FACP

_____

_____

_____

System: Passed_____   Passed with Violations___✓___   Failed_____

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components + "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*

**ELECTRICAL CONTRACTORS**
INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

Flynn Electric, Inc. dba

# Monument Electric

P.O. Box 968
Bennington, VT. 05201

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

## Fire Alarm System Inspection Report

Inspection date _7/1/2020_     Inspection Sticker Number _20-1058_     System ID # _C-19306_

Business Name _Laundry Room SK_   Phone # _____   Mgr. Name _____

Mailing Address _____

Physical Address _____

Technicians Comments:

1. No off-site monitoring

2. System connected thru "E" doors

System:  Passed ___✓___   Passed with Violations _____   Failed _____

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*



**ELECTRICAL CONTRACTORS**
INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

Flynn Electric, Inc. dba

# Monument Electric

P.O. Box 968
Bennington, VT. 05201

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

## Fire Alarm System Inspection Report

Inspection date  7/6/2020    Inspection Sticker Number  20-16535    System ID #  F-08619

Business Name  Gymnasium II          Phone # _____  Mgr. Name _____

Mailing Address _____

Physical Address  336  monument rd _____

Technicians Comments:
1. outside H/S not working
2. H/S inside hallway not working
3. No (S) over FACP

System: Passed_____    Passed with Violations  ✓    Failed_____

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*

INDUSTRIAL – COMMERCIAL – RESIDENTIAL WIRING
FIRE ALARM & SECURITY SYSTEMS-GENERATORS
PHONE/DATA-BUCKET TRUCK SERVICE

P.O. Box 968
Bennington, VT. 05201

Flynn Electric, Inc. dba
# Monument Electric

Phone: 802-447-0784
Fax:    802-447-8634
ed@monumentelectric.net
office@monumentelectric.net

## Fire Alarm System Inspection Report

Inspection date _____   Inspection Sticker Number _____   System ID # _F17376_

Business Name _____   Phone # _____   Mgr. Name _Steven Berlsdein_

Mailing Address _982_

Physical Address _982 Mansion Drive Benn VA_

Technicians Comments:
_1. this in basement not working_

_____

_____

_____

_____

_____

_____

**System: Passed_____   Passed with Violations _√_   Failed_____**

*This inspection report is intended only to verify functionality of existing fire alarm system wiring and known components - "As They Are Installed" per NFPA 72 article 1.4.1. This inspection and subsequent report is not intended to be nor should it be viewed as verifying inspected system having met all current and or applicable codes. We recommend contacting state and local inspectors for clarification of specific fire alarm requirements for this building.*

*The NFPA code required Smoke Detector Sensitivity Testing was not performed as part of this inspection. This test can be performed at an additional cost. Please contact our office to schedule.*

*A copy of the STATE inspection report will be sent to the Department of Public Safety within fifteen days of receiving payment. Please contact our office with any questions.*

# Invoice

**Roy Plumbing & Heating Inc.**
1169 Harwood Hill Road
Bennington, VT 05201
Phone # 802-447-0894   Fax # 802-442-8995

| Date | Invoice # |
|------|-----------|
| 6/30/2020 | 46852 |

**Bill To**

STEVEN PERLSTIN
SOUTHERN VERMONT COLLEGE
MANSION DRIVE
BENNINGTON, VT. 05201

**Terms**

Due on receipt

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| | COMPLETE CAMPUS WAS WINTERIZED. WE RESTORED ALL OF THE WATER SYSTEM FOR THE COMPLETE CAMPUS. DORMS, KITCHEN, HUNTER HALL, LAUNDRY, EVERETT MANSION, CAMPUS STORE. WE REPAIRED ALL PIPING AND LEAKS. | | |
| | EMERGENCY LABOR | 18,450.00 | 18,450.00 |
| | MATERIALS | 667.46 | 667.46 |

Late charge of 2% per month

Thank you for your business

**Total** $19,117.46



303 DEPOT ST., BENNINGTON, VERMONT 05201
Phone (802) 442-3519 · Fax (802) 442-6399

Camp Roaeh Chaim                                          July 14, 2020
982 Mansion Rd.
Bennington, VT 05201

Attn: Daniel Weiss

Re: Compressor replacement for large walk in freezer

To all concerned,

A recent service call revealed that your compressor has become inefficient and will no longer freeze your product properly.

Please find below itemized pricing for the parts and labor to restore operation to the freezer.

Compressor          $3391.57
Start capacitor     $   51.52
Labor to repair     $  856.

Total               $4299.09

Option:

As an option you may purchase a 4 year extended compressor part warranty. This would extend your included 1 year part warranty to a total of 5 years.

**Warranty Option :____  $760.29**

**Camp Roaeh Chaim**                    Bennington Cooling and Heating

Accepted by: _____          Proposed by: _Richard Ellis_

Title: _____                Title: _CEO / Svc. mngr_

Date: _____                 Date: _7 - 14 - 20_

Terms: 50% upon acceptance and 50% upon completion

**PURCHASE AND SALE AGREEMENT**

**by and between**

**RAYMOND J. OBUCHOWSKI, CHAPTER 7 TRUSTEE**
**FOR**
**THE CORPORATION OF SOUTHERN VERMONT COLLEGE, INC.**
as Seller,

and
**SOUTHWESTERN VERMONT HEALTH CARE CORPORATION,**

**as Purchaser**

**Dated: NOVEMBER 12, 2020**

# PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "Agreement" and/or this "Contract"), dated as of November 12, 2020 (the "Execution Date"), is by and between **Raymond J. Obuchowski, Chapter 7 Trustee for The Corporation of Southern Vermont College, Inc.** (d/b/a Southern Vermont College) a Vermont nonprofit corporation (the "Seller"), and **Southwestern Vermont Health Care Corporation**, a Vermont non-profit corporation (the "Purchaser"; together with Seller, individually as a "Party," and, collectively as the "Parties")

### *Recitals*

A.      On August 24, 2020, The Corporation of Southern Vermont College, Inc. (the "College") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 20-10268 (the "Bankruptcy Proceeding") in the United States Bankruptcy Court for the District of Vermont ("Court").

B.      On August 24, 2020, Raymond J. Obuchowski was appointed Chapter 7 trustee of the College's estate ("Trustee").

C.      The College owns and operated the Campus Property which consist of the former Southern Vermont College Campus more particularly described on **Exhibit A**.

D.      Seller wishes to sell and Purchaser wishes to purchase the Campus Property subject to the terms and conditions set forth herein.

E.      Community Bank, N.A. ("Community Bank") holds a valid, perfected and enforceable mortgage on the Campus Property and security interest in personal property of the College.  Community Bank has consented to the sale of the Campus Property pursuant to a Stipulated Consent Order between Community Bank and the Trustee to be filed with the Court.

F.      There are other subordinate lienholders with interests in the Property.

G.      The Parties intend for the Seller to sell, transfer, convey, assign and deliver to Purchaser the Property in accordance with Sections 363(b) and (f) and the other applicable provisions of the Bankruptcy Code.

H.      This Agreement and the Seller's right to convey the Property to the Purchaser is subject to approval of the Bankruptcy Court in the Bankruptcy Proceeding.

### *Terms and Provisions*

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereto agree as follows:

**Section 1.      Sale and Purchase**.  Subject to the terms and conditions set forth herein, on the Closing Date, Seller shall sell and convey to Purchaser, and Purchaser shall purchase from Seller all of the following:

1            1084882

(a)      the Campus Property at 983 Mansion Drive described on **Exhibit A**, including all improvements, structures, buildings, fixtures, heating, plumbing, air-conditioning, ventilation, sprinkler, alarm, security and electrical equipment and all ducts, pipes, cables and wires appurtenant thereto together with all appurtenant rights and easements thereto (the "Campus Property" or the "Real Property").

(b)      All fixtures, furniture, furnishings, equipment, kitchen equipment, dishes and cutlery, appliances, tractors, ground maintenance equipment, machinery, tools, implements, telephone and communications equipment, safety equipment, and keys, lock combinations and codes located on or at the Campus Property ( the "Tangible Personal Property"). The Tangible Personal Property  is listed on **Exhibit B**.

(c)      To the extent legally assignable to Purchaser, all intangible property now or on the Closing Date owned by the College or the Seller and used in connection with the operation of the Campus Property, including (i) all rights under guaranties or warranties relating to the Campus Property or the Tangible Personal Property (including those relating to construction or fabrication), (ii) government permits for the Campus Property, if any as assignable, and (iii) all site plans, surveys, plans and specifications, construction bids and floor plans in the possession of the Seller and which relate to the Campus Property (collectively, the "Intangible Personal Property" and, together with the Tangible Personal Property, the "Personal Property").

(d)      Purchaser shall assume all of the obligations of the College pursuant to the Inter-Local Agreement by and between the Town of Bennington ("Town") and the College, dated October 28, 2013, as amended by First Amended and Restated Inter-Local Agreement dated April 22, 2015 ("Assigned Contract" and also referred to as the "Water Bond"), subject to Section 3(b) of this Agreement.

The Campus Property and the Personal Property collectively referred to herein as the "Property".

(e)      **Excluded Assets.** The Parties agree that the following are expressly excluded from this purchase and sale and are not included in the Property (the "Excluded Assets"):

(i)      Seller's rights under or pursuant to this Agreement;
(ii)     The motor vehicles;
(iii)    all works of art, fine art or like property;
(iv)     any personal property not located on the Campus Property;
(v)      any lease or contract not assumed and assigned to the Purchaser;
(vi)     cash consideration;
(vii)    all accounts receivable due to the College and the proceeds therefrom;
(viii)   all cash and cash equivalents, bank accounts and securities of Seller;
(ix)     all claims and actions of the Seller arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code against the Seller's current or former directors, officers, insiders or affiliates as such terms are defined in the Bankruptcy Code;

2          1084882

(x)     any of the following books and records: corporate seals, organizational documents, minute books, stock books, tax returns, books of account or other records having to do with the corporate organization of the College, all employee-related or employee benefit-related files or records, and any other books and records which Seller is prohibited from disclosing or transferring to Purchaser under applicable law and is required by applicable law to retain;

(xi)    all insurance policies of Seller and all rights to applicable claims and proceeds thereunder, except to the extent provided in Section 12(a) of this Agreement;

(xii)   all of Seller's Tax refunds, rebates, credits, Tax assets and similar items relating to any period, or any portion of any period;

(xiii)  income Tax Returns of the College and Seller and related materials;

(xiv)   equity securities or other ownership interest of Seller;

(xv)    prepayments and deposits and all claims, indemnities, warranties, guarantees, refunds, causes of action, rights of recovery, rights of set-off and rights of recoupment.;

(xvi)   any adequate assurance deposit under Section 366 of the Bankruptcy Code unless paid by the Purchaser;

(xvii)  all claims, indemnities, causes of action, rights of recovery, rights of set-off and rights of recoupment of every kind and nature (whether or not known or unknown or contingent or non-contingent) against the Seller's current or former directors, officers, insiders, or affiliates as such terms are defined under the Bankruptcy Code; and

(xviii) All personal property of Tenant that is located on the Campus Property, provided that the Seller shall be solely responsible to remove said property from the Campus Property by the date of Closing in the event the Tenant has not reclaimed and removed its property from the premises.

**Section 2.**     <u>**Terms and Conditions.**</u>

(a)     This Agreement is <u>not</u> subject to the Purchaser being approved for financing of the Purchase Price by the Closing Date.

(b)     The Purchaser accepts the Property in its current state and condition without any further work, repairs, treatments or improvements. Therefore, this Agreement is not subject to a property inspection of any kind.

(c)     At the Closing, **Purchaser must be a not for profit entity**.

(d)     The Purchaser will maintain and preserve the benefactor's names on the various buildings on the Property, i.e. the "Hunter Building."

(e)      Purchaser's obligation to close, and Seller's obligation to close is subject to higher and better offers from qualified bidders and Bankruptcy Court approval.

**Section 3.      Purchase Price; Apportionments**.

(a)      The total purchase price (the "Purchase Price") for the Property shall be Three Million Dollars $3,200,000.00 (the "Cash Purchase Price") and assumption of the obligation to make all remaining payments on the Water Bond, commencing with the payment due March 1, 2021.  The Cash Purchase Price shall be paid as follows:

(i)      *Deposit*.  The Seller acknowledges that the Purchaser has deposited the sum of Three Hundred Twenty Thousand Dollars ($320,000) (the "Deposit") with the Trustee.  Upon consummation of this transaction, the Deposit shall be credited against the Purchase Price.

The Deposit paid by Purchaser and interest accrued thereon, if any, shall be refundable only if (A) the Seller fails to deliver the title or perform as required by this Agreement, (B) the Court approves the sale of the Property to a person other than Purchaser pursuant to a higher and better offer,  (C) failure of the Court to approve the sale of the Property to the Purchaser due to no fault of the Purchaser, or (D) a material breach of this Agreement by Seller.

(ii)      *Balance.*  The balance of the Purchase Price, excluding the Deposit, shall be paid by the Purchaser by wired funds to be delivered on the Closing Date to an account designated by the Seller.

The Purchaser's obligation with respect to the Water Bond for the payment due on March 1, 2021 and going forward shall survive the Closing.

(b)      The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:  Real estate taxes, on the basis of the fiscal period for which assessed; water, sewer and electric, based on reading of the appropriate meter immediately prior to the Closing but, if there is no meter, based on local custom. As a Closing adjustment, Seller will pay one half of the amount due on the Water Bond for the March 1, 2021 payment  of $42,812.09.

(c)      Fuel oil and propane shall be apportioned at the Closing based on the commercial rate in effect in Bennington, VT on the day prior to the Closing Date.

(d)      Vermont Land Trust, Inc. holds an Option to Purchase with The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont College) dated May 11, 2005 and recorded in Volume 420 at Page 150 of the Town of Bennington Land Records that affects a portion of the Campus Property. If the Vermont Land Trust exercises that option to purchase, **prior to Closing**, the Cash Purchase Price will be reduced by the amount the Seller receives from the Vermont Land Trust from the exercise of their option to purchase.

4          1084882

**Section 4.**     **Due Diligence**.

(a)     The Seller shall make available to the Purchaser for examination and copying information in its possession with respect to the Property, including, copies of all plans, maps, surveys, descriptions, permits, certifications, licenses, approvals, environmental audits, existing title information, and all other diligence materials reasonably requested by the Purchaser and in the possession of the Seller. Certain information has been (and may be) disseminated by Keen-Summit Capital Partners LLC and TPW Real Estate LLC in their efforts to market and sell the Property for the College and the Seller (collectively, the "Property Information"). The Seller has not verified any of the Property Information.  Seller makes no express or implied representation or warranty of any kind with respect to the accuracy, completeness, suitability or applicability of any of the Property Information.

(b)     Nothing in this Section shall be interpreted as a contingency to the Purchaser's obligations to close under this Agreement or be deemed to permit the Purchaser to terminate this Agreement if the Purchaser finds any of the diligence materials unsatisfactory.

**Section 5.**     **Seller's Covenants and Representations.**

(a)     As a material inducement to the Purchaser to enter into this Agreement and to buy the Property as set forth herein:

(i)     Seller represents to Purchaser that, subject to the prior approval of the bankruptcy court, Seller has the full power and authority to enter into this Agreement and to complete the transactions contemplated herein and to execute the Deed, Bill of Sale, assignments and any other instruments or documents reasonably necessary to effectuate the transactions contemplated by this Agreement.

(ii)     Seller represents to Purchaser that it is not a "foreign person" as defined in the Internal Revenue Code, Section 1445 and, at the time of delivery of the Deed, will provide Purchaser with an affidavit to that effect.

(iii)     Seller represents to Purchaser that, to the best of Seller's knowledge, since the appointment of the Trustee, the Seller has not received notice of any pending or threatened proceeding for a taking or condemnation of the Real Property.

(iv)     To the best of Seller's knowledge, since the appointment of the Trustee the Seller has received no notice from any governmental or quasi-governmental authority having jurisdiction over the Property or operation thereof asserting that the Property or operation thereof is in violation of any applicable legal requirements.

(v)     Seller represents to Purchaser that it has not entered into any other agreements to sell the Property to any other party, and that any agreements to sell the Property entered into by the College prior to the commencement of the Bankruptcy Proceeding have been terminated or rejected prior to the date of this Agreement.

The representations of Seller set forth above are made as of the date hereof, shall be true on the Closing Date, and shall survive the Closing.

5          1084882

(b)      From the date hereof and until the earlier termination of this Agreement or the Closing, the Seller shall (except as otherwise consented to or approved by Purchaser in writing):

      (i)      Not create or permit to become effective any new lien, encumbrance or charge of any kind on the Property, other than municipal charges and assessments;

      (ii)      Not enter into an agreement for the performance of capital expenditures at or for the Property (or any portion thereof) which will not be paid for by the Seller or from available insurance proceeds, prior to the Closing, or enter into a capital or equipment lease for the Property (or any portion thereof), without the Purchaser's prior written consent.

(c)   **Condition of Property.**   Seller specifically disclaims any warranty or representation concerning the condition of any of the Property.  The sale of the Property as provided for herein is made, on an "AS IS, WHERE IS AND WITH ALL FAULTS" basis. Purchaser warrants and acknowledges that Purchaser is purchasing the Property in an "AS IS, WHERE IS AND WITH ALL FAULTS" condition. Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including income to be derived or expenses to be incurred in connection with the Property), the physical condition of any personal property comprising a part of the Property, the environmental condition or other matter relating to the physical condition of any Real Property or improvements, the zoning of any such Real Property or improvements, the value of the Property (or any portion thereof), the transferability of the Property, the merchantability or fitness of the personal property comprising a portion of the Property or any other portion of the Property for any particular purpose, or any other matter or thing relating to the Property (or any portion thereof). Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Property.

      **Section 6.**      **Purchaser's Covenants, Representations and Warranties**.

(a)      As a material inducement to the Seller to enter into this Agreement and to sell the Property to the Purchaser as set forth herein, the Purchaser hereby covenants, warrants and represents to the Seller as follows:

      i.      The Purchaser is duly organized, validly existing and in good standing as nonprofit corporation under the laws of the State of Vermont, its domestic jurisdiction, and is authorized to do business in each other jurisdiction where its operations require it to be so authorized.

      ii.      The Purchaser has the full power and authority to make, execute, deliver and perform this Agreement including the instruments and documents to be executed and delivered by it pursuant hereto (the "Purchaser's Transaction Documents," collectively with the Seller's Transaction Documents, the "Transaction Documents").  Such execution, delivery, performance and consummation have been duly authorized by all

6          1084882

necessary action, company or otherwise, on the part of Purchaser, its members and managers.

iii.      Purchaser's Transaction Documents, when executed by Purchaser, will constitute the valid and binding obligations of Purchaser or its assignee, enforceable against Purchaser or its assignee in accordance with their respective terms, except as limited by bankruptcy, insolvency, reorganization and other laws now or hereafter in effect affecting creditors' rights and remedies or by equitable principles.

iv.      Purchaser has, and at Closing will have, cash or suitable means to enable it to consummate the transactions contemplated by this Agreement.

v.      Purchaser acknowledges that, except as expressly set forth herein and the Seller's Transaction Documents, neither Seller, nor any officer, director, employee, member, partner, agent or representative thereof nor any other party acting for or on its or their behalf, has made or is making or shall make any representation or warranty or any kind or nature, whether direct or implied, with respect to the Property, and Purchaser is purchasing the Property AS IS, WHERE IS AND WITH ALL FAULTS. Purchaser represents and acknowledges that except for the representations and warranties set forth in this Agreement and the Seller's Transaction Documents, it has not relied on any representation or warranty provided by Seller with respect to the Property.

(b)      Each of the foregoing representations and warranties shall be true, correct and complete in all material respects, both as of the date hereof and as of the Closing Date, and Purchaser shall certify in writing at Closing that each and all of said representations and warranties are true, correct and complete as of and with respect to that date as herein provided..

(c)      To the extent an agent, broker, investment banker, person or firm has acted on behalf of  the Purchaser or under the authority of the Purchaser, the Purchaser shall be responsible for the finder's fee, commission or other similar fee payable directly or indirectly to the agent, broker, investment banker, person or firm in connection with the transactions contemplated herein.    The Purchaser shall indemnify and hold the Seller harmless from a claim arising from any other alleged Purchaser Broker.  This provision shall survive the Closing and/or termination of this Agreement.

**Section 7**.    **Condition of Title**.    At the Closing, the Seller shall deliver a good and sufficient Trustee Deed, furnished and paid for by the Seller, conveying marketable and insurable title, as defined by Vermont law and by this Agreement.  Title to the Real Property shall be considered good and clear record and marketable if Purchaser can obtain a title insurance commitment covering the Real Property from a title insurance company doing business in the State of Vermont, subject only to (i) the standard exclusions and exceptions, excluding mechanics liens (as to which Seller shall deliver a standard affidavit to the title insurance company sufficient to enable the title insurance company to delete from Purchaser's title insurance policy any exception for mechanics liens arising through Seller) and persons in possession, excluding the survey exception (only if  Purchaser has obtained an ALTA Survey acceptable to the Title Company for the survey exception to be deleted), (ii) the Permitted Exceptions listed on **Exhibit C**; (iii) the Water Bond payments coming due commencing with

7          1084882

the  March 1, 2021 payment and later and (iv) real estate taxes, and other municipal assessments, which shall be adjusted as provided in Section 3(b).

Purchaser shall be solely responsible for obtaining the title policy and for paying any and all premiums that may be due thereunder, and Seller agrees to assist and cooperate with Purchaser in this regard, at no expense to Seller.

**Section 8.      Closing Costs**.

(a)      The Purchaser shall pay the fees of the lawyers representing the Purchaser in connection with this transaction.  The Purchaser shall also pay the following costs and expenses: (i) property transfer tax; (ii) the fee for the examination of title and the premium for an owner's title insurance policy to be issued to Purchaser (and its lender) by the title insurance company at Closing, and all endorsements thereto; (iii) the fees for recording the Trustee's Deed; (iv) all of its due diligence and investigation costs (including architects, engineers and other professionals and consultants);  (v) any other cost and expenses expressly provided in this Agreement to be paid by the Purchaser; and (vi) any other closing costs customarily paid by purchasers in real estate transactions in Bennington County unless stated otherwise herein.

(b)      The Seller shall pay the fees of the lawyers representing Seller in connection with this transaction.  The Seller shall also pay the following costs and expenses: (i) any non-resident withholding real estate tax and land gains tax, if applicable; (ii) any other cost and expenses expressly provided in this Agreement to be paid by the Seller; and (iv) any other closing costs customarily paid by sellers in real estate transactions in Bennington County, unless stated otherwise herein.

(c)      All other closing costs of whatever kind or nature shall be allocated in accordance with a closing statement setting forth all adjustments to the Purchase Price (the "Closing Statement").  The Seller shall prepare the Closing Statement, subject to approval by the Purchaser, which approval shall not be unreasonably withheld, delayed or conditioned.

**Section 9.      Deliveries at or before Closing**.

(a)      At Closing, the Seller shall deliver to the Purchaser an original counterpart of the following:

(i)      A Trustee Deed to the Campus Property, and the accompanying Vermont property transfer tax return;

(ii)      A Bill of Sale substantially in the form and substance of **Exhibit D**;

(iii)      unless insurance proceeds have been paid over to Purchaser prior to Closing or at Closing, an Assignment of the Seller's Rights to insurance coverage or insurance proceeds as provided in Section 12(a) of this Agreement;

8          1084882

(iv)    keys and lock combinations and codes to the extent Seller has them;

(v)    The Closing Statement; and

(vi)    Such title affidavits, transfer tax forms and other documents as are customarily provided by sellers of commercial property in Bennington County and such further documents, instruments and agreements as are contemplated herein.

(b)    At Closing, the Purchaser shall deliver to the Seller in accordance with the provisions set forth herein, together with an original counterpart of the following:

(i)    the Purchase Price;

(ii)    An original counterpart of the Closing Statement; and

(iii)    Such affidavits, transfer tax forms and other documents as are customarily provided by purchasers of commercial property comparable to the Property and such further documents, instruments and agreements as are contemplated herein.

**Section 10.    Closing**.  The transaction contemplated by this Agreement shall close (the "Closing") within 30 days of the issuance of the Approval Order by the Court at the offices of Seller  (the "Closing Date") or at such other time or location or at such earlier date as the parties shall agree.   The 30-day time period shall begin to run the day after the issuance by the Court of the Approval Order.

**Section 11.    Possession**. Full possession of the Campus Property free of all tenants and occupants shall be delivered to Purchaser at the time of delivery of the Deed, the Campus Property to be then in the same material condition in which it is as of the Execution Date, normal wear and tear and damage by fire or other hazard or casualty excepted, but subject to the damage incurred at the Property during  summer 2020 while the Property was under the possession of the Tenant.

**Section 12.    Casualty and Condemnation**.

(a)    **Casualty.** The risk of loss in the event of casualty after the Execution Date shall rest exclusively with the Seller until the Closing has occurred. Thereafter, Purchaser will assume the full risk of loss. In the event prior to Closing, and after the Execution Date, a portion of the Campus Property is damaged or destroyed beyond the current condition as of the Execution Date, Seller shall forthwith give written notice to the Purchaser and the Purchaser may, within fifteen (15) days after receipt of the written notice, elect to: (i) close the transaction without any reduction in the Purchase Price except for the amount of the casualty insurance deductible (if any), in which event Seller shall assign to Purchaser the insurance proceeds; or (ii) terminate the Agreement, in which event Purchaser shall be entitled to return of the Deposit. As to the damage caused this past summer while the Tenant was in possession of the Property pursuant to an Occupancy Agreement (the "Occupancy Agreement") between the College and the tenant (the "Tenant"), which includes in part, insured damage and uninsured damage, at Closing, Seller shall pay over to Purchaser any insurance proceeds received on claims made

9         1084882

for such insured damage, or assign such rights to payment for the insured damage to Purchaser, if such payment has not been made to Seller prior to the Closing. As to the uninsured damage at Closing, Seller shall pay over to Purchaser proceeds received on the claim for such uninsured damages, or, at the option of Purchaser to be exercised at Closing or waived, assign the right to payment for the uninsured damage to Purchaser, if such payment has not been made to Seller prior to the Closing. If assignment of the claim is made by Seller at the option of Purchaser, Purchaser agrees that from any recovery, the first proceeds will go to the Seller to pay for the administrative expenses and attorney's fees incurred by Seller in pursuing the claim and all costs of litigation, then to Seller for the amount due for the occupancy expenses that the Tenant was supposed to pay Seller pursuant to the Occupancy Agreement, then to Purchaser for the cost for the damages not yet recovered for, then to costs of Purchaser in litigating the claim, including reasonable attorney's fees, and if any remainder, then to the Seller.  .

(b)     **Condemnation**.  If at any time prior to the Closing, any material portion of the Campus Property is threatened with condemnation or legal proceedings commenced under the power of eminent domain, Seller shall promptly give Purchaser written notice of such fact, and shall furnish to Purchaser copies of all notices received by Seller pertaining thereto. Purchaser shall have the right, within ten (10) business days after the receipt of such notice, to terminate this Agreement by written notice to Seller, in which event Purchaser shall be entitled to the return of the Adjusted Deposit and neither Seller nor Purchaser shall have any further obligations hereunder (except obligations which are expressly stated to survive termination of this Agreement). If this Agreement is not so terminated, Purchaser shall be obligated (subject to satisfaction of all other Closing conditions) to proceed with the Closing hereunder and the damages attributable to the Property shall belong to the Purchaser. The Purchase Price will not be abated or reduced on account of any condemnation proceedings.

### Section 13.    <u>Termination/Effect of Termination</u>.

(a) This Agreement and the transactions contemplated herein may be terminated at any time prior to the Closing:

(i)      By mutual written agreement of Purchaser and Seller;

(ii)     By either Purchaser or Seller (provided that the terminating party is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach or misrepresentation of any of the representations or warranties or a material breach of any of the covenants set forth in this Agreement on the part of the other party, which breach is not cured within 10 days following written notice to the party committing such breach;

(iii)    Without action by the Purchaser or the Seller if the Bankruptcy Court enters the Approval Order approving the sale of the Property to a person other than Purchaser.

(b)     **Effect of Termination or Breach.** If this Agreement is terminated prior to the Closing, the termination shall not relieve any party hereto from any liability which at the time of

termination had already accrued to any other party hereto or which thereafter may accrue in respect of any act or omission of such party prior to such termination.

If this Agreement is terminated prior to the Closing as a result of a breach of the provisions of this Agreement by Seller, the Deposit shall be returned to Purchaser in full, as the Purchaser's sole remedy, and the Purchaser shall not have (and does hereby waive) any claim for incidental or consequential damages, specific performance or any other injunctive or equitable relief.

In the event the Closing is not consummated as a result of a material breach of the provisions of this Agreement by Purchaser resulting in the termination of this Agreement by Seller, Seller's sole remedy shall be retention of the full amount of the Deposit.

**Section 14.** **Incorporation.** The Recitals and each Exhibit and Schedule hereto are incorporated herein by reference as if set forth in full herein.

**Section 15.** **Drafting**. The Parties hereto have carefully reviewed and negotiated the terms of this Agreement and the Transaction Documents, and each hereby acknowledges that it has had a full and fair opportunity to review and negotiate the Agreement and the Transaction Documents with the advice of its lawyers. Therefore, there shall be no presumption in favor of the non-drafting party.

**Section 16.** **Costs and Expenses**. Except as expressly otherwise provided in this Agreement, each Party shall bear its own costs and expenses in connection with this Agreement and the transactions contemplated hereby.

**Section 17.** **Benefit and Assignment**. This Agreement binds and inures to the benefit of each Party and its respective successors and proper assigns. Neither Party shall be permitted to assign its rights or obligations under this Agreement without the prior consent of the other Party, provided that Purchaser shall be able to assign this Agreement to a non-profit entity under its control in its sole discretion.

**Section 18.** **Effect and Construction of this Agreement**. The captions used herein are for convenience only and shall not control or affect the meaning or construction of the provisions of this Agreement. This Agreement may be executed in one or more counterparts, and all such counterparts shall constitute one and the same instrument. Copies of original signatures sent by electronic transmission shall be deemed to be originals for all purposes of this Agreement. All gender employed in this Agreement shall include all genders, and the singular shall include the plural and the plural shall include the singular whenever and as often as may be appropriate. When used in this Agreement, the term "including" shall mean "including but not limited to."

**Section 19.** **Waiver, Discharge, etc**. This Agreement shall not be released, discharged, abandoned, changed or modified in any manner, except by an instrument in writing executed by or on behalf of each of the Parties hereto by their duly authorized officer or representative. The delay or failure of a Party to enforce at any time a provision of this Agreement shall in no way be construed to be a waiver of nor impair the provision, nor in any way to affect the validity of this Agreement or a part hereof or the right of a Party thereafter to

enforce each and every provision.  No waiver of a breach of this Agreement shall be held to be a waiver of another or subsequent breach.

**Section 20.    Governing Law; Disputes**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Vermont, without regard any contrary rules relating to the choice or conflict of laws.   THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, DISTRICT OF VERMONT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

**Section 21.    Waiver of Jury Trial.**  EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT, INCLUDING TO ENFORCE OR DEFEND ANY RIGHTS HEREUNDER, AND AGREES THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**Section 22.    Severability**.  A provision or distinguishable portion of a provision, of the Agreement which is determined in a judicial proceeding to be prohibited or unenforceable shall be ineffective to the extent of the prohibition or unenforceability without invalidating the remaining provisions hereof.  To the extent permitted by applicable law, the Parties waive any provision of law which renders a provision hereof prohibited or unenforceable in any respect.

**Section 23.    Entire Agreement**.  This Agreement including the schedules, exhibits and the other Transaction Documents, constitute the entire agreement between the Parties hereto with respect to the subject matter hereof and thereof, and there are no agreements, understandings, restrictions, warranties, or representations between the Parties with respect to the subject matter hereof other than as set forth herein or therein.

**Section 24.    Further Assurances**.  In addition to the acts and deeds recited herein and contemplated to be performed, executed and/or delivered by Seller to Purchaser at Closing, Seller and Purchaser each agree to perform, execute and deliver, but without any obligation to incur any additional liability or expense, on or after the Closing any further deliveries and assurances as may be reasonably necessary to consummate the transactions contemplated hereby or to further perfect the conveyance, transfer and assignment of the Property to Purchaser.

**Section 25.    Notices**.  A notice provided for herein shall be made either by hand delivery, by certified or registered mail and deposited in the U.S. Mail, postage prepaid, or by reputable overnight delivery service making delivery against a signed receipt, to the following addresses:

To Seller:            Raymond J. Obuchowski
                      Chapter 7 Trustee
                      The Corporation of Southern Vermont College Inc.
                      PO Box 60
                      Bethel, VT  05032-0060

12        1084882

with a copy to:

Elizabeth A. Glynn, Esq.
Ryan Smith & Carbine Ltd.
98 Merchants Row
PO Box 310
Rutland, VT  05702-0310

To Purchaser:         Southwestern Vermont Health Care Corporation
Attention:  Kevin P. Dailey, VP of Administration/CHRO
100 Hospital Drive
Bennington, VT 05201
Telephone:  (802) 447-5521
Email:  kevin.dailey@svhealthcare.org

with a copy to:

R. Prescott Jaunich, Esq.
Andre D. Bouffard, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT  05402-0190
Telephone: (802) 863-2375
Email: sjaunich@drm.com and abouffard@drm.com

A Party may on notice to the other Party change its address for the receipt of notices.  A notice sent as provided herein shall be deemed delivered when actually received, when delivery is refused by the intended recipient, or when delivery is first attempted but cannot be completed due to the intended recipient's failure to provide notice of a change in address.

Section 26.     Time of the Essence; Time Periods.  Time is of the essence of this Agreement.  A reference in this Agreement to the time for the performance of obligations or elapsed time shall mean consecutive calendar days, months, or years, as applicable.

Section 27.     Bankruptcy.

(a)     All of the agreements and obligations by and between the parties under this Agreement are subject to and contingent upon approval of the Court in the Bankruptcy Proceeding as and when set forth herein and are further subject to higher and better offers. The transaction contemplated herein is subject to the entry of an order Approval Order as defined below in Section (b) by the Court authorizing the sale of the Property to Purchaser free and clear of all liens, claims and encumbrances pursuant to the terms of this Agreement and Section 363(b) and (f) of the Bankruptcy Code after notice to Debtor's creditors and parties in interest pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, and the assignment and assumption of the Assigned Contract(s).

13          1084882

(b)     As soon as practicable, the Seller shall file a Motion with the Court (the "Sale Motion") requesting the entry of an Order approving the sale of the Property to the Purchaser and the assumption of the contracts under this Agreement (the "Approval Order").  The Approval Order shall be reasonably acceptable to the Purchaser in form and substance and shall  include, *inter alia*,  (i) approval of the sale of the Property to Purchaser on the terms and conditions set forth in this Agreement and authorization for Seller to proceed with this transaction, (ii) a specific finding that Purchaser is a good faith purchaser of the Property, (iii) approval of the sale of the Property to Purchaser shall be free and clear of all liens, claims, interest, and encumbrances known and unknown, except as set forth in this Agreement, and that neither Purchaser nor any entity, as that term is defined in Section 101(15) of the Bankruptcy Code, that purchases or leases any or all of the Property from Seller, shall have any liability whatsoever, as successor or otherwise (excluding, however, any environmental liability that Purchaser shall have as the owner of the Property from and after the Closing and as set forth in this Agreement), to any entity, as that term is defined in Section 101(15) of the Bankruptcy Code that holds or may hold one or more claims, as that term is defined in Section 101(5) of the Bankruptcy Code, against Seller, the College, the College's estate, and /or the Property, (iv) states that the sale of the Property other than free and clear of liens and claims would be of substantially less benefit to the estate of College, (v) approves the Seller's assumption and assignment of the contracts, rights and permits to Purchaser pursuant to Section 365 of the Bankruptcy Code, (vi) approves the Seller's notice to parties with an interest in the Property of the proposed sale to Purchaser and an opportunity to object to same or to submit higher and better offers for the Property, (vii) provides for retention of jurisdiction of the Court to hear and decide any and all disputes between or among Seller, Purchaser and any entity, as that term is defined in Section 101(15) of the Bankruptcy Code, that arises out of or relates to this Agreement, the Property and/or any claimed liability of Purchaser to any creditor of the College, the College's estate, and/or the Property; and further to hear and decide any and all disputes between Seller and/or Purchaser, as the case may be, and any non-seller parties to the contracts, rights and permits. Both Seller's and Purchaser's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Court's entry of the Approval Order.

The Approval Order shall state that notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062, or any applicable provisions of the Local Rules, the Approval Order shall not be stayed after entry thereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the sale transaction with Purchaser, and Seller and Purchaser intend to close the sale transaction within 30 days of the issuance of the Approval Order by the U.S. Bankruptcy Court, even if the Approval Order is appealed.


(c)     Seller shall provide draft versions of the Sale Motion and the Approval Order to Purchaser for its review prior to filing with the Court.


**Section 28.     Brokers**. To the extent an agent, broker, investment banker, person or firm has acted on behalf of the Seller or under the authority of the Seller, the Seller shall be responsible for the finder's fee, commission or similar fee payable directly or indirectly to the agent, broker, investment banker, person or firm in connection with the transactions contemplated herein.  Seller represents and warrants that Keen-Summit Capital Partners LLC

and TPW Real Estate LLC are the Seller's brokers and the Seller shall pay them under separate agreement.  Purchaser hereby agrees to defend, indemnify and hold harmless Seller from and against any claims by any real estate broker whom Purchaser engaged regarding this transaction, for brokerage commissions, finders' or other fees relative to this Agreement or the sale of the Property and any court costs, attorneys' fees or other costs or expenses arising therefrom and alleged to be due by authorization of Purchaser. This provision shall survive the Closing and/or termination of this Agreement.  See Section 6(c) with respect to the Purchaser's responsibility for its broker.

**Section 29.** __Survival.__  All of the terms, conditions, warranties, covenants, indemnity provisions and representations of this Agreement shall survive the Closing and execution of the deed, and shall be in full effect and enforceable after the Closing in accordance with the terms of this Agreement.

**Section 30.** __No Reliance__.    The Purchaser acknowledges that the Purchaser has not been influenced by Seller or any affiliates of Seller to enter into this transaction and the Purchaser has not relied upon any warranties or representations not set forth in this Agreement. Further, the Purchaser acknowledges and agrees that any and all reports, information or materials delivered by Seller to Purchaser or obtained by Purchaser from Seller or Seller's representatives were provided for informational purposes only, without any representation or warranty whatsoever as to the accuracy or completeness thereof, and have not been relied upon by Purchaser.  Without limiting the generality of the foregoing, Purchaser acknowledges that Seller has no responsibility to Purchaser in any manner whatsoever, for Hazardous Waste on, under or emitting from the Real Property. The provisions of this Section shall survive the delivery of the Deed hereunder.

**Section 31.** __Indemnification.__  Purchaser shall assume all of Seller's obligations and liabilities relating to the Property on the date of delivery of the Deed, Bill of Sale and assignments, for the period from and after the Closing Date including, without limitation, real estate and other property taxes, assessments and the like, including, without limitation the Water Bond, and shall indemnify, defend and hold the Seller harmless from and against any and all claims, demands, liabilities, damages, causes of action, expenses, costs, reasonable attorneys' fees and expenses arising from, or relating to, such assumed obligations and liabilities.  The provisions of this Section shall survive the delivery of the Deed hereunder.

**Section 32.** __No Merger.__ The provisions of this Agreement containing agreements between the parties relating to actions occurring after Closing shall not be merged into the instruments of Closing but shall expressly survive and be enforceable according to their terms.

**Section 33.** __Definitions__. The following terms shall have the following meaning for purposes of this Agreement:

"__Deposit__" as defined in Section 3(a)(i).

"__Agreement__" as defined in the Introductory paragraph, page 1.

"__Approval Order__" as defined in Section 27(b).

"Assigned Contract" as defined in Section 1(d).

"Bankruptcy Proceeding" as defined Recitals A.

"Campus Property" as defined in Section 1(a).

"Cash Purchase Price" as defined in Section 3(a).

"Closing" as defined in Section 10.

"Closing Date" as defined in Section 10.

"Closing Statement" as defined in Section 8(c).

"College" as defined in Recital A.

"Community Bank" as defined in Recital E.

"Contract" as defined in the Introductory paragraph, page 1.

"Court" as defined in Recitals A.

"Deposit" as defined in Section 3(a)(i).

"Excluded Assets" as defined in Section 1(e).

"Execution Date" as defined in the Introductory paragraph, page 1.

"Intangible Personal Property" as defined in Section 1(c).

"Occupancy Agreement" as defined in Section 12(a).

"Parties" as defined in the Introductory paragraph, page 1.

"Party" as defined in the Introductory paragraph, page 1.

"Personal Property" as defined in Section 1(c).

"Property" as defined in Section 1.

"Property Information" as defined in Section 4.

"Purchase Price" as defined in Section 3(a).

"Purchaser" as defined in the Introductory paragraph, page 1(d).

"Purchaser's Transaction Documents" as defined in Section 6(a)(ii).

"Real Property" as defined in Section 1(a).

"Sale Motion" as defined in Section 27(b).

"Seller" as defined in the Introductory paragraph, page 1.

"Tangible Personal Property" as defined in Section 1(b).

"Tenant" as defined in Section 12(a).

"Town" as defined in Section 1(d).

"Transaction Documents" as defined in Section 6(a)(ii).

"Trustee" as defined in Recitals B.

"Water Bond" as defined in Section 1(d).

**[Signatures on Next Page]**

17          1084882

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the Execution Date.

**SELLER:**

Raymond J. Obuchowski
Chapter 7 Trustee
The Corporation of Southern Vermont College Inc.

By: _____
       Raymond J. Obuchowski

**PURCHASER:**

Southwestern Vermont Health Care Corporation

By: _____
       Thomas A. Dee, President and CEO
       Authorized Signer

**EXHIBITS**

Exhibit A      Property Description:  Campus Property
Exhibit B      Tangible Personal Property Description
Exhibit C      Permitted Encumbrances
Exhibit D      Form of Bill of Sale

## EXHIBIT A-1

## Campus Property Legal Description

Parcel 1

Being all and the same lands and premises conveyed to The Corporation of Southern Vermont College, Inc., by Warranty Deed from Everett Estate Associates Limited Partnership, dated December 22, 1986, and recorded at Volume O-262, Page 157 of the Land Records, and more particularly described therein as follows:

"Being the same lands and premises conveyed to this Grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983, recorded on August 2, 1983 in Book O-243 at Page 51 of the Bennington, Vermont, Land Records and described therein as follows:

Beginning at a point in the west line of Monument Avenue, so called, in the Town of Bennington, Vermont, said point being the northeast corner of the lands of George Van Santvoord and the southeast corner of the herein described property;  thence along the line of lands of the said Van Santvoord the following courses and distances:  S 56°30' W 300.29 feet, N 74°48'08" W 1395.24 feet, S 16° 37' 51" 1100.70 feet, S 16°47'04" W 109.73 feet, N 73°43'33" W 1544.06 feet and S 16°00'13" W 976.45 feet; thence along the line of lands of Fillmore Farms, Inc the following courses and distances: N 73°11' W 2305.8 feet, N 15°10' E 1748.6 feet, S 76°00' E 559.2 feet, N 18°06'35" E 2535.97 feet and S 74°16'33" E 2672.29 feet; thence through lands of this grantor, Grace Burnap Everett, the following courses and distances:  S 74°16'33" E 250.57 feet, N 22°57'E 417.98 feet, N 23°30' E 139.69 feet, N 29°07' E 85.41 feet and N 34°58' E 137.42 feet; thence along the south line of lands of R.W. Buzzell S 81°47' E 75.53 feet; thence along the line of lands of John Alonzo S 37°37' W 165.37 feet and S 28°29' W 83.44 feet; thence along the line of lands of Edward H. Everett Company the following courses and distances:  S 22°37' W 126.41 feet, S 17°31'W 424.5 feet, S 22°18' W 167.28 feet; thence through lands of Edward H. Everett Company S 74°16'33" E 727.96 feet to the west line of said Monument Avenue; thence along the west line of said Monument Avenue the following courses and distances: S 10°41' E 378.55 feet, S 12°16' E 847.28 feet, S 23°08' E 698.68 feet and S 9°41' E 267.2 feet to the place of beginning.  Containing 371 acres of land be the same more or less.

Excepting however, from said 371 acres of land, more or less, 6.2 acres of land, more or less, conveyed by the Grantor herein to The Corporation of Southern Vermont College, Inc. by Warranty Deed dated June 24, 1985 and recorded on August 1, 1985, in Book O-252 at Page 221 of the Land Records of the Town of Bennington, Vermont.

Together with all rights, rights of way and easements applicable and appurtenant to the granted premises as set forth in deed of Grace Burnap Everett to The Foundation of Our

Lady of Holy Cross, Incorporated, dated July 1, 1952, recorded in the Town Clerk's Office at Bennington in Book 0-126, page 85 of Land Records .... "

Parcel 2

Being all and the same lands and premises being conveyed to Corporation of Southern Vermont College by Warranty Deed from The Everett Estate Associates, a Vermont Limited Partnership, dated June 24, 1985, and recorded at Volume O-252, Page 221 of the Bennington Land Records, and therein described, in part, as follows:

"Being a portion of the lands conveyed to this grantor by Warranty Deed of The Corporation of Southern Vermont College, Inc., dated July 26, 1983 and recorded August 2, 1983 in Book O-243, Page 51 of the Town of Bennington Land Records; these lands are described as follows:

Beginning at an iron rod set in the easterly side of a private road through lands of this grantor, and marking the southwest corner of the described lands; thence North 5°32'51" East along said roadway a distance of 180.87 feet to a point; thence continuing on an arc a distance of 290.69 feet to an iron rod set in the east side of said roadway and marking the northwest corner of the conveyed lands; thence North 88°41'41" East a distance of 430.00 feet to an iron rod; thence South 51°13'49" East a distance 208.09 feet to an iron rod; thence South 13°38'15" West a distance of 95.80- feet to an iron rod; thence South 18°39'27" West a distance of 250.66 feet to an iron rod which marks the southeast corner of the conveyed lands; thence South 88°41'41" West a distance of 568.85 feet to the point and place of beginning.

Meaning and intending hereby to describe and convey a parcel of land containing 6.20 acres.

This description is taken from a survey entitled, "Dormitory Site, Southern Vermont College Property, Foothills Road, Bennington, Vermont" prepared by Morris Winn, Surveyor, Bennington, Vermont, April, 1984 [revised May 25, 1987, and recorded on November 24, 1987 in Volume O-269, Page 141 of the Land Records]."

## EXHIBIT B

All furniture, furnishings, fixtures, machinery and equipment owned by the Debtor and located on the Campus Property as of the date of this Agreement, excluding the  the vehicles and accessions (i.e. plow and sander/spreader/sander).

.

**Exhibit C**

**Permitted Exceptions**

**A:  With respect to the Campus Property:**

1.  Matters as may be shown on the following plans:

    a.  Survey entitles "Plan of Land in Bennington, Vermont Belonging to Reginald W. and
        Josephine S. Buzzell," prepared by Burton L. Winslow, dated July 22, 1957, and
        recorded as Map No. 3 in the "cellar vault" of the Land Records.

    b.  Plan entitled, "Dormitory Site, Southern Vermont College," prepared by Maurice Winn,
        dated April 1984, revised May 25, 1987, and recorded on November 24, 1987 in Volume
        O-269, Page 141 of the Town of Bennington Land Records.

2.  Pole Easement from Southern Vermont College, Inc. to VTEL Wireless, Inc., dated May 20,
    2014 and Recorded in Volume 507 at Page 92 of the Town of Bennington Land Records.

3.  Easement Deed of Dedication and Acceptance by and between Southern Vermont College
    and the Town of Bennington dated June 8, 2010 and recorded in Volume 472 at Page 10 of
    the Town of Bennington Land Records, as amended by Amended and Restated Easement
    Deed of Dedication and Acceptance dated April 22, 2015 and recorded in Volume 506 at
    Page 144 of the Town of Bennington Land Records.

4.  Grant of Development Rights, Conservation Restrictions and Public Access Easement by and
    between The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont
    College) and the Vermont Land Trust, Inc., dated May 11, 2005 and recorded in Volume 420
    at Page 149 of the Town of Bennington Land Records; Including matters shown on or
    referenced in an unrecorded conservation plan entitled: "Vermont Land Trust, Southern
    Vermont College Property, Town of Bennington, Bennington Co., VT."

5.  Grant of Historic Preservation Easement from The Corporation of Southern Vermont
    College, Inc. to Preservation Trust of Vermont, Inc., (the Preservation Trust") dated May 11,
    2005 and recorded in Volume 420 at Page 151 of the Town of Bennington Land Records.

6.  Perpetual and Exclusive Right of Easement by and between Southern Vermont College
    Corporation and Better TV Inc. of Bennington dated March 31, 1997 and recorded in
    Volume O-334 at Page 61 of the Town of Bennington Land Records.

7.  Easement for utility lines from The Corporation of St. Joseph College to Central Vermont
    Public Service Corporation and New England Telephone and Telegraph Company dated
    December 9, 1974 and recorded in Volume O-209 at Page 2 of the Town of Bennington Land
    Records.

8.  Easement from The Foundation of Our Lady of Holy Cross Incorporated to Central Vermont Public Service and New England Telephone and Telegraph dated December 2, 1970 and recorded in Volume O-191 at Page 238 of the Town of Bennington Land Records.

9.  Permit for Guy Locations on Private Property from St. Joseph College to Central Vermont Public Service Corporation and New England Telephone and Telegraph dated March 10, 1970 and recorded in Volume O-189 at Page 58 of the Town of Bennington Land Records.

10. Easement for access as described in the following deeds:

(i)     Warranty Deed from Grace Burnap Everett to Reginald W. Buzzell and Josephine S. Buzzell dated August 3, 1951 and recorded in Volume O-122 at Page 49 of the Town of Bennington Land Records.

(ii)    Warranty Deed of Grace B. Everett to William H. Timbee and Florence H. Timbee dated September 11, 1951 and recorded in Volume O-122 at Page 127 of the Town of Bennington Land Records.

11. Water and sewer rights as set forth in the following deeds:

(i)     Warranty Deed from Grace Burnap Everett to Reginald W. Buzzell and Josephine S. Buzzell dated August 3, 1951 and recorded in Volume O-122 at Page 49 of the Town of Bennington Land Records.

(ii)    Warranty Deed of Grace B. Everett to William H. Timbee and Florence H. Timbee dated September 11, 1951 and recorded in Volume O-122 at Page 127 of the Town of Bennington Land Records.

(iii)   Warranty Deed from Grace Burnap Everett to Warren H. Moore and Nellie Moor dated November 7, 1951 and recorded in Volume O-123 at Page 115 of the Town of Bennington Land Records.

(iv)    Warranty Deed from Grace Burnap Everett to The Foundation of Our Lady of Holy Cross, Inc., dated July 1, 1952 and recorded in Volume O-126 at Page 85 of the Town of Bennington Land Records.

12. Easement to Central Vermont Public Service Corporation dated September 5, 1950 and recorded in Volume O-118 at Page 119 of the Town of Bennington Land Records.

13. Easement for utility lines from Edward H. Everett Co., to Twin State Gas & Electric Co. dated September 2, 1932 and recorded in Volume O-50 at Page 80 of the Town of Bennington Land Records.

14. Water right agreement by and between Edward H. Everett and John Webber dated October 14, 1914 and recorded in Volume 70 at Page 568 of the Town of Bennington Land Records.

15. Annual sewerage rental fees as set forth in an Agreement between Edward H. Everett and the Village of Old Bennington dated October 27, 1911 and recorded in Volume 70 at Page 380 of the Town of Bennington Land Records.

16. Water rights as reserved in the Warranty Deed from Holden Realty to Edward H. Everett dated November 30, 1910 and recorded in Volume 70 at Page 243 of the Town of Bennington Land Records.

17. Interest in a spring or reservoir lot said to contain three acres, more or less as described in the deed from Sarah Griswold Tenney et al to John S. Holden, and recorded in Volume 66 at Page 385 of the Town of Bennington Land Records (the "Spring Lot"); and as referenced in the Warranty Deed from Holden Realty Co., Inc. to Edward H. Everett dated November 30, 1910 and recorded in Volume 70 at Page 243 of the Town of Bennington Land Records.

18. Rights of parties in possession of the Property under written or unwritten leases or occupancy agreements.

19. Rights of the public and others legally entitled to any portion of the Property lying within the boundaries of a stream, watercourse or protected wetland.

20. Rights of the public and others legally entitled thereto in any portion of the Property lying within the boundaries of a public road, way, street or alley.

21. Terms and conditions of all land use permits, findings, and approvals issued with respect to the Land, by the Town of Bennington or the agencies, departments, commissions and boards of the State of Vermont, including but not limited to the following:

    a.    Town of Bennington Development Review Board approval for a new dormitory building and new salt shed, the related plat was filed with the Planning Office on January 21, 2003.

    b.    Town of Bennington Development Review Board approval for a new dormitory issued on January 8, 2008, the related plat was filed with the Development Review Board on January 9, 2008.

    c.    Town of Bennington Development Review Board approval for a new dormitory issued on August 7, 2012, the related plat was filed with the Development Review Board on August 7, 2012.

d.      Town of Bennington Development Review Board approval for administrative offices issued on May 20, 2012, and the related plat was filed with the Development Review Board on May 20, 2012.

e.      Zoning Permit No. 75-26 issued on March 10, 1975.

f.      Zoning Permit No. 85-119 issued on May 17, 1985.

g.      Zoning Permit No. 87-70 issued on April 15, 1987.

h.      Zoning Permit No. 89-252 issued on July 24, 1989.

i.      Zoning Permit No. 91-175 issued on June 27, 1991.

j.      Zoning Permit No. 91-326 issued on December 2, 1991.

k.      Zoning Permit No. 92-160 issued on June 30, 1992.

l.      Zoning Permit No. 95-146 issued on June 14, 1995.

m.      Zoning Permit No. 00-150 issued on June 19, 2000.

n.      Zoning Permit No. 00-218 issued on August 21, 2000.

o.      Zoning Permit No. 01-179 issued on August 14, 2001.

p.      Zoning Permit No. 02-330 issued on December 16, 2002.

q.      Zoning Permit No. 04-090 issued on April 27, 2004.

r.      Zoning Permit No. 06-326 issued on November 14, 2006.

s.      Zoning Permit No. 07-064 issued on April 25, 2007.

t.      Zoning Permit No. 07-087 issued on May 8, 2007.

u.      Zoning Permit No. 07-130 issued on May 30, 2007.

v.      Zoning Permit No. 07-233 issued on September 21, 2007.

w.      Zoning Permit No. 07-277 issued on November 6, 2007.

x.      Zoning Permit No. 08-027 issued on March 6, 2008.

y.      Zoning Permit No. 08-239 issued on May 30, 2007.

z.      Zoning Permit No. 09-060 issued on May 29, 2009.

aa.     Zoning Permit No. 09-090 issued on May 28, 2009.

bb.     Zoning Permit No. 09-229 issued on November 9, 2009.

cc.     Zoning Permit No, 10-121 issued on June 29, 2010.

dd.     Zoning Permit No. 10-131 issued on July 8, 2010.

ee.     Zoning Permit No. 11-157 issued on September 6, 2011.

ff.     Zoning Permit No. 11-157 issued on September 12, 2013, together with the consequences if any as a result of the failure to obtain a required certificate of occupancy.

gg.     Zoning Permit No. 14-005 issued on January 6, 2015.

hh.     State of Vermont Certification of Compliance No. 8B0344 issued on May 22, 1985 recorded in Volume O-251 at Page 193 of the town of Bennington Land Records.

ii.     State of Vermont Certification of Compliance No. 8B0344-1 issued on July 28, 1985.

jj.     Public Building Permit No. PB-8-0518 issued on October 29, 1987.

kk.     State of Vermont Water Supply and wastewater Disposal Permit No. WW-8-0066 issued on August 28, 1989.

ll.     State of Vermont Water Supply and Wastewater Disposal Permit No. WW-8-0066-1 issued on February 9, 1990.

mm.     State of Vermont Water Supply and Wastewater Disposal Permit No. WW-8-0066-2 issued on May 28, 2003.

nn.     State of Vermont Wastewater System and Potable Water Supply Permit No. WW-8-1125 issued on January 29, 2008 recorded in Volume 452 at Page 23 of the Town of Bennington Land Records.

oo.     State of Vermont Wastewater System and Potable Water Supply Permit No. WW-8-1125-2 issued on June 29, 2016 and recorded in Volume 514 at Page 210 of the Town of Bennington Land Records.

pp.     State of Vermont, Vermont Department of Environmental Conservation,
        Authorization to Discharge Under General Permit 3-9010, Permit No, 5648-
        9010 dated July 30, 2018 recorded in Volume 530 at Page 93 of the Town of
        Bennington Land Records; together with any consequence of the late filing of
        the 2019 annual inspection report required by such permit.

qq.     State of Vermont Land Use Permit No. 8B0344 was issued on June 7, 1985
        recorded in Volume 251 at Page 193 of the Town of Bennington Land
        Records.  Certification of Compliance issued on May 22, 1985 recorded in
        Volume 251 at Page 193 of the Bennington Land Records.

rr.     State of Vermont Land Use Permit No. 8B0344-1 issued on July 8, 1985.
        Certification of Compliance issued on July 28, 1985.

ss.     State of Vermont Land Use Permit No. 8B0344-2 issued on December 1, 1987
        recorded in Volume O-269 at Page 177 of the Town of Bennington Land
        Records.

tt.     State of Vermont Land Use Permit No. 8B0344-2 issued on September 7,
        1989 recorded in Volume O-281 at Page 116 of the Town of Bennington Land
        Records.

uu.     State of Vermont Land Use Permit No. 8B0344-3 issued on July 31, 1991 and
        recorded in Volume O-292 at Page 41 of the Town of Bennington Land
        Records.

vv.     State of Vermont Land Use Permit No. 8B0344-4 issued on July 7, 2004 and
        recorded in Volume 410 at Page 148 of the Town of Bennington Land
        Records.

ww.     State of Vermont Land use Permit No. 8B0344-5 issued on February 1, 2008
        and recorded in Volume 452 at Page 56 of the Town of Bennington Land
        Records.

xx.     State of Vermont Land Use Permit No. 8B0344-6 issued on August 26, 2010
        and recorded in Volume 473 at Page 167 of the Town of Bennington Land
        Records.

yy.     State of Vermont Land Use Permit No. 8B0344-7 issued on May 3, 2011 and
        recorded in Volume 478 at Page 150 of the Town of Bennington Land
        Records.

zz.      State of Vermont Land Use Permit No. 8B0344-8 issued on October 4, 2012 and recorded in Volume 489 at Page 29 of the Town of Bennington Land Records.

aaa.      State of Vermont Public Water System Construction Permit, C-3097-17.0, dated November 1, 2017, Project #C-3097- 14.1, WSID # VT0005016, PIN # RU96-0131, is of record with the Vermont Department of Environmental Conservation.

bbb.      State of Vermont Conditional Use Determination, File No. 2014-332 dated March 11, 2015 and of record with the Vermont Agency of Natural Resources.

ccc.      Authorization to Discharge Under General Permit 3-9015, issued by the Vermont Department of Environmental Conservation as Permit No. 5648-9015, dated February 22, 2008, and recorded in Volume 458, Page 88 of the Town of Bennington Land Records.

ddd.      Conditional Use Determination issued by the Department of Environmental Conservation, dated July 28, 2008.

eee.      Public Water System Temporary Permit to Operate issued by the Vermont Department of Environmental Conservation, dated February 10, 2009.

22. Vermont Underground Storage Tank Form, Southern Vermont College, Facility ID#2238 and dated September 24, 1993 and recorded in Volume O-308 at Page 130 of the Town of Bennington Land Records.

23. Vermont Underground Storage Tank Form, Southern Vermont College, Facility ID#2031 (the "Site") and recorded on August 21, 2002 in Volume 385 at Page 71 of the Town of Bennington Land Records.

24. **Option**.  Option to Purchase by and between The Corporation of Southern Vermont College, Inc. (a/k/a Southern Vermont College) and the Vermont Land Trust, Inc., dated May 11, 2005 and recorded in Volume 420 at Page 150 of the Town of Bennington Land Records; as affected by Subordination Agreement by and between SVC Creditor's Trust and SVC Funding, LLC dated May 22, 2019 and recorded in Volume 535 at Page 125 of the Town of Bennington Land Records.

25. Terms and conditions of an unrecorded Inter-Local Agreement by and between the Town of Bennington ("Town") and Southern Vermont College ("SVC"), dated October 28, 2013, as amended by First Amended and Restated Inter-Local Agreement dated April 22, 2015.

## EXHIBIT D

## Bill Of Sale

KNOW ALL MEN BY THESE PRESENTS THAT, Raymond J. Obuchowski, Chapter 7 Trustee for The Corporation of Southern Vermont College, Inc. (the "Seller"), for the sum of $10.00 and other good and valuable consideration to it in hand paid by Southwestern Vermont Health Care Corporation (the "Purchaser"), does by these presents, sell, assign, transfer and convey unto the Purchaser, all of Seller's right, title, and interest, if any, in and to the Personal Property (as such term is defined in that certain Purchase and Sale Agreement dated as of November ____, 2020 by and between Purchaser and Seller (the "P&S")) without warranty of any kind  AS IS WHERE IS AND WITH ALL FAULTS. Seller hereby covenants that it will, at any time and from time to time upon written request therefor, execute and deliver to Purchaser, its nominees, successors and/or assigns, any new or confirmatory instruments which Purchaser, its nominees, successors and/or assigns, may reasonably request in order to assign and transfer to Purchaser its rights, title and interest in, the Personal Property.  Notwithstanding the foregoing, the Excluded Assets (as such term is defined in the P&S) is excluded from this conveyance.

IN WITNESS WHEREOF, the undersigned, being duly authorized, has executed and delivered this instrument effective as of _____, 2020.

RAYMOND J. OBUCHOWSKI, CHAPTER 7 TRUSTEE FOR THE CORPORATION OF SOUTHERN VERMONT COLLEGE, INC.

By: _____

    Name: RAYMOND J. OBUCHOWSKI

    Title: Trustee

20306904.1